
FILED
JUN 25 2008
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY ______ DEPUTY CLERK

AO 241 (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District | |
|---|---|---|
| Name: Wesley W. Hunter | Prisoner No.: K-83465 | Case No. |

Place of Confinement: CSP-Sacramento, Ca.

Name of Petitioner (include name under which convicted): WESLEY W. HUNTER v. Name of Respondent (authorized person having custody of petitioner): JAMES TILTON, CDCR Secretary

The Attorney General of the State of: California

08cv1461 GGH P

## PETITION

1. Name and location of court which entered the judgment of conviction under attack This is a CDCR disciplinary issue for which petitioner was found guilty at CSP-centinela, Imperial Co. CA.

2. Date of judgment of conviction 6/4/04

3. Length of sentence Loss of 180 Good Conduct Credits and additional work time credits.

4. Nature of offense involved (all counts) Possession of a controlled substance with the intent to distribute.

5. What was your plea? (Check one)
   (a) Not guilty ☒
   (b) Guilty ☐
   (c) Nolo contendere ☐
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☐
   (b) Judge only ☒ CDCR Disciplinary hearing.

7. Did you testify at the ~~trial?~~ Hearing
   Yes ☒ No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☒ No ☐

AO 241 (Rev. 5/85)

9. If you did appeal, answer the following:

(a) Name of court ______

(b) Result ______

(c) Date of result and citation, if known ______

(d) Grounds raised ______

______

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court ______

(2) Result ______

______

(3) Date of result and citation, if known ______

(4) Grounds raised ______

______

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court ______

(2) Result ______

______

(3) Date of result and citation, if known ______

(4) Grounds raised ______

______

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes ☒ No ☐

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court Imperial County Superior Court.

(2) Nature of proceeding Writ of Habeas Corpus

______

(3) Grounds raised (1)Courts verdict/finding shall stand in place of CDCR finding; (2) Possession with the intent has not been enacted via tha APA; (3) The

______

AO 241 (Rev. 5/85)

Superior Court judge found that no more than a simple Possession took place and his finding should substitute the improper quity finding for an act of Distribution which never took place and was never attempted.

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☒

(5) Result Denied

(6) Date of result 3/21/08

(b) As to any second petition, application or motion give the same information:

(1) Name of court California Court of Appeal-4th appelate district, Div. 1

(2) Name of proceeding Writ of habeas Corpus

(3) Grounds raised Same as in Superior Court.

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☒

(5) Result Denied

(6) Date of result 5/5/08

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

(1) First petition, etc. Yes ☒ No ☐

(2) Second petition, etc. Yes ☐ No ☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

N/A

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.

CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

AO 241 (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.
(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(i) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: A courts finding/verdict shall be accepted as fact on the same charge in a prison disciplinary. Due process equal treatment, fair punishment Double jeapordy.

Supporting FACTS (state *briefly* without citing cases or law): On 4/1/04, petitioner was found to be in possession of approx. 7.82 grams of marijuana. On 6/4/04, went to a disciplinary hearing and was issued penaties for **DISTRIBUTION**...On 11/16/06, the case was presented to the grand jury and petitioner was indicted for **POSSESSION** . On 2/20/07, Petitioner pled guilty to possession. On 4/24/07 petitioner was sentenced to the lowest possible term of 2 years, due to the small amount and the courts finding that no act of sell/distribution had ever been alleged, attempted nor committed.

B. Ground two: All inmates are entitled to fair and equal treatment; rules shall not be arbitrary and must be enacted via the Admin. Procedures Act (APA).

Supporting FACTS (state *briefly* without citing cases or law): **POSSESSION WITH THE INTENT** is an arbitrary rule which has not been properly enacted via the APA and, thus, has led to an underground rule with wide spread inconsistancy of application and overt abuse within the CDCR, where some inmates are minorly punished for **POSSESSION** while others are slammed with the much more severe punishments for **DISTRBUTION**...This inconssitancy of punishment is due solely to the hearing officrers mood of the day and/or their personal like or dislike of the inmate and has absolutely nothing to do with the actual evidence or actions of the inmate.

AO 241 (Rev. 5/85)

C. Ground three: Improper application of CDCR Disciplinary rule wherein the CDCR Should've reduced the penalties to those embodied in POSSESSION.

Supporting FACTS (state *briefly* without citing cases or law): The Superior Court sentencing judge held a hearing and determined that the petitioner never sold/distributed nor attempted to sell/dispurse any drugs and other inmates whom have been found smuggling drugs into the prison and/or whom had way more drugs than the petitioner, were penalized for possession, even where there were phone records and other evidence of their intent to sell drugs within the prison.

D. Ground four: Petitioner was found guilty of a non-existant rule violation.

Supporting FACTS (state *briefly* without citing cases or law): Petitioner was found guilty of the specific act of POSSESSION WITH THE INTENT TO DISTRIBUTE an act which was repealed on 2/2/98 and which is no longer listed in the inmate rule book or otherwise made available for use by the CDCR over its inmates.

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them:

N/A

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes ☐ No ☐

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
(a) At preliminary hearing N/A

(b) At arraignment and plea

AO 241 (Rev. 5/85)

(c) At trial N/A

(d) At sentencing

(e) On appeal

(f) In any post-conviction proceeding

(g) On appeal from any adverse ruling in a post-conviction proceeding

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ☐ No ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☐

(a) If so, give name and location of court which imposed sentence to be served in the future:

(b) Give date and length of the above sentence:

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☐

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

6/18/08

Date

Signature of Petitioner

# PROOF OF SERVICE

(C.C.P. §§1013(a); 2015.5; 28 U.S.C. §1746)

I, Wesley Hunter, am over the age of eighteen (18) years, and I (am) (am not) a party to the within cause of action. My address is:

P.O. Box 290006, C-2, 229
Represa, CA. 95671

On, 6/19/08, I served the following documents:

writ of Habeas corpus (S163568)

on the below named individual(s) by depositing true and correct copies thereof in the United State mail in Represa, California, with postage fully prepaid thereon, addressed as follows:

1. Clerk of the U.S. Dist. Ct.
For the Eastern Dist. of CA.
501 "I" Street, Ste. 4-200
Sacramento, CA 95814

2.

I have read the above statements and declare under the penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Executed this 19 day of June, 2008, at California State Prison - Sacramento, Represa, California.

(Signature) [signature]

5/19/08

MC-275

SUPREME COURT
FILED

MAY 15 2008

Frederick K. Ohlrich Clerk

Deputy

Name Mr.Wesley W. Hunter

Address P.O. Box 290066, C-2, 229

Represa, CA 95671

CDC or ID Number K-83465

CA STATE SUPREME COURT

(Court)

| WESLEY W. HUNTER |
|---|
| Petitioner |
| vs. |
| JAMES TILTON, CDCR, Secretary. |
| Respondent |

PETITION FOR WRIT OF HABEAS CORPUS

No. S163568

(To be supplied by the Clerk of the Court)

08cv1461 GGH P

## INSTRUCTIONS—READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**
- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.
- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.
- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."
- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.
- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.
- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.
- Notify the Clerk of the Court in writing if you change your address after filing your petition.
- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

RECEIVED
MAY 15 2008
CLERK SUPREME COURT

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the Judicial Council of California MC-275 [Rev. July 1, 2005]

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.; Cal. Rules of Court, rule 60(a)

American LegalNet, Inc. www.USCourtForms.com

This petition concerns:

[ ] A conviction [ ] Parole

[ ] A sentence [ ] Credits

[ ] Jail or prison conditions [XX] Prison discipline

[ ] Other *(specify)*: ____________________

1. Your name: Wesley Hunter

2. Where are you incarcerated? Kern Valley State Prison

3. Why are you in custody? [XX] Criminal Conviction [ ] Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

1) Assault with a Deadly weapon

2) Use of a firearm 3) Prison prior

b. Penal or other code sections: 245(b)

c. Name and location of sentencing or committing court: Norwalk Superior Court, Norwalk, Ca

d. Case number: VA038249

e. Date convicted or committed: 9/24/97

f. Date sentenced: 1/8/98

g. Length of sentence: 20 years w/85%

h. When do you expect to be released? 5/22/16

i. Were you represented by counsel in the trial court? [XX] Yes. [ ] No. If yes, state the attorney's name and address:

~~Ronald Higgins, 3660 Wilshire Blvd., Ste.1020, L.A., Ca 90010~~

4. What was the LAST plea you entered? *(check one)*

[ ] Not guilty [XX] Guilty [ ] Nolo Contendere [ ] Other: ____________________

5. If you pleaded not guilty, what kind of trial did you have?

[ ] Jury [ ] Judge without a jury [ ] Submitted on transcript [ ] Awaiting trial

This petition concerns:

- [ ] A conviction
- [ ] Parole
- [ ] A sentence
- [ ] Credits
- [ ] Jail or prison conditions
- [XX] Prison discipline
- [ ] Other *(specify)*: ______

1. Your name: Wesley Hunter

2. Where are you incarcerated? Kern Valley State Prison

3. Why are you in custody? [XX] Criminal Conviction [ ] Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

1) Assault with a Deadly weapon

2) Use of a firearm 3) Prison prior

b. Penal or other code sections: 245(b)

c. Name and location of sentencing or committing court: Norwalk Superior Court, Norwalk, Ca

d. Case number: VA038249

e. Date convicted or committed: 9/24/97

f. Date sentenced: 1/8/98

g. Length of sentence: 20 years w/85%

h. When do you expect to be released? 5/22/16

i. Were you represented by counsel in the trial court? [XX] Yes. [ ] No. If yes, state the attorney's name and address:

~~Ronald Higgins, 3660 Wilshire Blvd., Ste. 1020, L.A., Ca 90010~~

4. What was the LAST plea you entered? *(check one)*

[ ] Not guilty [XX] Guilty [ ] Nolo Contendere [ ] Other: ______

5. If you pleaded not guilty, what kind of trial did you have?

[ ] Jury [ ] Judge without a jury [ ] Submitted on transcript [ ] Awaiting trial

6. GROUNDS FOR RELIEF

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

A courts finding/verdict of guilty shall be accepted as fact on the same charge in a disciplinary hearing CCR§3316(c)(3). Thus, petitioners disciplinary should have been reduced to POSSESSION in accordance with the Grand jury, the D.A. and the courts findings. 8th and 14th amend. violations which have furthered petitioner's release date.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

On 4/1/04 Petitioner was found to be in possession of approx. 7.82grams of marijuana. Petitioner was issued a Rules Violation Report(RVR) for **POSSESSION WITH THE INTENT TO DISTRIBUTE.** (A rule/charge which was repealed on 2/2/99). The RVR was originally classified as a POSSESSION (Div.B) by Capt. Dexter, but then was wrongly ajudicated as a DISTRIBUTION by the hearing officer, even though no act of "Sale or dispersing" (as defined at §3000) was ever said to have occured. On 11/16/2006 the case and all related evidence was presented to the Grand Jury. The Grand Jury returned an indictment for the charge of **POSSESSION.** Petitioner was taken to court and on 2/20/07 I pled guilty to the whole and actual charge of **POSSESSION** (case#JCF18935). Had I gone to trial the worse possible charge would have been guilty of POSSESSION, this was not a lesser included offense, thus a finding of guilt for the act of POSSESSION should be made to substitute the DISTRIBUTION finding of the RVR as there was never any act or evidence of a sale of drugs. At the sentencing on 4/24/07, even the judge said that he was convinced that no more than an act of POSSESSION took place. and he sentenced me to the low term of 2 years to support the minor nature.

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)* I have repeatedly requested a copy of the transcript and offered to pay for it but the court contines to ignore my every request. (will request again 5/10/08)

CCR§3316(c)(3) as stated above. Also, the 14th amend. and all rules and provisions of the CDCR are to insure fair and equal treatment. A non-biased judge reviewed all of the evidence and rightly determined that only an act of POSSESSION took place. The CDCR is not above judicial overview and they should be made to honor the Grand Jury and sentencing court's findings.

see 4/24/07 "probation/sentencing" minutes attached a few pages back

pg. 1 of 2

7. Ground 2 or Ground ______ (if applicable):

All inmates within the CDCR are entitled to fair and equal treatment; rules shall not be arbitrarily applied all rules shall be enacted via tha APA and all inmates shall have fair notice and warning of all rules of the department as well as the consequences for breaking said rules. Equal and fair treatment falls within the 8th & 14th amendments of the United states constitution.

a. Supporting facts:

Petitioner was issued an RVR for POSSESSION WITH THE INTENT TO DISTRIBUTE a charge which was repealed on 2/2/99 and should no longer be in use. Petitioner was then issued the penalties for DISTRIBUTION even though he was never said to have sold or dispersed anything to anyone. This is a violation of policy because there are no written punishments for the act of POSSESSION WITH THE INTENT and thus there were no listed punishments to be issued to petitioner. I was never found guilty of the act of selling anything (DISTRIBUTION) and thus I should not have been issued the punishments which were enacted for such an act. Furthermore, I did not receive fair or equal treatment in accordance with policy and constitutional protections. This is proven true wherein Exhibit "H" (0000048) shows proof of an inmate BROOKS who was found in the visiting room with 5.12 grams of heroin in his mouth yet he was only given the much lesser penalties for POSSESSION even where he admitted to being a part of a smuggling conspiracy; and in Exhibit "M" (0000073) where another inmate, named DAVIS, is given the penalties for POSSESSION after his wife is is discovered with approx. 16 grams of marijuana in the visiting room and they both admit that she is smuggling it in for inmate DAVIS. How is it that these much more severe actions receive lesser penaties thatn petitioner when petitioner never sold or smuggled in anyhting and where both of the above took place in the visiting room and placed members of the public at risk, whereas petitioner merely bought a small bit of marijuana on the prison yard and for his PERSONAL USE!? How can this in any way be seen as fair, equal or just?

b. Supporting cases, rules, or other authority:

The APA, The repealed rule of the CDCR as attached hereto, The U.S. and state constitutions as well as simple and fair logic. The CDCR should be made to explain why they are still issuing RVR's for POSSESSION WITH THE INTENT TO DISTRIBUTE after having acted to repeal such; and they should also explain why some inmates such as BROOKS and DAVIS are issued relatively MINOR penalties while petitioner is issued the harshest of the harsh for OBVIOUSLY lesser threatening conduct.

ground 3

6. GROUNDS FOR RELIEF

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

Petitioners sentenced has been wrongly lengthened when the CDCR did not follow its own policies for the application of disciplinary charges, wherein the written policy directs the CDCR to act in accordance with a criminal courts findings when/if a case is referred to the outside courts.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: who did exactly what to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

Petitioner was found to be in possession of 7.83 grams of marijuana, while housed at Centinela State prison, on 4/1/04. On 4/24/07 petitioner was sentenced to a low term of 2 years after pleading guilty to the charge of POSSESSION. The Original charge was for possession and petitioner pled guilty to the only and ACTUAL charge NOT a LESSER OFFENSE. Even the sentencing judge openly acknowledge that based on a review of all of the evidence, he was convinced that petitioner had just bought the small bit of marijuana for personal use and that petitioner did not sell any... CCR§3317(c)(3) holds that "a verdict of guilty or not guilty, resulting from a trial shall be accepted as the finding of fact." Petitioner is guilty of possession, I have always admitted to being guilty of possession. The D.A. only charged me with POSSESSION. I pled guilty to the charge of POSSESSION and the sentencing judge himself did review the issue of weather or not he believed that an act of POSSESSION or DISTRIBUTION occured and this impartial judge found that petitioner was only guilty of a mere

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

Ground three, cont.

POSSESSION and in fact, the judge further found that petitioner actions were of such a minor nature that he accepted an "OPEN PLEA" and then issued the low term of two years to the charge of POSSESSION.

The CDCR should have acted to reduce petitioners rule violation to that of POSSESSION instead of leaving petitioner to suffer beneath the most extremely harsh punishments for the charge of DISTRIBUTION even where no act of sale or dispersing was ever said to have occured. This is especially true when a Superior court judge has found that no act of sale or distribution ever occured and the CDCR's Hearing officers a routinely inconsistant and have arbitrarily applied such wrong and harsh punishments and charges. For comparison please take a moment to review the Rules Violation Reports of inmate BROOKS where he was found in the visiting room with 5.12 grams of Heroin (0000048); or Inmate DAVIS where he is found to be a part of smuggling 16 grams of marijuana through the visiting room. Both of these inmates where charged with Distribution but had there RVR's reduced to POSSESSION when no actual act of sale or dispersing was ever alledged or proven. See also, RVR's received by inmates BASILIO (0000056) and Cheng (0000063) two inmates whom where caught on the same day as petitioner; who went before the same hearing officer with the same charge but whom both received ZERO days good time credit loss, even though they had 13.09 grams of marijuana, as oppose to petioner whom was found with 7.83 grams and had 180 days good time credit loss.

The CDCR should be made to follow thier own rules and the courts charge as well as the judges non-biased review of the evidence.

For a full review of the commentary issued by Superior Court Jugde J. Jones, of the Imperial County Superior Court, please call on and review the transcripts of case #JCF-18935. I have written the court twice to try and find out how to purchase a copy of these transcripts, so that I could add them to this writ, but to date, I have gotten no response and I do not want to delay this writ any further for fear of missing out on the AEDPA deadlines. I also have a copy of the Grand Jury transcript but the institution law library will not permit us to copy transcripts.

7. Ground 2 or Ground 4 *(if applicable)*:

Petitioner was found guilty of a NON-existant rule violation, which acted to lengthen his sentence.

a. Supporting facts:

"Possession with the intent to distribute" is not in the CCR title 15 and thus Petitioner should not have been held guilty of this non-existant rule.

Furthermore, the Appeals court mis-states the facts by saying petitioner was "scheduled to go out on the yard". Petitioner was housed at a level IV Facility where yard program ends at 3:30 pm. The officers rushed into petitioners cell at approx. 7:30 pm, wherein petitioner was un-wrapping the marijuana but then tried to hide it on his person as officers ordered he and his cell mate to step out of the cell.

There was never any info or evidence that petitioner ever attempted to sell any drugs to anyone AS IS REQUIRED BY CDCR POLICY (see pg. #000074 attached).

Petitioner is innocent of the charge of Distribution and possession with the intent does not exist thus no "procedural bar" can be considered or honored.

b. Supporting cases, rules, or other authority:

Petitioner is actually innocent of committing the charged crime; hence, his procedural default cannot be used to deny him the right to have his habeas claim heard on the merits.

Schlup v. Delo, 513 U.S. 298 (1995)

8. Did you appeal from the conviction, sentence, or commitment? ☐ Yes. ☐ No. If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):
NA

b. Result: ______ c. Date of decision: ______

d. Case number or citation of opinion, if known: ______

e. Issues raised: (1) ______

(2) ______

(3) ______

f. Were you represented by counsel on appeal? ☐ Yes. ☐ No. If yes, state the attorney's name and address, if known:

______

9. Did you seek review in the California Supreme Court? ☐ Yes. ☐ No. If yes, give the following information:

a. Result: NA b. Date of decision: ______

c. Case number or citation of opinion, if known: ______

d. Issues raised: (1) ______

(2) ______

(3) ______

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:
NA

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:
All administrative remedies have been sought.

b. Did you seek the highest level of administrative review available? ☒ Yes. ☐ No.
*Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? ☐ Yes. If yes, continue with number 13. ☐ No. If no, skip to number 15.

13. a. (1) Name of court: _____

(2) Nature of proceeding (for example, "habeas corpus petition"): _____

(3) Issues raised: (a) _____

(b) _____

(4) Result *(Attach order or explain why unavailable)*: _____

(5) Date of decision: _____

b. (1) Name of court: _____

(2) Nature of proceeding: _____

(3) Issues raised: (a) _____

(b) _____

(4) Result *(Attach order or explain why unavailable)*: _____

(5) Date of decision: _____

c. *For additional prior petitions, applications, or motions, provide the same information on a separate page.*

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.)

There has been some time delay here, that is a result of the D.A. having waited so long to present the case to the Grand Jury and the CDCR subsequently failing to act to reduce the RVR in accordance with the sentencing courts findings. Just got Lost property Also Plus I've been trying to get a copy of the sentencing transcripts.

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court? ☒ Yes. ☐ No. If yes, explain:

I have two Writs in the federal courts addressing other issues in relation to this same RVR.

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

_____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

The prison has been on lock down for the past 2 months w/o library access.

Date: Prepared 8-2-07

Wesley M. Hate
(SIGNATURE OF PETITIONER)

Placed in mail 9-13-07

Sent to 4th Dist 4/7/08
Sent to St. Supreme 5/19/08

CHAPTER SEVEN
*DISCIPLINARY SCHEDULE*

## PROPERTY OFFENSES

Division A-2(1) - Arson involving damage to a structure.
Division A-2(2) - Possession of flammable, explosive, or combustible material with intent to burn any structure or property.
Division B(5) - Theft, embezzlement, destruction, misuse, alteration, damage, unauthorized acquisition, or exchange of personal property, state funds, or state property valued in excess of $400.
Division B(8) - PC 666; Petit theft with a prior.
Division C(3) - Unauthorized possession of materials or substances altered from their original manufactured state or purpose and which can be made into a weapon, explosive, or explosive-making material, poison, caustic substance, or any destructive device.
Division C(8) - Arson.
Division E(1) - Theft, embezzlement, destruction, misuse, alteration, damage, unauthorized acquisition or exchange of personal property, state funds, or state property valued at more than $50 but less than $400.
Division E(5) - Gambling in an institution, community correctional facility, or camp other than a community-access facility.
Division F (3315) - Unauthorized possession of departmental records or documents which might affect any inmate's release status.
Division F (3315) - Possession of five dollars or more without authorization.
Division F (3315) - Tattooing or possession of tattoo paraphernalia.

## SEX OFFENSES

Division A-1(5) - Rape, attempted rape, sodomy, oral copulation, and attempted oral copulation accomplished against the victim's will.
Division B(8) - PC 266h; Pimping.
Division B(8) - PC 314; Indecent exposure with prior.
Division D(5) - Indecent exposure.
Division E(3) - Consensual participation in sodomy or oral copulation.
Division F (3315) - Harassment of another person, group or entity, either directly or indirectly through the use of the mail or other means.

## SOLICITING

Division A-1(1) - Solicitation of murder.
Division A-2(3) - Solicitation of: Battery with a deadly weapon or battery by means of force likely to produce serious injury; arson, or forcible sex act.
Division C(6) - Bribery.
Division C(7) - Solicitation of extortion, bribery, or forgery.

Possession for sale charge is no longer in title 15

## SUBSTANCE ABUSE OFFENSES

Division B(6) - Possession of any narcotic, drug, or controlled substance, including marijuana in an institution, community correctional facility, or camp.
Division B(7) - Possession for sale of any narcotic, drug, or controlled substance, including marijuana, in a community-access facility.
Division B(8) - H&S 11352; Transportation, sale, giving away, etc. of designated controlled substances.
Division C(10) - Possession of any narcotic, drug, or controlled substance in a community-access facility.
Division C(11) - Possession or manufacture of alcohol in an institution, ccf, or camp.

# INMATE/PAROLEE APPEAL FORM

CDC 602 (12/87)

KVSP

Location: Institution/Parole Region 1. Cen-A 2.

Log No. 1. 07-74 2.

Category 1

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Weslie 2 ~~WESLEY~~ W. HUNTER | K-83465 | NA — | A-5, 131 |

A. Describe Problem: I beg you to please take the time to read this with an open mind: On JAN. 8, 2007 I was taken to court and charged with POSSESSION, stemming from an RVR (CEN-FCP-04-04-0116) that I received on 4-21-04. As the facts within the RVR, the D.A.'s finding and the courts charge all show that no more than an act of POSSESSION ever took place (and there's never been any facts, evidence or statements suggesting that I ever sold anything to anyone (CCR § 3000, pg. 0000040) on any date, time or place (pg. 0000041)) The RVR should never have been reclassified from a Division B (Ex. [illegible] and Ex. G), but it should now be properly reduced from a Division A-2 Distribution back to Division B possession, in

If you need more space, attach one additional sheet.

B. Action Requested: 1) to have the RVR reduced to possession in accordance with the stated facts, the D.A.'s findings and the courts charges — so that I am given fair and equal treatment as Inmate's Brooks, (Ex. "H") Basilio (Ex. "I") and Cheng (Ex. "J")
2) To have "Possession with intent" placed back in the CCR and have a list of penalties provided in accordance with the Admin. Proc. Act. so that I/m's are not overly punished with Distribution.

Inmate/Parolee Signature: Wesley W. Hunter Date Submitted: 1/9/07

C. INFORMAL LEVEL (Date Received: )

Staff Response:

BY-PASS

RECEIVED FEB 21 2007 INMATE APPEALS BRANCH

Staff Signature: Date Returned to Inmate:

D. FORMAL LEVEL

If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BY-PASS

Signature: Date Submitted:

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

First Level ☐ Granted ☐ P. Granted ☐ Denied ☐ Other ______

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: ______ Due Date: ______

Interviewed by: ______

BY-PASS

Staff Signature: ______ Title: ______ Date Completed: ______

Division Head Approved: Returned

Signature: ______ Title: ______ Date to Inmate: ______

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

BY-PASS

Signature: ______ Date Submitted: ______

Second Level ☐ Granted ☐ P. Granted ☐ Denied ☐ Other ______

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: 1·23·07 Due Date: 3·8·07

☐ See Attached Letter

Signature: [signature] SSA Date Completed: FEB 13 2007

Warden/Superintendent Signature: [signature] Date Returned to Inmate: FEB 13 2007

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

① § 3317(c)(3) Holds that "if a court finds the inmate not guilty after a finding of guilty in a disciplinary hearing, the RVR shall be dismissed." "A verdict of guilty or not guilty, resulting from a trial shall be accepted as the finding of fact" thus, the courts charge holds merit as to the disciplinary charge and finding. ② An act of sell nor dispersing ($3000) never took place so I should not be punished for "Distribution" I'd just bought the stuff and the c/o's showed up. I'm guilty of possession, but I never sold anything to anyone so no specific act of Distribution ever occured. ③ The RVR should never have been reclassified by the Lt. after the Capt. classified it a Div. B possession (ex. "B" Ex. G

Signature: [signature] Date Submitted: 2-14-07

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted ☐ P. Granted ☒ Denied ☐ Other ______

☒ See Attached Letter

Date: MAY 0 9 2007

CDC 602 (12/87)

0000002

**Existing Section 3000 is amended to read:**

**3000. Definitions.**

Controlled Medication means any drug which is prescribed by a physician and is given to an inmate in controlled dosages.

Controlled Substance means any substance, drug, narcotic, opiate, hallucinogen, depressant, or stimulant as defined by California Health and Safety Code section 11007.

Distribution means the sale or unlawful dispersing, by an inmate or parolee, of any controlled substance; or the solicitation of or conspiring with others in arranging for, the introduction of controlled substances into any institution, camp, contract health facility, or community correctional facility for the purpose of sales or distribution.

Laboratory means any toxicological or criminalistic laboratory which has been recognized by the state, other certifying agency, or which is accepted by any local, county, or state prosecuting authority to provide evidence as to the presence of controlled substances in human body fluids or confirm that a substance is or contains any controlled substance.

NOTE: Authority cited: Sections 2717.3 and 5058, Penal Code; Section 10115.3(b), Public Contract Code; and Section 4526, Government Code. Reference: Sections 186.22, 243, 530, 532, 646.9, 653m, 832.5, 1389, 2080, 2081.5, 2600, 2601, 2700, 2717.1, 2717.6, 2932.5, 4570, 5009, 5068, 5054, and 7000 et seq., Penal Code; Sections 1132.4 and 1132.8, Labor Code; Sections 10106, 10108, 10108.5, 10115, 10115.1, 10115.2, 10115.3, and 10127, Public Contract Code; and Section 999, Military and Veterans Code; Section 391, Code of Civil Procedure; *In re Bittaker*, 55 Ca.App. 4th 1004, 64 Cal.Rptr. 2d 679; and Section 11007, Health and Safety Code.

**Existing Section 3016 is amended to read:**

**3016. Controlled Substances, Drug Paraphernalia, and Distribution.**

(a)   Inmates may not inhale, ingest, inject, or otherwise introduce into their body; possess, manufacture, or have under their control any controlled substance, controlled medication, or alcohol, except as specifically authorized by the institution's/facility's health care staff.

(b)   Inmates may not possess, exchange, manufacture, or have under their control any paraphernalia as defined by Health and Safety Code section 11014.5, or device related to the use, injection, or manufacture of any controlled substance or controlled medication, except as specifically authorized by the institution's/facility's health care staff.

(c)   Inmates shall not distribute, as defined in section 3000, any controlled substance or controlled medication.

(d)   Inmates may not possess controlled medication in quantities exceeding the dosage specifically authorized by the institution's/facility's health care staff, nor may an inmate possess controlled medication prescribed to another inmate.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 2931, 4573, 4573.6 and 5054, Penal Code; and Sections 11014.5, 11350-11383, Health and Safety Code.

**Existing Section 3188 is amended to read:**

**3188. Smoking Policy.**

**Subsections (a) through (a)(2) are unchanged.**

(3)   Prison Yard means the general population housing unit or housing unit recreational yards where smoking is not otherwise prohibited, e.g., Administrative Segregation/ Security Housing Units.

**Subsection (a)(4) is unchanged.**

**Subsections (b) through (g) are unchanged.**

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code; Sections 19994.30-19994.32, Government Code.

**Existing Section 3189 is amended to read:**

**3189. Tobacco Products.**

**Subsections (a) through (b) are unchanged.**

(c)   No inmate shall possess tobacco products at any reception center, the California Rehabilitation Center, or in any institution/facility which has voluntarily become tobacco product free, except that the use of tobacco products may be departmentally approved in inmate religious ceremonies.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code; Section 19994.35, Government Code.

**Existing Section 3290 is amended to read:**

**3290. Testing of Controlled Substances.**

(a)  The department shall prescribe the products, equipment, and methods for testing suspected controlled substances. "Field" or on-site testing shall be conducted only by trained and certified personnel.

**Subsection 3290(b) is unchanged.**

(c)  The securing of a urine sample from an inmate, for the purpose of testing for the presence of controlled substances shall be done for the following reasons:

(1)  When there is reasonable cause to believe the inmate has possessed, distributed, used, or is under the influence of a controlled substance.

(2)  When mandatory random testing is known to the inmate to be a condition for the inmate's participation in a specific program, assignment, or activity.

(3)  As part of an authorized disposition of a disciplinary hearing.

(4)  The inmate is selected by the institution's/facility's random drug testing selection process.

(d)  Inmates must provide a urine sample when ordered to do so pursuant to these regulations, for the purpose of testing for the presence of controlled substances.

(e)  Field testing shall be conducted for "screening" purposes only. Disciplinary action for possession of a controlled substance shall not include the loss of work/behavior credits unless a laboratory has confirmed that the suspected substance is in fact a controlled substance, or the inmate has admitted to possessing the controlled substance, accepts the results of a field test, and waives the requirement of testing by a laboratory, and has signed a document to that effect.

(f)  The test results from a urine sample submitted for testing for the presence of an unauthorized controlled substance that has been confirmed as positive by a laboratory may be considered as sufficient evidence to charge the user with having had possession of the controlled substance.

(g)  When evidence remaining after a field test or resulting from a field test is not suitable or sufficient for submission to a laboratory for confirmation of the field test, the field test results may be considered in a disciplinary hearing for possession of a controlled substance. Under such circumstances, a finding of guilty shall be based upon the preponderance of all evidence presented at the disciplinary hearing. Although no credit loss action may be taken, other authorized disciplinary actions may be taken, including the assessment of the mandatory one year drug testing period.

**Subsection (h) is unchanged.**

(i)  The identification of unauthorized controlled medication may be confirmed by a licensed pharmacist and that confirmation may be used as evidence in a disciplinary hearing. There shall be no requirement for laboratory testing of intact controlled medications when identification of the controlled medication has been confirmed by a pharmacist.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 2932, 4573.6 and 5054, Penal Code.

**Existing Section 3315 is amended to read:**

**3315. Serious Rule Violations.**

**Subsections (a) through (a)(3)(L) are unchanged.**

(M)  A repeated pattern of administrative rule violations for the same offense.

**Subsections (a)(3)(N) through (a)(3)(W) are unchanged.**

**Subsections (b) through (f)(3) are unchanged.**

(4)  If the violation included an act related to the use, possession, or distribution of controlled substances, controlled medication, drugs or drug paraphernalia; or if the inmate refused to submit to a test for controlled substances or drugs, the disposition shall include an order for the inmate to submit to mandatory random drug testing for one year from the date of the order.

(A)  For the first offense, the inmate must provide a minimum of one random drug test per month for one year.

(B)  For the second offense, the inmate must provide a minimum of two random drug tests per month for one year.



California Department of Corrections

# NOTICE OF CHANGE TO DIRECTOR'S RULES

Sections: Assorted

| Number: 99/05 |
|---|
| Date Issued: June 28, 1999 |
| Date Effective: IMMEDIATELY |

## ADOPTED RULE CHANGES

This bulletin announces the permanent adoption of regulations for the Department which were approved by the Office of Administrative Law through June 28, 1999.

## NOTE CHANGES

The attached contains regulations which are not included in the 1998 edition of the Director's Rule Book distributed by the Department of Corrections (purple color) and should be noted until the 1999 books are printed and distributed.

## POSTING

This notice shall be posted immediately upon receipt at locations accessible to inmates, parolees, and employees in each Department facility and field office. Also, facilities shall make this notice available for review by inmates in segregated housing who do not have access to the posted copies and shall distribute it to inmate law libraries and advisory councils.

## CONTACT PERSON

Inquiries regarding this notice should be directed to Bonnie Garibay, Chief, Regulation and Policy Management Branch, California Department of Corrections, P.O. Box 942883, Sacramento, CA 94283-0001, or telephone (916) 324-7770 or CALNET 454-7770.

Teresa Rocha

TERESA ROCHA
Chief Deputy Director
Support Services

Attachments

(C)    For the third offense, the inmate must provide a minimum of four random drug tests per month for one year.

(D)    The inmate shall be informed that refusal to submit to a random test or any positive test result during the mandatory random drug testing period shall result in the issuance of a CDC Form 115 and a new mandatory drug testing order.

(5)    The disposition may or when mandated shall include assessment of one or more of the following:

(A)    Any combination of penalties authorized for administrative rule violations in section 3314(e).

(B)    Suspension of privileges specified by the hearing official for no more than a 90-day period starting the date of the disciplinary hearing. The suspension of privileges for violations of subsections 3323(c)(7) and 3323(d)(6) shall be assessed as follows:

1.    Thirty days for the first offense.

2.    Sixty days for the second offense.

3.    Ninety days for the third offense.

(C)    Disciplinary detention or confinement to quarters as provided in sections 3330 and 3333 for not more than a ten-day period.   If facility security will not be jeopardized, the inmate shall be released to attend work and program assignments.

1.    Second offense violations of subsections 3323(c)(7) and 3323(d)(6) shall result in confinement to quarters for five days.

2.    Third offense violations of subsections 3323(c)(7) and 3323(d)(6) shall result in confinement to quarters for 10 days.

(D)    Referral to a classification committee for consideration of placement in Work Group C.

(E)    Parole violators returned-to-custody who violate subsections 3323(c)(7) and 3323(d)(6) shall be referred to the Board of Prison Terms for consideration of extension of revocation time.

(F)    Suspension of all or part of dispositions other than credit forfeitures, ordered random drug testing and classification committee referrals, for up to six months based on the inmate's compliance with the conditions specified for suspension.

(G)    Imposition of all or part of an existing suspended disposition when the current rule violation is a violation of conditions specified in a suspended disposition.  Imposition of a suspended disposition shall not include confinement to quarters or disciplinary detention for a period exceeding ten days except as provided in section 3322.

(H)    For a violation of subsection 3323(c)(7), there shall be a loss of visits for one year to be followed by non-contact visits for two years.

(I)    Loss of visits to be followed by non-contact visits for violations of subsection 3323(d)(6) shall be as follows:

1.    Loss of visits for 90 days, to be followed by non-contact visits for 90 days for the first offense.

2.    Loss of visits for 90 days, to be followed by non-contact visits for 180 days for the second offense.

3.    Loss of visits for 180 days, to be followed by non-contact visits for 180 days for the third offense.

(J)    Violation of subsections 3323(c)(7) and 3323(d)(6) shall result in:

1.    For the first offense, the inmate shall be required to attend Alcoholic Anonymous or Narcotic Anonymous meetings or assigned to a substance abuse education program to the extent such programs are available in the institution/facility.

2.    For the second offense, the inmate shall be referred for endorsement to a substance abuse program, provided that program eligibility criteria is met.

3.    For the third offense, the inmate shall be referred for endorsement to a substance abuse program, provided that program eligibility criteria is met, and mandatory treatment shall be a condition of parole.

**Subsection 3315(g) is unchanged.**

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 530, 532, 646.9, 647, 653m, 2931, 2932, 2933, 4573.6, 5054, 5068, and 12020, Penal Code.

**Section 3323 is amended to read:**

**3323.    Disciplinary    Credit    Forfeiture Schedule.**

**Subsections    3323(a)    through    (c)(6)    are unchanged.**

(7) Distribution of any controlled substance in an institution/facility or contract health facility.

**Old Subsection 3323(c)(7) is renumbered to 3323(c)(8).**

(8) Conspiracy to commit any Division "A-1" or "A-2" offense.

**Subsections 3323(d) through (d)(5) are unchanged.**

(6) Unauthorized possession or control of any controlled substance, including marijuana, or controlled medication in an institution/facility or contract health facility.

(A) Progressive disciplinary credit forfeiture for violations described in (6) above are as follows:

1. Credit forfeiture of 121-130 days for the first offense.

2. Credit forfeiture of 131-140 days for the second offense.

3. Credit forfeiture of 141-150 days for the third offense.

This was the subsection for possession with intent

**Old Subsection 3323(d)(7) is repealed.**

**Old Subsection 3323(d)(8) is renumbered to 3323(d)(7).**

(7) Any felony not involving violence or the use of a weapon not listed in this schedule.

**Old Subsection 3323(d)(9) is renumbered to 3323(d)(8).**

(8) Conspiracy to commit any Division "B" offense.

**Subsections 3323(e)(1) through (e)(10) are unchanged.**

(11) The fermentation or distillation of materials in a manner consistent with the production of alcohol or the physical possession of alcohol in an institution/facility or contract health facility.

**Subsections 3323(e)(12) to (f) are unchanged.**

(1) Being under the influence of alcohol or other intoxicant not defined as a controlled substance in an institution/facility or contract health facility; or refusing to provide a urine specimen for the purpose of testing for the presence of controlled substance(s).

**Subsections 3323(f)(2) through (k)(4) are unchanged.**

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 148, 243, 647, 2932, 2933, 4573.6, 4600, 5054, and 12020, Penal Code.

**Existing Section 3327 is amended to read:**

**Section 3327. Restoration of Forfeited Credits.**

**Subsections 3327(a)(1) through (a)(2) are unchanged.**

(3) No credit shall be restored if the worktime credit denial or loss was ordered by court judgment unless the court rescinds or overturns the order.

(4) No credit shall be restored for disciplinary offenses where the inmate was ordered to submit to a drug test pursuant to section 3290(c) and refused the test.

**Subsection 3327(b) through (d) are unchanged.**

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 2932, 2932.5, 2933 and 5054, Penal Code.

**Existing Section 3329 is amended to read:**

**3329. Extraordinary Circumstances.**

**Subsections 3329(a) through (b)(9) are unchanged.**

**Old Subsection 3329(b)(10) is repealed.**

**Old Subsection 3329(b)(11) is renumbered to 3329(b)(10).**

(10) The inmate engaged in a pattern of violent conduct.

**Old Subsection 3329(b)(12) is renumbered to 3329(b)(11).**

(11) The inmate's record documents numerous acts of and/or increasingly serious misconduct.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 2933, 4573.6, and 5054, Penal Code.

Accordance with CCR 15 § 3316(c)(3), wherein my guilty plea to the charged OFFENSE, i.e. POSSESSION (Exhibit "A") will act to substitute the guilty verdict of the court/Jury and the charge itself was not reduced to a "lesser offense". Thus, I am left to stand convicted of the worse possible charge to be found true had I gone to a trial and I only substitute my plea of guilt for the Jury's ultimate finding (allowing the Judge to accept and enter a truthful finding of guilt) so as to avoid further time, jeopardy and peril.

I do accept that I screwed up and I was wrong. I had a drug problem and I shouldn't have bought the stuff, but I am only BEGGING for Fair and equal treatment. Please, look at Exhibit "H" where inmate Brooks was caught in the visiting room with 5.12 grams of Heroin and his RVR was reduced from Div. A-2 Distribu to Div. B POSSESSION (no loss of family visits, no SHU, no A2B, etc, etc.) or compare Exhibits "I" and "J": Two inmates caught in the same building on the same day who were charged with a Div. B by Capt. Dexter, but the same SHO changed their RVR classification, as he did mine, BUT He took 0 Days good time from them, because of the change but took 180 days from me AND THEY HAD MORE WEED!

PLEASE, Just Be Fair and Just, So that I am punished for the exact act that I committed (POSSESSION) and not Distribution, When I'd Just bought the stuff and I'd never sold anything to Anyone "Possession with the intent" is not even in the CCR or DOM Anymore, it was repealed on 2-3-99 (I.d. at Footnote #15, it was listed as §3323(d)(7) but it has not been re-enacted via the Admin. Procedures Act. thus, there are no listed penalties for "Possession with the intent". So the only options are Possession or Distribution (when an inmate sells or disperses pg 0000040). Either a murder was committed or it wasn't; Either a sale was committed or it wasn't and the reports, the D.A. and the courts all show that the Proper charge should be POSSESSION! I'm not trying "to get away" but only BEGGING You to let the Punishment Fit the crime

# List of EXHIBITS

| EX. | PAGE * |
|---|---|
| A. Indictment; Notice of Arraignment; D.A. Status Reports (6 pgs) | 0000004 |
| B. 1st copy of RVR classified Div. "B" by Capt. Dexter; reclassified RVR issued late by C/O Hellum (2 pgs) | 0000010 |
| C. My Final copy; Drug test order (10 pgs) | 0000012 |
| D. Incident Packet (12 pgs) | 0000022 |
| E. DOJ Drug report (1 pg) | 0000034 |
| F. SHU Term Assessment worksheet; CSR endorcement (2 pgs) | 0000035 |
| G. SHO Policy Directives (8 pgs) | 0000037 |
| H. Inmate Brooks' RVR for Possession inre 5.12 grams Heroin (8 pgs) | 0000045 |
| I. Inmate Basilio's RVR, No good time credit taken (8 pgs) | 0000053 |
| J. Inmate Cheng's RVR, No good time credit taken (4 pgs) | 0000060 |
| K. Second Level Appeal Response (2/13/07) | 0000064 |
| L. Director's Level Appeal Response (5/9/07) | 0000071 |
| M. Inmate Davis' RVR for possession inre 16 grams marijuana | 0000073 |

33. Certificate of Compliance as to 10-4-2002 order, including further amendment of subsection (a)(3)(S), transmitted to OAL 3-12-2003 and filed 4-8-2003 (Register 2003, No. 15).
34. Amendment of subsection (f)(5)(B), new subsection (f)(5)(C) and subsection relettering filed 1-9-2004 as an emergency; operative 1-9-2004 (Register 2004, No. 2). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 6-17-2004 or emergency language will be repealed by operation of law on the following day.
35. Amendment of subsection (f)(5)(B), new subsection (f)(5)(C) and subsection relettering refiled 6-17-2004 as an emergency; operative 6-17-2004 (Register 2004, No. 25). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-24-2004 or emergency language will be repealed by operation of law on the following day.
36. Certificate of Compliance as to 6-17-2004 order transmitted to OAL 11-16-2004 and filed 12-29-2004 (Register 2004, No. 53).

**3316. Referral for Criminal Prosecution.**

(a) Except as provided in subsection (b), all criminal misconduct by persons under the jurisdiction of the department or occurring on facility property shall be referred by the institution head or designee to appropriate authorities for possible investigation and prosecution when there is evidence substantiating each of the elements of the crime to be charged.

(1) Referrals for investigation of inmate criminal misconduct shall be accompanied by a JUS Form 8715 (Rev. 6/88) Department of Justice, Disposition of Arrest and Court Action.

(2) The authority to whom a case is referred shall be asked to provide the institution head or designee with written notification within ten working days advising if prosecution shall be initiated.

(3) Inmates shall be notified in writing when misconduct is referred for possible prosecution.

(b) Notwithstanding evidence substantiating each of the elements of the crime to be charged, criminal misconduct shall not be referred to the local district attorney if the local district attorney has submitted written notification to the institution head including criteria determining that specified crimes shall not be prosecuted if the crime involved meets such criteria.

(c) Referral of an inmate's misconduct for prosecution shall not stay the time limits for a disciplinary hearing unless the inmate submits a written request to the chief disciplinary officer or signs and dates the CDC Form 115-A (Rev. 7/88), Serious Rules Violation Report, requesting postponement of the hearing pending the outcome of the referral.

(1) A postponed disciplinary hearing shall be held within 30 days after any one of the following events;

(A) The inmate has revoked a postponement request; an inmate may revoke a postponement request any time until the prosecuting criminal authority has filed an accusatory pleading against the inmate. The request shall be submitted in writing to the chief disciplinary officer or designee who shall complete the CDC Form 115-A revoking the postponement request.

(B) Written notice is received from the institution head or designee that the inmate's misconduct will not be referred for prosecution pursuant to subsection (b).

(C) Written notice is received that the prosecuting authority does not intend to prosecute.

(D) Written notice is received that the criminal proceedings are terminated without an acquittal.

(2) A decision to not prosecute or a court's dismissal of criminal charges without acquittal shall not prohibit or alter a departmental disciplinary hearing on the rule violation charges.

(3) A court verdict of guilty or not guilty, resulting from a trial, shall be accepted as the finding of fact on the same charges in a disciplinary hearing. Should the court accept a plea agreement or negotiated settlement resulting in a conviction for a lesser offense than was originally charged, or if a court dismisses a charge prior to trial, the Department shall not be precluded from taking appropriate administrative action based on the facts contained in the original charge. If a court finds the inmate not guilty after a finding of guilty in a disciplinary hearing, the rule violation charges shall be dismissed.

(4) Any verdict of the court shall not prohibit or reverse the actions of a disciplinary hearing on any lesser offenses included in the criminal charge.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 2932 and 5054, Penal Code.

HISTORY:
1. Amendment filed 5-13-77; effective thirtieth day thereafter (Register 77, No. 20).
2. Amendment filed 6-30-77 as an emergency; effective upon filing (Register 77, No. 27).
3. Amendment of subsection (d) filed 9-29-77 as an emergency; effective upon filing. Certificate of Compliance included (Register 77, No. 40).
4. Amendment of subsection (b) filed 8-22-79; effective thirtieth day thereafter (Register 79, No. 34).
5. Amendment filed 11-1-79 as an emergency; effective upon filing (Register 79, No. 44). A Certificate of Compliance must be filed within 120 days or emergency language will be repealed on 3-1-80.
6. Certificate of Compliance including amendment of subsection (c) filed 2-15-80 (Register 80, No. 7).
7. Amendment filed 12-1-80 as an emergency; designated effective 1-1-81 (Register 80, No. 49).
8. Order of Repeal of 12-1-80 order filed 12-5-80 by OAL pursuant to Government Code section 11349.6 (Register 80, No. 49).
9. Amendment filed 9-24-81; effective thirtieth day thereafter (Register 81, No. 39).
10. Amendment of subsection (e)(2) and (e)(3) filed 5-4-83; designated effective 6-1-83 pursuant to Government Code section 11346.2(d) (Register 83, No. 19).
11. Amendment filed 10-24-88; operative 11-23-88 (Register 88, No. 45).
12. Amendment filed 5-5-95; operative 6-5-95 (Register 95, No. 18).
13. Amendment of subsection (c)(3) filed 11-3-97 as an operational emergency pursuant to Penal Code section 5058(e); operative 11-3-97 (Register 97, No. 45). A Certificate of Compliance must be transmitted to OAL by 4-13-98 or emergency language will be repealed by operation of law on the following day.
14. Certificate of Compliance as to 11-3-97 order transmitted to OAL 2-3-98 and filed 3-12-98 (Register 98, No. 11).

**3317. Mental Health Evaluations for Disciplinary Hearings.**

An inmate shall be referred for a mental health evaluation prior to documenting misbehavior on a CDC Form 115, Rules Violation Report, in any case where the inmate is suspected of self mutilation or attempted suicide. If the mental health evaluation determines that it was an actual suicide attempt, a CDC Form 115 shall not be written and the behavior shall be documented on a CDC Form 128B (Rev. 4/74), General Chrono, for inclusion in the inmate's central file.

NOTE: Authority cited: section 5058, Penal Code. Reference: section 5054, Penal Code.

HISTORY:
1. Amendment filed 2-24-77; effective thirtieth day thereafter (Register 77, No. 9).
2. Repealer and new section filed 3-24-78 as an emergency; effective upon filing (Register 78, No. 12).
3. Certificate of Compliance filed 6-15-78 (Register 78, No. 24).
4. Repealer and new section filed 9-24-81; effective thirtieth day thereafter (Register 81, No. 39).
5. Relocation and amendment of former subsections 3317(a)–(b)(2) to subsections 3312(a)(3)(A)–(B) and new section filed 5-5-95; operative 6-5-95 (Register 95, No. 18).
6. Editorial correction deleting formerly relocated text (Register 95, No. 34).
7. Amendment of section heading and subsection (a), and repealer of subsections (b)–(b)(2) filed 8-23-95 as an emergency; operative

SUPERIOR COURT OF CALIFORNIA
COUNTY OF IMPERIAL

| | |
|---|---|
| **People**<br>Plaintiff,<br><br>vs.<br><br>**Wesley Hunter**<br>Defendant.<br><br>**DOB:** **07-03-69** | Jud. Officer: **Jeffrey B. Jones**<br>Clerk: **Virginia Ward**<br>Bailiff: **Luis Ibarra**<br>CSR: **Monica Savercool**<br>Interpreter:<br>Language:<br><br>Plaintiff Counsel/DA: **Steve VanDecker**<br><br>Defendant Counsel/PD: **Thomas Olafson** |
| Minutes: **Pre-Trial Conference**<br><br>Date: **February 20, 2007** | **Case No.** **JCF18935**<br>**El Centro Dept. 5** |
| **Charges:** **Count 1: PC4573.6** | |

☒ Defendant present ☒ in custody ☒ with Attorney

☒ Defendant advised and understands the maximum penalties, consequences of his plea, the possible defenses ☒ consequences of violation of probation ☒ possible deportation if not a citizen of the United States ☒ Defendant advised by the court of the right to a trial, the right of silence, the right to confront and cross-examine witnesses and the right to subpoena witnesses in his behalf; defendant waived each of these rights.

☒ Stipulation as to the factual basis for the plea.

☒ The court finds a ☒ written knowing, intelligent, voluntary, understanding and explicit waiver of constitutional rights and a factual basis for the plea.

☒ Nature of the charges stated by the Court.

☒ Defendant withdraws NOT GUILTY plea and enters a plea of

☒ NOLO CONTENDERE to the charge(s) of **PC4573 Possession Of Drugs Where Prisoners Are Kept.**

☒ Defendant waives his right to a speedy sentencing.

☒ Defendant's counsel concurs with the plea and waivers.

☒ The People state there will not be argument against the mitigating factors.

ORDER: ☒ Matter is referred to the Probation Officer for report and recommendation.
☒ Motion by The People to strike the prior remaining counts is granted.
☒ **Sentencing Hearing is set for 4/24/07 at 1:30 p.m. in Department 5.**

☒ Defendant is REMANDED.

DIST: ☐ DA ☐ PD ☐ DEF ☐ JAIL ☐ ATTY ☐ PROB ☐ CITY ATTY ☐ DOC

SUPERIOR COURT OF CALIFORNIA
COUNTY OF IMPERIAL

| | |
|---|---|
| People<br>Plaintiff,<br><br>vs.<br><br>**Wesley Hunter**<br>Defendant.<br><br>DOB: **07-03-69** | Jud. Officer: **Jeffrey B. Jones**<br>Clerk: **Virginia Ward**<br>Bailiff: **Luis Ibarra**<br>CSR: **Leslie Brock**<br>Interpreter:<br>Language:<br><br>Plaintiff Counsel/DA: **Steve VanDecker**<br><br>Defendant Counsel/PD: **Thomas Olafson** |
| Minutes: **Probation/Sentencing**<br><br>Date: **April 24, 2007** | **Case No.** **JCF18935**<br>**El Centro Dept. 5** |
| **Charges:** **Count 1: PC4573.6** | |

☒ Defendant present ☒ in custody ☒ with Attorney

☒ Formal arraignment for judgment waived. ☒ No legal cause.

COURT FINDS OFFENSE TO BE: Count 1, Possession Of Drugs Where Prisoners Are Kept, a violation of Penal Code section 4573.6

The Court finds the appropriate State Prison term is ☒ Lower ☐ Middle ☐ Upper.

Mr. Olafson argues for the lower term on behalf of the defendant.

The People submit on the Probation Report.

Court finds the middle term is appropriate.

The Defendant requests to address the Court and states his reasons why.

The Court advises the defendant that all information will be on record.

After defendant argues the issue of lower term, the Court further finds that the appropriate term would be the lower term.

ORDER:

Probation ☒ denied.

Defendant committed to ☒ State Prison for the term as follows: **The defendant is to serve Lower Term of 2 years, consecutively with time now serving.**

☒ Court finds the defendant ☒ does not have the ability to pay attorney fees;

☒ The Administration Fee of $25.00 is stricken.

☒ Pursuant to PC 296 (a) (1), the defendant is required to provide two specimens of blood, a saliva sample, right thumb print, and a full palm print impression of each hand for law enforcement identification analysis.

DIST: ☐ DA ☐ PD ☐ DEF ☐ JAIL ☐ ATTY ☐ PROB ☐ CITY ATTY ☐ DOC

FINANCIAL CONDITIONS OF PROBATION:

☒ Defendant shall pay a restitution fine in the sum of $ **200.00** pursuant to PC 1202.4(d).
☒ Defendant shall pay a restitution fine in the sum of $**200.00** pursuant to PC 1202.45

**Defendant is remanded into the custody of the Department of Corrections.**

# ABSTRACT OF JUDGMENT – PRISON COMMITMENT – DETERMINATE
# SINGLE, CONCURRENT, OR FULL-TERM CONSECUTIVE COUNT FORM

*[Not to be used for multiple count convictions or for 1/3 consecutive sentences]*

CR-290.1

SUPERIOR COURT OF CALIFORNIA, COUNTY OF: **IMPERIAL**

PEOPLE OF THE STATE OF CALIFORNIA vs.
DEFENDANT: **Wesley Hunter** DOB: **07-03-69**

AKA:

CII#: **A07217806**

BOOKING #: **N/A** ☐ NOT PRESENT

CASE NUMBER: **JDF18935**

COMMITMENT TO STATE PRISON ABSTRACT OF JUDGMENT ☐ AMENDED ABSTRACT

| DATE OF HEARING | DEPT NO. | JUDGE |
|---|---|---|
| 04-24-07 | 5 | Jeffrey B. Jones |

| CLERK | REPORTER | PROBATION NO. OR PROBATION OFFICER |
|---|---|---|
| Virginia Ward | Leslie Brock | Marcos Lopez |

| COUNSEL FOR PEOPLE | COUNSEL FOR DEFENDANT |
|---|---|
| Steve VanDecker | Thomas Olafson ☒ APPTD. |

1. Defendant was convicted of the commission of the following felony:

| CNT. | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION (MO/DATE/YEAR) | CONVICTED BY: JURY | CONVICTED BY: COURT | CONVICTED BY: PLEA | TERM (L, M, U) | TIME IMPOSED: YRS. | TIME IMPOSED: MOS. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | PC | 4573.6 | Possession of Drugs Where Prisoners Are Kept | 2004 | 02-20-07 | | | X | L | 2 | 0 |

2. ENHANCEMENTS charged and found to be true TIED TO SPECIFIC COUNTS (mainly in the PC 12022 series). List each count enhancement horizontally. Enter time imposed for each or "S" for stayed. DO NOT LIST ANY STRICKEN ENHANCEMENT(S).

| CNT. | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

3. ENHANCEMENTS charged and found to be true FOR PRIOR CONVICTIONS OR PRISON TERMS (mainly in the PC 667 series). List all enhancements horizontally. Enter time imposed for each or "S" for stayed. DO NOT LIST ANY STRICKEN ENHANCEMENT(S).

| ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | TOTAL |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

4. ☐ Defendant was sentenced pursuant to PC 667 (b)-(i) or PC 1170.12 (two-strikes).

5. FINANCIAL OBLIGATIONS (including any applicable penalty assessments):

Restitution Fine(s): $200.00 per PC 1202.4(b) forthwith per PC 2085.5; $200.00 per PC 1202.45 suspended unless parole is revoked.

Restitution per PC 1202.4(f): ☐ $_____ / ☐ Amount to be determined to ☐ victim(s)* ☐ Restitution Fund
(*List victim name(s) if known and amount breakdown in item 7 below.)

Fine(s): $_____ per PC 1202.5. $_____ per VC 23550 or _____ days ☐ county jail ☐ prison in lieu of fine ☐ CC ☐ CS

Lab Fee: $_____ per HS 11372.5(a) for counts ______. ☐ Drug Program Fee of $150 per HS 11372.7(a).

6. TESTING: a. ☐ AIDS pursuant to PC 1202.1 b. ☒ DNA pursuant to PC 296 c. ☐ other *(specify)*:

7. Other orders *(specify)*: **This Case is to run consecutively with time already serving**

8. TOTAL TIME IMPOSED EXCLUDING COUNTY JAIL TERM: 2 | 0

9. ☐ This sentence is to run concurrent with *(specify)*:

10. Execution of sentence imposed
   a. ☒ at initial sentencing hearing.
   b. ☐ at resentencing per decision on appeal.
   c. ☐ after revocation of probation.
   d. ☐ at resentencing per recall of commitment. (PC 1170(d).)
   e. ☐ other *(specify)*:

11.

| DATE SENTENCE PRONOUNCED | CREDIT FOR TIME SPENT IN CUSTODY | TOTAL DAYS. INCLUDING: | ACTUAL LOCAL TIME | LOCAL CONDUCT CREDITS | ☐ 4019 ☐ 2933.1 | TIME SERVED IN STATE INSTITUTION: | DMH | CDC | CRC |
|---|---|---|---|---|---|---|---|---|---|
| 04-24-07 | | | | | | | [ ] | [ ] | [ ] |

12. The defendant is remanded to the custody of the sheriff ☐ forthwith ☐ after 48 hours excluding Saturdays, Sundays, and holidays.
To be delivered to ☐ the reception center designated by the director of the California Department of Corrections.
☒ other *(specify)*: **RJ Donovan Correctional Facility, San Ysidro, CA**

CLERK OF THE COURT: I hereby certify the foregoing to be a correct abstract of the judgment made in this action.

| DEPUTY'S SIGNATURE | DATE |
|---|---|
| Virginia Ward *[signature: Virginia Ward]* | 05-01-07 |

This form is prescribed under PC 1213.5 to satisfy the requirements of PC 1213 for determinate sentences. Attachments may be used but must be referred to in this document.

Form Adopted for Mandatory Use
Judicial Council of California
CR-290.1 (Rev. January 1, 2003)

ABSTRACT OF JUDGMENT – PRISON COMMITMENT – DETERMINATE
SINGLE, CONCURRENT, OR FULL-TERM CONSECUTIVE COUNT FORM

Penal Code, §§ 1170, 1213, 1213.5

2007 JAN -4 PM 12: 11

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNT OF IMPERIAL

DATE: November 16, 2006
JUDGE: Joseph Zimmerman
REPORTER: Lori Kowalski
CLERK: Lorie Gonzales
BAILIFF: None

INDICTMENT PRECEEDING

IN ATTENDANCE: STEVE VAN DECKER, DEPUTY DISTRICT ATTORNEY

3:35 p.m. Court conveyed.

The clerk takes roll of the grand jurors present. 19 out of 19 grand jurors are present.

The Court inquires of the grand jury foreperson and she confirms to the Court that the same twelve or more grand jurors deliberated and voted to return an Indictment as to defendant **Wesley Hunter.**

The Court reviews the Indictment submitted.

**THE COURT DECLARES the Indictment to be a True Bill and assigns it a case number of *JCF18935* as to defendant Wesley Hunter. The Court orders the Indictment be sealed for a period of at least ten days. The exhibits and exhibit list are ordered lodged. Bail is set in the amount of $50,000 as to defendant, Wesley Hunter. A Video Arraignment as to each defendant is set for 1/8/07 at 1:30 p.m. in Department 8.**

THE FOREGOING INSTRUMENT IS A CORRECT COPY OF THE ORIGINAL ON FILE IN THIS OFFICE.
December 20, 2006
CLERK OF THE COURT
STATE OF CALIFORNIA
IMPERIAL COUNTY
JOSE O. GUILLEN
Leana Dal DEPUTY

MINUTE ORDER



IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF IMPERIAL

| | |
|---|---|
| The People of the State of California,<br>Plaintiff,<br>vs.<br>WESLEY HUNTER K83465<br>Defendant(s). | CASE NO. JCF18935<br><br>**INDICTMENT** |

The Grand Jury of the County of Imperial, State of California, accuses the Defendant(s) of committing, in the County of Imperial, State of California, before the finding of this indictment, the following crime(s):

**COUNT 1- POSSESSION OF ILLEGAL SUBSTANCES IN A JAIL FACILITY, a felony, in violation of Penal Code 4573.6.**

On or about April 21, 2004, WESLEY HUNTER, willfully, unlawfully and knowingly posses MARIJUANA, while in CENTINELA STATE PRISON, said defendant not being then and there authorized to possess said MARIJUANA, by the rules of CENTINELA STATE PRISON, and said defendant not being then and there specifically authorized by the jailer and other person in charge of said county jail to possess said MARIJUANA.

**IT IS FURTHER ALLEGED** that WESLEY HUNTER, committed this offense while confined in a state prison, within the meaning of Penal Code Section 1170.1(c).

**IT IS FURTHER ALLEGED** that WESLEY HUNTER pursuant to Penal Code sections 1170.12(a) through (d) and 667(b) through (i), has suffered the following prior conviction of a serious or violent felony or juvenile adjudication:

| CRT CASE: | CODE/STAT: | CONV. DATE: | COUNTY: | STATE: | COURT: |
|---|---|---|---|---|---|
| VA038249 | 245(b) PC (12022.5(a) PC) | 09/24/97 | L.A. (SOUTH EAST) | CA | SUPERIOR |

**NOTICE:** Pursuant to Penal Code section 1054.5(b), the People are hereby requesting that defense counsel provide discovery to the People as required by Penal Code section 1054.3.

**"A TRUE BILL"**

Foreperson of the Grand Jury

Date: 11/16/2006

**GILBERT G. OTERO, District Attorney**

Deputy District Attorney

Date: 11/16/06

SUPERIOR COURT OF CALIFORNIA
THE GREAT SEAL OF THE STATE OF CALIFORNIA
COUNTY OF IMPERIAL

THE FOREGOING INSTRUMENT IS A CORRECT COPY OF THE ORIGINAL ON FILE IN THIS OFFICE.
December 06, 2006
CLERK OF THE COURT
STATE OF CALIFORNIA
IMPERIAL COUNTY
JOSE O. GUILLEN
DEPUTY

1-2-07

**NOTICE OF ARRAIGNMENT CHRONO**

A-5 131L

NAME and NUMBER **HUNTER, WESLIE K-83465 KVSP** CDC-128-B (Rev. 4/74)

On Monday January 8, 2007, at approximately **1245** hours, you are scheduled to appear before a Judge from the Imperial County Superior Court for arraignment in the matter of the People vs. DEXTER. A complaint has been filed against you for your involvement in Incident Report Log **CEN-FCP-04-04-0116,** a violation of California Penal Code Section **4573.6.** The hearing will be conducted in Facility A BPT Conference Room and will afford you the opportunity to enter a plea and be appointed legal representation. A court order has been filed mandating your appearance.

CC: Original, Central File
DA Liaison
Inmate

T.RYAN, DA Liaison
Investigative Services Unit
Centinela State Prison

DATE: December 21, 2006

GENERAL CHRONO

0000007

0000007



*Centinela*
STATE PRISON
# INVESTIGATIVE SERVICES UNIT

CENTINELA
STATE PRISON
WARDEN, GEORGE GIURBINO

## DISTRICT ATTORNEY REFERRAL STATUS REPORT
## IMPERIAL COUNTY DISTRICT ATTORNEY

Date: 5/17/04
Date: I.R. Received: 5/6/04
Report Dated: 4/21/04

Incident Report (IR) Number: CEN-FCP-04-04-0116
Incident Report Title: PC 4573
Inmate Name & CDC Number: HUNTER, W., K83465
FC-04-04-100

The above case was evaluated for referral to the Imperial County District Attorney and the following decision was made:

_____ (A) Report returned to involved staff for more data.
_____ (B) Investigation being conducted by the Investigative Services Unit.
_____ (C) No referral to the District Attorney will be made due to:

_____ (1) There was no significant injury.
_____ (2) Potential for injury existed, but victim/witness will not testify.
_____ (3) Prima facie evidence exists, but there is insufficient data for other than an administrative action.
_____ (4) Insufficient quantity of drugs for prosecution.
_____ (5) Incomplete chain of evidence.
_____ (6) Inmate has an extended sentence and the most appropriate resolution will be effected via administrative disposition.
_____ (7) Non referable offense.
_____ (8) Does not meet criteria of agreement with D.A. __________
_____ (9) Factually unfounded.
_____ (10) Lack of Probable Cause.
_____ (11) Other: __________

XX (a) On 5 / 24 / 04, this case was ***referred*** to the Imperial County District Attorney.
_____ (b) On ___/___/___, the Investigative Services Unit received written notice that the Imperial County District Attorney ***rejected/dismissed*** this case.
_____ (c) On ___/___/___, the Investigative Services Unit ***resubmitted*** this case to Imperial County District Attorney's Office.
_____ (d) On ___/___/___, the Investigative Services Unit received written notice that the Imperial County District Attorney ***accepted*** this case for prosecution.
_____ (e) Any pending disciplinary action should be completed at this time and a closure report forwarded to the Associate Warden-Housing for distribution.

The above is pursuant to California Code of Regulations, Title 15, Section 3316, which allows for discretionary referral of criminal cases. Any questions may be addressed via the Investigative Services Unit, at extension 5510.

Investigative Services Unit

Centinela State Prison
CC:

**ROUTING:**
WHITE • 837 Incident Package - BLUE • Chief Deputy Warden - GREEN • Captain__________ - CANARY • Facility Lieutenant__________
PINK • Records (C-File) - GOLDENROD • Inmate

0 000008

0074

Johnso

# Centinela
STATE PRISON
# INVESTIGATIVE SERVICES UNIT

CENTINELA
STATE PRISON
WARDEN, GEORGE GIURBINO

## DISTRICT ATTORNEY REFERRAL STATUS REPORT
## IMPERIAL COUNTY DISTRICT ATTORNEY

Date: 07/06/04
Date: I.R. Received: 05-06-04
Report Dated: 04-21-04

Incident Report (IR) Number: CEN-FCP-04-04-0116
Incident Report Title: P.C. 4573.6
Inmate Name & CDC Number: HUNTER, W. K-834650 K83465

The above case was evaluated for referral to the Imperial County District Attorney and the following decision was made:

____ (A) Report returned to involved staff for more data.
____ (B) Investigation being conducted by the Investigative Services Unit.
____ (C) No referral to the District Attorney will be made due to:

____ (1) There was no significant injury.
____ (2) Potential for injury existed, but victim/witness will not testify.
____ (3) Prima facie evidence exists, but there is insufficient data for other than an administrative action.
____ (4) Insufficient quantity of drugs for prosecution.
____ (5) Incomplete chain of evidence.
____ (6) Inmate has an extended sentence and the most appropriate resolution will be effected via administrative disposition.
____ (7) Non referable offense.
____ (8) Does not meet criteria of agreement with D.A.
____ (9) Factually unfounded.
____ (10) Lack of Probable Cause.
____ (11) Other: ____

____ (a) On 05 /24 /04 , this case was ***referred*** to the Imperial County District Attorney.

____ *(b) On ___/___/___, the Investigative Services Unit received written notice that the Imperial County District Attorney* ***rejected/dismissed*** this case.

____ (c) On ___/___/___, the Investigative Services Unit ***resubmitted*** this case to Imperial County District Attorney's Office.

XXX (d) On 07-06-04 , the Investigative Services Unit received written notice that the Imperial County District Attorney ***accepted*** this case for prosecution.

____ (e) Any pending disciplinary action should be completed at this time and a closure report forwarded to the Associate Warden-Housing for distribution.

The above is pursuant to California Code of Regulations, Title 15, Section 3316, which allows for discretionary referral of criminal cases. Any questions may be addressed via the Investigative Services Unit, at extension 5510.

Investigative Services Unit

Centinela State Prison
cc:

**ROUTING:**
WHITE • 837 Incident Package • BLUE • Chief Deputy Warden • GREEN • Captain C - CANARY • Facility Lieutenant C
PINK • Records (C-File) • GOLDENROD • Inmate

CEN-ISU-DA-001

CEN 224 • D.A. REPORT • G/A 'B' 3/2002

EXHIBIT "E"

COPY OF RVR AND CDC-904 SENT TO RECORDS ON: ____________

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| K-83465 | HUNTER | | CEN IV | C4-128L | FC-04-04-1 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| CCR §3016 | POSSESSION OF A CONTROLLED SUBSTANCE W/INTENT TO DISTRIBUTE | FAC 'C' | 4-21-04 | 1120 HOURS |

CIRCUMSTANCES On Wednesday APRIL 21, 2004, at approximately 1120 hours Centinela State Prison Investigation Services Unit (ISU) received written notification from the DOJ Bureau of Forensic Services Lab, that the controlled substance submitted into evidence on 4/1/04. Tested positive for the presence of Marijuana.

CIRCUMSTANCES AS FOLLOWS:

On 4/01/04, at approximately 1930 hours, while performing my duties as Facility "C" SERGEANT. Housing Unit C-4 Staff notified of assistance needed in the Unit. Upon arrival in the Building I observed staff at Cell 128 with the door secured open. Both Inmates HUNTER (K-83465) 128L and BREWSTER (T-49305) 128U were inside. As I walk walked up I gave verbal orders to both HUNTER seated on the top bunk and BREWSTER seated on the lower bunk to exit the cell, to allow for staff to search the cell. Both Inmates subsequently complied with my orders. I placed handcuffs on BREWSTER and he was escorted out by staff. I then placed handcuffs on HUNTER and removed him out of the cell. While exiting Inmate HUNTER began to drop little yellow bindles from his right pants leg. HUNTER then stated "THERE it is" Officer M. Quiros confiscated approximately 16 bindles of suspected contraband from the floor.

(CONTINUE ON PART C)

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| ▶ E. BENYARD, Correctional Sergeant | 4/ /04 | FAC. 'C' Sgt. | S/M |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING |
|---|---|---|
| ▶ M. POLLARD, Lieutenant | | DATE ____ LOC. ____ |

| CLASSIFIED | OFFENSE DIVISION | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☒ SERIOUS | | | ▶ D. DEXTER, Facility "C" Captain | ☐ HO ☒ SHO ☐ SC ☐ FC |

COPIES GIVEN INMATE BEFORE HEARING

| | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT | |
|---|---|---|---|---|---|
| ☐ CDC 115 | ▶ | 4-22-04 | 2124 | | |
| ☒ INCIDENT REPORT LOG NUMBER: FCP04040116 | BY: (STAFF'S SIGNATURE) | DATE 4/20/04 | TIME 1000 | BY: (STAFF'S SIGNATURE) ▶ | DATE 5/1/04 TIME 2000 |

HEARING

Classified A Div. "B" Possession by Capt. Dexter

REFERRED TO ☐ CLASSIFICATION ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | SIGNATURE | DATE | TIME |
|---|---|---|---|
| | ▶ | | |

| REVIEWED BY: (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE |
|---|---|---|---|
| ▶ | | ▶ | |

| | BY: (STAFF'S SIGNATURE) | DATE | TIME |
|---|---|---|---|
| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | ▶ | | |

CDC 115 (7/88)

COPY OF RVR AND CDC-804 SENT TO ...RDS ON: 5/4/04 BY: [illegible]

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| K-83465 | HUNTER | 12/25/13 | CEN IV | C4-128L | FC-04-04-100 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| CCR §3016 | POSSESSION OF A CONTROLLED SUBSTANCE W/INTENT TO DISTRIBUTE | FAC 'C' | 4-21-04 | 1120 HOURS |

CIRCUMSTANCES On Wednesday APRIL 21, 2004, at approximately 1120 hours Centinela State Prison Investigation Services Unit (ISU) received written notification from the DOJ Bureau of Forensic Services Lab, that the controlled substance submitted into evidence on 4/1/04. Tested positive for the presence of Marijuana.

CIRCUMSTANCES AS FOLLOWS:

On 4/01/04, at approximately 1930 hours, while performing my duties as Facility "C"SERGEANT. Housing Unit C-4 Staff notified of assistance needed in the Unit. Upon arrival in the Building I observed staff at Cell 128 with the door secured open. Both Inmates HUNTER (K-83465) 128L and BREWSTER (T-49306) 128U were inside. As I walk walked up I gave verbal orders to both HUNTER seated on the top bunk and BREWSTER seated on the lower bunk to exit the cell, to allow for staff to search the cell. Both Inmates subsequently complied with my orders. I placed handcuffs on BREWSTER and he was escorted out by staff. I then placed handcuffs on HUNTER and removed him out of the cell. While exiting Inmate HUNTER began to drop little yellow bindles from his right pants leg. HUNTER then stated "THERE it is" Officer M. Quiros confiscated approximately 16 bindles of suspected contraband from the floor.

(CONTINUE ON PART C)

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| ▶ E. BENYARD, Correctional Sergeant [signature] | 4-23-04 | FAC. 'C' Sgt. | S/M |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING |
|---|---|---|
| ▶ M. POLLARD, Lieutenant [signature] Who changed | 4/23/04 | DATE [illegible] LOC. |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☒ SERIOUS | 121 ~~F30B~~ 1 A-2 [illegible] | 4/23/04 | ▶ D. DEXTER, Facility "C" Captain | ☐ HO ☒ SHO ☐ SC ☐ FC |

COPIES GIVEN INMATE BEFORE HEARING

| | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT |
|---|---|---|---|---|
| ☐ CDC 115 | ▶ [signature] | 4-27-04 | 2020 | ~~[illegible]~~ DOJ DRUG REPORT |

| | BY: (STAFF'S SIGNATURE) | DATE | TIME | BY: (STAFF'S SIGNATURE) | DATE | TIME |
|---|---|---|---|---|---|---|
| ☒ INCIDENT REPORT LOG NUMBER: FCR04040116 | ▶ [signature] 7219 | 4/30/04 | 1000 | ▶ R. [signature] | 5/4/04 | 2000 |

HEARING RECLASSIFIED RVR COPY ISSUED TO INMATE ON ~~6-2-04~~ RQ 6-2-04 1900 HR TIME % R. Quiroz

ISSUED INMAIL/REROUTE ON 6-4-04 % [illegible]
Reissued/Reclassed RVR issued to me AFTER the RVR Hearing on morning of 6-4-04
It was "lost" n reroute mail

REFERRED TO ☐ CLASSIFICATION ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | | SIGNATURE | DATE | TIME |
|---|---|---|---|---|
| | | ▶ | | |
| REVIEWED BY: (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE | |
| ▶ | | ▶ | | |
| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) ▶ | | DATE | TIME |

000011

The original IE report can be used if this was not an appeal issue. If there is any question about the adequacy of the IE report, assign a new IE and do it all over again.

Even if it was not an appeal issue, assign a new SHO.

Attach a copy of the original appeal and its disposition to the disciplinary so the new SHO does not repeat the original error.

## CHARGES REHEARD: TIME CONSTRAINTS

The time constraint requiring that charging the inmate within 15 days of discovery is not altered by appeal action. If you charged him/her with a different offense and it has been more than 15 days since the original discovery, you cannot assess a credit forfeiture unless you have new evidence. The other time constraints begin again when ordered reheard by appeal.

## TIME CONSTRAINTS: FIRST LEVEL

The CDO review takes the place of the First Level of appeal. However, since there is no inmate interview, this is not a true First Level review. The appeal process actually begins with the Second Level. For this reason, modification or rehearing orders by the CDO do not alter time constraints. As long as you provide the inmate with timely notice of this additional delay, this should not prevent assessment of credit forfeiture.

## TIME CONSTRAINTS: SECOND AND THIRD LEVEL

Second and Third Level appeals require a modification order issued by the Appeal Coordinator. This modification order specifies the date of issue for the new hearing process. If not, it is the date the written order is received by the staff members responsible for the new hearing.

## ADMINISTRATIVE DELAYS

The delay from the original decision ordering the rehearing to the issue date can be considerable. If the inmate is housed at another institution, time constraints are suspended until he is returned and available for rehearing. For example, the third level appeal reviewer may tell the inmate or staff about his/her decision that a new hearing is required. It may be a month or so before the written instructions are received by the appeals coordinator and the modification order issued. These delays are considered unavoidable and do not constitute a violation of time constraints.

SHO

appeal issue opens. Your charge shall fit the evidence. What sometimes happens is that you find the evidence does not support the charge listed on the disciplinary. It supports another charge. Rather than let the inmate get away with anything, you find him/her guilty of the other charge. This is not acceptable and you are only creating more problems. If the evidence fits a different charge, stop the hearing and reissue the disciplinary with the correct charge. Remember that the inmate shall be charged within 15 days of discovery or a credit forfeiture cannot be assessed. Reissuing the disciplinary because the original charge was inaccurate does not alter this time constraint.

There is one exception where you can find the inmate guilty of a different charge than that listed on the disciplinary report. You can find the inmate guilty of a lesser and included offense. This means there is not enough evidence to support the original charge but there is enough evidence to support a lesser charge. This new charge counts as a lesser and included offense only when it is part of the greater charge. For example, attempting to commit a particular offense is always a lesser and included charge of committing that particular offense. Use of lesser and included offenses is a tricky business. It is very tempting to define the more appropriate charge as a lesser and included offense while hoping that no one shall notice that it is not. You shall lose on appeal. Time constraints shall have expired so you cannot reissue the disciplinary with the correct charge.

## INMATE SHALL BE ALLOWED A REASONABLE AMOUNT OF PREPARATION TIME

This is the reason you cannot hear a disciplinary unless the inmate received his/her copy of all reports at least 24 hours in advance of the hearing.

The inmate can request additional time for preparation. If you agree he/she needs additional preparation time, the hearing can be delayed a maximum of 30 more days. Of course, as the inmate has requested the delay, the requirement for a hearing within 30 days of service is also waived.

The inmate can waive this due process right and agree to his/her hearing without 24 hours for preparation. It is common for inmates to verbally waive this preparation time and later deny it was waived. Third level appeals have ordered such hearings reheard because of insufficient proof of waiver.

You should request that the inmate sign on the CDC 115 that they waive or have the inmate sign a CDC 128-B stating that he/she is waiving the 24-hour minimum preparation time and prepared for the hearing. If you choose, the waiver should state that the inmate has been advised of the minimum 24 hours for hearing




**(22) CLASSIFIED BY:** The name of the person classifying this disciplinary as serious or administrative and giving its offense division, if any, shall be typed in this box and it shall be signed by that person. Per CCR 3313(a) and DOM 52080.3.2, this person must be qualified as a SHO. An exception is made for facilities with only one staff member at the rank of Lieutenant and above. In this case, an experienced Sergeant can assume this role. Anyone who classified the disciplinary cannot hear it or become involved in reviewing appeals of the finding.

**(23) HEARING REFERRED TO: HO, SHO, SC, FC:** *HO* means a Hearing Officer. The Hearing Officer is any staff member authorized to hear Administrative Disciplinaries. Usually, this means either a Correctional Sergeant, Correctional Counselor I, or above. SHO means a Senior Hearing Officer. This means someone certified to hear serious Disciplinaries by the Chief Disciplinary Officer. A SHO shall have the rank of Correctional Lieutenant, Correctional Counselor II, or above. *SC* stands for a Disciplinary Subcommittee and *FC* for Institutional Disciplinary Committee or Full Committee. If it is administrative, check the box for HO. If it is serious, check the box for SHO. The CDO can require a hearing by the SHO or a committee.

**(24) CDC 115:** Prior to his/her hearing, the inmate is issued a copy of the disciplinary with the top portion completed. This informs the inmate of the charges against him/her and the evidence in support of this charge. After this copy has been given to the inmate, this box is checked showing that it was issued to the inmate. This copy of the disciplinary is known as the PRE-HEARING copy.

**(25) BY (STAFF SIGNATURE):** The staff member who actually gives the pre-hearing copy of the disciplinary to the inmate signs here. The staff member shall sign in this box legibly so this staff member can be identified.

**(26 & 27) DATE and TIME:** Enter the date and time the inmate received his/her pre-hearing copy of the rule violation report. This date must be accurate as many due process time constraints are tied to this date.

**(28) TITLE OF SUPPLEMENT:** The inmate is entitled to a copy of all nonconfidential reports used in the hearing and he shall receive these at least 24 hours prior to his/her hearing. This includes the CDC 115-A after it has been reviewed for any requested postponement, IE, or SA.

Photographs of the crime scene are considered evidence rather than reports. The CDC 7219 is a report. If the CDC 7219 concerns someone other than the inmate (for example, the report on the victim), screen the form for confidential information. If confidential information is on the CDC 7219, you should issue a CDC 1030 disclosing the relevant, nonconfidential information to the inmate.



COPY OF RVR AND CDC-8 SENT TO RECORDS ON: 5/4/04 [illegible]

STATE OF CALIFORNIA DEPARTMENT OF CORRECTIONS JUL 1 2 2004

# RULES VIOLATION REPORT

FC 6/29/04

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| K-83465 | HUNTER | 12/25/13 | CEN IV | C4-128L | FC-04-04-10[illegible] |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| CCR §3016 | POSSESSION OF A CONTROLLED SUBSTANCE W/INTENT TO DISTRIBUTE. | FAC 'C' | 4-21-04 | 1120 HOURS |

CIRCUMSTANCES: On Wednesday APRIL 21, 2004, at approximately 1120 hours Centinela State Prison Investigation Services Unit (ISU) received written notification from the DOJ Bureau of Forensic Services Lab, that the controlled substance submitted into evidence on 4/1/04. Tested positive for the presence of Marijuana.

CIRCUMSTANCES AS FOLLOWS:

On 4/01/04, at approximately 1930 hours, while performing my duties as Facility "C"SERGEANT. Housing Unit C-4 Staff notified of assistance needed in the Unit. Upon arrival in the Building I observed staff at Cell 128 with the door secured open. Both Inmates HUNTER (K-83465) 128L and BREWSTER (T-49306) 128U were inside. As I walk walked up I gave verbal orders to both HUNTER seated on the top bunk and BREWSTER seated on the lower bunk to exit the cell, to allow for staff to search the cell. Both Inmates subsequently complied with my orders. I placed handcuffs on BREWSTER and he was escorted out by staff. I then placed handcuffs on HUNTER and removed him out of the cell. While exiting Inmate HUNTER began to drop little yellow bindles from his right pants leg. HUNTER then stated "THERE it is". Officer M. Quiros confiscated approximately 16 bindles of suspected contraband from the floor.

(CONTINUE ON PART C)

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| E. BENYARD, Correctional Sergeant [signature] | 4-23-04 | FAC. 'C' Sgt. | S/M |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | INMATE SEGREGATED PENDING HEARING |
|---|---|---|
| [signature] M. POLLARD, Lieutenant | 4/23/04 | DATE 4-1-04 LOC. C6-116L |

| CLASSIFIED | OFFENSE DIVISION | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☒ SERIOUS | [illegible] B / 10/180 A-2 | 4/23/04 [illegible]/04 | [signature] D. DEXTER, Facility "C" Captain | ☐ HO ☒ SHO ☐ SC ☐ FC |

COPIES GIVEN INMATE BEFORE HEARING

| ☐ CDC 115 | BY: (STAFF'S SIGNATURE) [signature] | DATE 4-23-04 | TIME 2020 | TITLE OF SUPPLEMENT [illegible] DOJ DRUG REPORT |
|---|---|---|---|---|
| ☒ INCIDENT REPORT LOG NUMBER FCP04040116 | BY: (STAFF'S SIGNATURE) [signature] 7219 | DATE 4/30/04 | TIME 1000 | BY: (STAFF'S SIGNATURE) R. [signature] DATE 5/1/04 TIME 2000 |

HEARING RECLASSIFIED RVR COPY ISSUED TO INMATE ON 6-2-04 6-2-04 1900 HR TIME c/o R. [signature]

This hearing convened on 6/2/04, at 0950 hours, I introduced myself to Inmate HUNTER as the Senior Hearing Officer, Lt. B.E. DAUBENSPECK. This Inmate is not a participant in the Mental Health Services Delivery System at the CCCMS/EOP/MHCB level of care. Inmate was not assigned a Staff Assistant. Inmate HUNTER stated that his health was good, hearing/vision is not impaired. Inmate HUNTER acknowledged receipt of this CDC-115 RVR, and the following associated documents: CDC-115A, CDC-115 PART C, INVESTIGATIVE EMPLOYEE'S REPORT, 837-CRIME/INCIDENT REPORT, DOJ LAB RESULTS, more than twenty four (24) hours prior to the start of this hearing. These reports as well as the disciplinary charge of POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DISTRIBUTE were reviewed with Inmate HUNTER at this hearing. Inmate HUNTER stated that he understood all documentation and was prepared to begin. NOTE: On 6/2/04, at approximately 10:00 hours, SHO postponed hearing due to RVR-115 to be re-classified from a Division "B" to the correct Division "A-2" the hearing was reconvened on 6/4/04, at 0945 hours.

(Continued on CDC-115 part C)

REFERRED TO ☐ CLASSIFICATION ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | SIGNATURE | DATE | TIME |
|---|---|---|---|
| Lt. B.E. DAUBENSPECK, Senior Hearing Officer | [signature] | 6-4-04 | 0[illegible] |

| REVIEWED BY: (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE |
|---|---|---|---|
| [signature] D. DEXTER, Facility 'C' Captain | 6/21/04 | [signature] J. SALAZAR, Chief Disciplinary Officer ACDO | 6/28/04 |

| ☒ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) [signature] | DATE 7/1/04 | TIME 123[illegible] |
|---|---|---|---|

CDC 115 (7/88) RD

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT - PART C

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-83465 | HUNTER | FC-04-04-100 | CENTINELA | 4-21-04 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☒ 115 CIRCUMSTANCES ☐ HEARING ☐ IE REPORT ☐ OTHER ______

As I performed a clothed body search on HUNTER, I removed a additional packet of suspected contraband wrapped in clear plastic from HUNTERS left front pocket. The contraband contained approximately 11 bindles of suspected Marijuana. At approximately 1945, Officer Quiros relinguished custody to me 16 bindles. I then maintained sole custody of all suspected contraband until log and secured in evidence locker 7B in Complex Control.

Inmate HUNTER is aware of this report.
Inmate HUNTER is not a participant in the Mental Health Delivery System.

SUPP,E. BENYARD Correctional SERGEANT

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| [signature] | 4-23-04 |

| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| | [signature] | 5/4/04 | 2000 |

CDC 115-C (5/95)

OSP 99 2508

0049

000013

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

RULES VIOLATION REPORT - PART C

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-83465 | HUNTER | FC-04-04-100 | CENTINELA | 6/2/04 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒ HEARING ☐ IE REPORT ☐ OTHER

**DISTRICT ATTORNEY:** This matter was referred for felony prosecution. On 5/4/04, inmate HUNTER, did request this hearing be postponed pending outcome of the referral. On 5/21/04, inmate HUNTER, revoked postponement. Inmate HUNTER signed 115A on 6/2/04.

**DUE PROCESS:** This disciplinary was served on Inmate **HUNTER** within 15 days of discovery and the hearing was held within 30 days of service. Time constraints have been met. There are no due process issues.

**STAFF ASSISTANT:** Was not assigned. Inmate **HUNTER** is not illiterate, claims High School Graduate, can read and write, is English speaking, the issues are not complex, is not a participant in the Mental Health Services Delivery System, and did not require a confidential relationship in preparing his defense.

**INVESTIGATIVE EMPLOYEE:** Was assigned, the issues are not complex, the inmate's housing status did preclude his gathering evidence; additional information was not necessary for a fair hearing. Inmate **HUNTER** received a copy of the I.E. Report and had no objections to the report.

**NOTE:** C/O Durazo did issue inmate HUNTER, a copy of the re-classified RVR on 6/2/04 at 1900 hours.

**PLEA:** Inmate **HUNTER** plead **NOT GUILTY**, and gave the following testimony as his defense: "Inmate stated that he did not receive copies of re-classified RVR, C/O Durazo, had."

**The following written PLEA** was submitted to SHO by inmate HUNTER.

"I wish to enter a plea of no contest in which I neither admit nor deny guilt, but accept your finding of guilt as true and un-contested so that we may get through the Administration portions of this issue. However, due to the D.A. referral in this matter, I have elected to speak in vague terms, while setting forth details to help analyze the facts of this 115.

(1) **FACTS:** This is a matter involving 27 caps/"Bindles" of marijuana (approx. 7.83 grams of actual substance [9x.87] and 7.90 grams of paper, etc! 15.73 total. There was more paper than product and this can only be seen as a very minor amount of substance by any account, in fact this is less than $5.00 worth on the streets. But the chief question to be decided is whether this is a matter of DIV. B Possession, as this RVR has been classified or one of DIV. A-2 distribution, which rumor has it that the SHO's here at Centinela most always go with in order to hand out the most harsh penalties. (Differences outlined below) in keeping with hope and faith I setforth the following details and argument in my request for a finding of Div. B Possession.

| DIVISION A-2 DISTRIBUTION: | The Most Major Differences | DIVISION B POSSESSION |
|---|---|---|
| 30 days Loss-of-Privileges | | 30 days Loss-of-Privileges |
| 1 Year Urine testing | | 1 Year Urine Testing |
| N/A Meetings | | N/A Meetings |
| 1 Year no visits | | 90 Days No Visits |
| 2 Years visiting behind glass | | 90 Days Visiting behind glass |
| No family visits ever | | 1 Year No family visiting |
| 151-180 Behavioral days credit loss | | 121-130 Behavioral days credit loss |
| 8 points added for Div. A 115 | | 6 points added for Div. B 115 |
| 4 extra points added for distribution | | |
| 2 Years close B custody | | |
| 6, 9, 12 month SHU | | |

LT. B.E. DAUBENSPECK, SENIOR HEARING OFFICER

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| [signature] | 6-22-04 |

| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| | [signature] | 7/7/04 | 1230 |

CDC 115-C (5/95)

OSP 99 25082

0050

0000014

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

RULES VIOLATION REPORT - PART C

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-83465 | HUNTER | FC-04-04-100 | CENTINELA | 6/2/04 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒ HEARING ☐ IE REPORT ☐ OTHER ______

PLEA: (CONTINUED)

(2) Arguments/Logic/Reasoning:

In Prison, marijuana is sold in "cap"/bindle form. For $100.00, a guy gets 25-35 caps not a solid bindle. Thus the presence of several caps, alone does not in and of itself, make a guy a "distributor" but more likely than not a simple user/possessor. To be a "distributor", it would seem that, there would need to be atleast some evidence of a sale/transaction and surely the guy, who buys a bit for personal use, should not be punished to the same extent/degree as a person who smuggles the stuff into prison. Thus the charge of possession should be made to apply. Consider this: when a user buys cocaine they purchase small individual "rocks", with no option to buy one chunk or even powder; only the "big fish"/distributors ever touch the powder. The same is true with in a prison setting the guy with the bundle/solid chunk is more likely the distributor/smuggler; the guy who bought the caps is no more than a user/possessor. In prison caps/bindles are sold at $8.00-10.00 each but for $50.00 a guy can get a deal for 10-15 caps and for $100.00 he gets 25-35 caps, thus value wise this is how it's usually purchased to take advantage of the "Deal" but again, this does not therefore then mean a person with "Caps"/Bindles is automatically a "Distributor."

(3) Visiting

My only visitor is my mother. My mother has breast cancer that has spread to her lymph-nodes. In 1995 she was given only a year to live. She then went into remission and has been in remission since. The doctors say that the cancer will re-emerge eventually and that once it does it will move swiftly leaving her with only days to live. The point is my visits had nothing to do with this RVR. Yet a 3 year visiting restriction could mean I'll never have the chance to hug or touch my mother again. This is an ENORMOUS penalty! The point of taking an inmates visits is to stem the flow of drugs being smuggled into the institution it is not meant to be purely punitive in nature. This point is made evident by the fact that the length of visiting restrictions is the only major difference between the two penalties: the drug smuggler/trafficker gets a 3 year restriction in accordance with a DIV. A and a user/purchaser/possessor gets a Div. B and a 6 month visiting restriction: The 6 month penalty is the "wake up call" that says don't jeopardize what you love. The 3 years is the punishment for abusing your visiting privilege and jeopardizing your love ones. Finally in the event that you (The SHO) decide to still go ahead and charge me with a Div. A-2 distribution infraction, then I desperately request that all or at least part of the visiting restrictions be suspended: in accordance with the title 15 3315 (F) 5 (5) "suspension of all or part of dispositions other than credit forfeitures, ordered random drug testing and classification committee referrals, for up to six months based on the inmates compliance with the conditions specified for suspension."

(4) ADDITIONAL POINTS TO CONSIDER:

- I have only had 2 serious RVR's within the last 8 years of incarceration (Last one over 2 years ago)
- I very seldom used and have no history of drug use
- I have never had a dirty urine test
- I have taken responsibility for this RVR from the beginning
- I now have level 3 points and won't be returning to the same yard
- I have a excellent work history and even helped create more educational programs for inmates
- I am a part of the coastline community college program and I've helped coordinate this program, etc
- I have been instrumental in quelling possible disturbances on Facility "C"
- I have prepared the foundation for and begun a prison's youth outreach organization
- I have written and published 5 books since incarcerated and still set and achieve positive goals
- I will not be using anymore and by suspending the visiting restrictions it at least gives me a chance to prove that I will heed my warning. I did not smuggle, distribute or traffic drugs.

LT. B.E. DAUBENSPECK, Senior Hearing Officer

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| [signature] | 6-22-04 |

| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| | [signature] | 7/7/04 | 1230 |

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-83465 | HUNTER | FC-04-04-100 | CENTINELA | 6/2/04 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒ HEARING ☐ IE REPORT ☐ OTHER ___

**PLEA: (CONTINUED)**

**(5) CLOSING:**

In considering all of the above, the preponderance of the evidence clearly shows that it is more likely than not that I am guilty of Possession as oppose to distribution. Which by definition of the Title 15, 1533000 "means the sale or unlawful dispersing by an inmate or Parolee, of any controlled substance; or the solicitation of or conspiring with others in arranging for the introduction of Controlled Substances into any institution, camp, contract health facility, or community correctional facility for the purpose of sales or distribution." In fact there is NO evidence (i.e. Addresses, notes, sittings, lists, receipts, visiting infractions, phone conversations or even a meaningless kite by one of the confidential informants, etc.) that in any way indicates or implies distribution. (see enclosed title 15, page 10; definition of "Distribution"). In the absolute worse case scenario it must at least be said that the "with intent to distribute" portion of the RVR is no more than that the writers assumption and even if taken as true, it can only be said then that there was to be an attempt at distribution as the actual act of distribution can not be said to have ever occurred and even this is an important distinction as an SHO's finding of an "Attempted" Action carries only one-half (½) the SHU term. (See enclosed title 15, pages 119 and 10). Surely, the findings and disciplines in this case should not be as stern as those given for someone caught smuggling drugs into an institution, this is a minor case that did not involve any violation or misuse of visiting, it is therefore that I simply request that the punishments simply be made to fit the actual crime.

I hereby respectfully request that justice be entered and that:

1) I be charged and sanctioned for the infraction of possession;

2) The visiting restrictions be suspended.

and in the event that you (The SHO) should still elect to go with the much harsher charge of distribution then I would respectfully request that:

1) All or part of the visiting restrictions be suspended;

2) A finding of "Attempted to distribute" be included in your statement;

3) The lesser credit loss of 151 days be applied.

**(6) A FINAL NOTE:** Again I point that there is:

A) No physical evidence to support a charge of distribution;

B) No one alleges that I or my mother smuggled drugs into the institution;

C) No witness statements that claim any act of distribution;

D) No proof that I made the bindles and no claims to that effect.

The preponderance of the evidence does not say that it is more likely than not that an act of distribution was occurring. The primary charge *is possession and distribution can not be entered as a lesser included offense and if* "possession with intent to distribute" is meant to cover both as a catch-all then this is an act of "stacking" and still not permitted.

**The Right to know the Standards and Rules**

An inmate has the right not to be punished for an act which he could not have known was prohibited. An inmate is entitled to <u>prior notice</u> or <u>fair warning</u> of the prescribed conduct before a severe sanction may be imposed. Grayned v. City of Rockford (1972) 92 S.ct. 2294, 2298; Coffman v. Trickey (8th cir 1989) 884 F2d 1057, 1060.

**I should not be found guilty of distribution because:**

(1) There was no prior knowledge/warning given regarding the threshold amount that determines Distribution" over "Possession".

(2) There is no such code violation as "Possession with the Intent to Distribute" and even if it were, distribution can not be deemed a "lesser" included offense, thus the RVR can not be changed from Possession to Distribution.

| | SIGNATURE OF WRITER<br>LT. B.E. DAUBENSPECK, Senior Hearing Officer<br>[signature] | | DATE SIGNED<br>6-7-20? |
|---|---|---|---|
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature)<br>[signature] | DATE SIGNED<br>7/7/04 | TIME SIGNED<br>1230 |

CDC 115-C (5/95)

OSP 99 2508

0000016

STATE OF CALIFORNIA | DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-83465 | HUNTER | FC-04-04-100 | CENTINELA | 6/2/04 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒ HEARING ☐ IE REPORT ☐ OTHER ______

PLEA: (CONTINUED)

(3) There is no such standard as "more than a one time use" amount. This is an unfair unwritten standard which being unjustly applied and thus resulting in extremely cruel and unusual punishments, even a "personal use" amount would be more justly applied, but where the potential punishments are so greatly different, so too then should be the amounts related to the charge. "More than enough for a one time use" is not enough for a charge of distribution to stand, especially where this measurement has been unexplained and could potential differ so greatly; At the bear minimum some would need to dictate a measured description of what a "one time use" amount in and then it would need to be written and explained to inmates that anything above that amount constituted the drastically different and much harsher penalized charge of Distribution, for, as it stands, a reasonable mind (after reading the Rules in full) would have believed that he/she had to have been caught for smuggling, trafficking or actually selling drugs in order for the code of distribution and it's penalties to apply. It is no written warning or notice given or otherwise explained.

There does appear to be some indication at: Title 15, 3016 (d) Inmates may not possess controlled medication in quantities exceeding the dosage specifically authorized by the institution's/facility's health care staff, nor may an inmate possess controlled medication prescribed to another inmate. (emphasis added) and Title 15, 3802 (b) (1) (c) sales, or Possession For Sale, of drugs valued at more than $10,000 (D) Repeated possession of a controlled substance in quantities considered excessive for personal use. (emphasis added). Both of these listings indicate "dosage" and/or "use" amounts. But even 3802 (b) (1) (0) does not go so far to then set the limit at some imaginable "one time use" amount, for it is understood that a user may have more than enough for just one sitting of use and yet still have not to be a "Distributor", furthermore it's clear that when and where the decision makers wanted specific amount to act as a threshold to provide different penalties then they wrote it into the Language of the matter being addressed. They did place such a limiting statement with in the possession clause at 3323 (d) (b) but simply described violation as "unauthorized possession" even the placement score listings include the language to address such matters without as much vagueness: Title 15, 3375.3 (b) (2) (E) For involvement in smuggling or trafficking drugs into a Jail or Correctional Facility for distribution and sales, Four points shall be entered in Box 65, points shall not be assessed for incidents of personal use or possession of a small quantity of drugs. and Title 15, 3375.4 (a) (5), For each incident involving the smuggling or trafficking of drugs into a Jail or Correctional Facility For Distribution and sales, four points shall be entered in Box 38. Points shall not be assessed for personal use or possession of a small quantities of drugs or being under the influence. Here, again at least we were given some indication that the amount would play a difference. Inmates are warned to stay away from activities such as smuggling or trafficking drugs into a Jail etc. and we're told that possession of more than a "small quantity" could also play a part in this decision. So, then I turn to the D.O.M. as it relates to these last two subsections and it reads: DOM page 546, Do not count a disciplinary determination in which the inmate was found or plead guilty of Possessing a small quantity of drugs for personal use or being under the influence. Refers to inmates who are involved in a operation to smuggle drugs into a jail or institution for distribution and sales. It's obvious that the "Big Fish" and the "Tad Pole" weren't meant to be punished the same. There can be no doubt but that a guilty finding of Distribution requires that the act of "selling and dispersing" take place, the charges are simply too severely different to be gauged by some wholly imaginary "threshold."

WITNESSES: Inmate HUNTER did request witnesses. C/O S. La Combe, & D. Vocation Instructor as character witnesses. Both witnesses were denied, due to the fact that they were not witnesses to the event.

LT. B.E. DAUBENSPECK, Senior Hearing Officer

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| [signature] | 6-22-04 |

| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| | [signature] | 7/7/04 | 1230 |

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

RULES VIOLATION REPORT - PART C

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-83465 | HUNTER | FC-04-04-100 | CENTINELA | 6/2/04 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒ HEARING ☐ IE REPORT ☐ OTHER ___

**FINDINGS:** Inmate **HUNTER** was found **GUILTY** of violating CCR Section 3016, a Division "A-2" offense; the specific charge of **POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DISTRIBUTE.** The preponderance of evidence submitted and considered in reaching a finding substantiates the charge and supports the factors in aggravation. The finding is based upon the following:

**The RVR by:** Sgt. E. Benyard, stating in part, On Wednesday April 21, 2004, at approximately 1120 hours Centinela State Prison Investigation Services Unit (ISU) received written notification from the DOJ Bureau of Forensic Services Lab, that the controlled substance submitted into evidence on 4/1/04. Tested positive for the presence of Marijuana.
**THE CIRCUMSTANCES ARE AS FOLLOWS:** On 4/01/04, at approximately 1930 hours, while performing my duties as Facility "C" Sergeant. Housing Unit C-4 Staff notified me of assistance needed in the Unit. Upon arrival in the Building I observed staff at Cell 128 with the door secured open. Both Inmates HUNTER (K-83465) C4-128L and BREWSTER (T-49306) C4-128U were inside. As I walked up I gave verbal orders to both HUNTER seated on the top bunk and BREWSTER seated on the lower bunk to exit the cell, to allow for staff to search the cell. Both Inmates subsequently complied with my orders. I placed handcuffs on BREWSTER and he was escorted out by staff. I then placed handcuffs on HUNTER and removed him out of the cell. While exiting Inmate HUNTER began to drop little yellow bindles from his right pants leg. HUNTER then stated "THERE it is" Officer M. Quiros confiscated approximately 16 bindles of suspected contraband from the floor. As I performed a clothed body search on HUNTER, I removed a additional packet of suspected contraband wrapped in clear plastic from HUNTERS left front pocket. The contraband contained approximately 11 bindles of suspected Marijuana. At approximately 1945, Officer Quiros relinquished custody to me 16 bindles. I then maintained sole custody of all suspected contraband until log and secured in evidence locker 7B in Complex Control.

**The CDC-837 Crime/Incident Report** Log # CEN-FCP-04-04-0116, which states: On Wednesday, April 21, 2004, at approximately 1120 hours, Centinela State Prison Investigative Services Unit (ISU) received written notification from the DOJ Bureau of Forensic Services Riverside Lab, that the controlled substance submitted into evidence on 4/1/04, tested positive for the presence of marijuana. **The circumstances are as follows:** On Thursday, April 1, 2004, at approximately 1930 hours, E. Silva, assigned as Facility "C" Building 4, Floor Officer # 1, was preparing to conduct a cell search of cell C4-128, assigned to inmates Hunter, K-83465, and Brewster, T-49306. Officer Silva turned off the water to the cell to prevent any contraband from being flushed and instructed the Control Booth Officer to open the cell door. Officer Silva informed both inmates of his intent to search the cell and instructed Brewster to submit to an unclothed body search. Officer Silva instructed Hunter to remove himself from the upper bunk and submit to an unclothed body search. As Sergeant E. Benyard escorted Hunter out of the cell staff observed, what appeared to be bindles, falling from Hunter's pant legs. Sergeant Benyard immediately retrieved *approximately eleven (11) of the bindles from the ground as Officer Quiroz* retrieved the remaining sixteen (16). Both inmates were escorted to the Facility "C" Program Office pending a 7219 Medical Report of Injury or Unusual Occurrence by Medical Technical Assistance (MTA) Banks. Sergeant Benyard opened one of the bindles and observed what appeared to be a green leafy substance with the appearance of Marijuana.

**Supplemental** to the CDC-837 Crime/Incident Report, by C/O M. QUIROZ, which states in part: At first both inmates refused and then both inmates complied with Sergeant Benyard's order. Sergeant Benyard then placed handcuffs on inmate Brewster and he was escorted out by staff. Then Sergeant Benyard placed handcuffs on inmate Hunter and escorted him out of cell 128. While exiting the cell while under escort by Sergeant Benyard, inmate Hunter was dropping little yellow bindles out of his right pant leg and stated, "There it is, there it is." I then confiscated 16 bindles of suspected contraband from the floor.

LT. B.E. DAUBENSPECK, SENIOR HEARING OFFICER

| | SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|---|
| | [signature] | | 6-22-04 |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) [signature] | DATE SIGNED 7/7/04 | TIME SIGNED 1230 |

CDC 115-C (5/95)

OSP 99 25082

0000018

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-83465 | HUNTER | FC-04-04-100 | CENTINELA | 6/2/04 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒ HEARING ☐ IE REPORT ☐ OTHER ___

**Supplemental** to the CDC-837 Crime/Incident Report, by C/O E. Silva, which states in part: Inmate Hunter refused to get down from the upper bunk and insisted that he talked to the Lieutenant. I again told him that he needed to step down. He again insisted that I get the Lieutenant. I notified "C" Program Sergeant that Hunter was refusing to get down. Sergeant Benyard told inmate Hunter to step down. Sergeant Benyard then cuffed up inmate Brewster. Inmate Brewster was taken out of the cell. Hunter then stepped down and was handcuffed. As he was walking backwards small paper bindles started to fall out of his pant leg. I then taped both of his ankles with tape to keep the contraband from falling out of his pant leg.

**Supplemental** to the CDC-837 Crime/Incident Report, by Sergeant E. Benyard, which states in part: As I approached the cell door I gave verbal orders to both Hunter, seated on the top bunk and Brewster, seated on the lower bunk to exit the cell to allow for staff to search the cell. Both inmates subsequently complied with my orders. I placed handcuffs on Brewster and he was escorted out by staff. I then placed handcuffs on Hunter and began to remove him out of the cell. While exiting out of the cell, Hunter began to drop little yellow bindles from his right pant leg. Hunter stated, "There it is, There it is."

**SHO NOTES:** The Title of the RVR "Possession of Controlled Substance With Intent to Distribute" has not been changed. This RVR was mis-classified as a Division "B" Offense, but should have been classified as A-2. Inmate in his plea much as admitted possession by stating, as a Division "B" he would not contest. Admitted in the possession of drugs within this the institution. Inmates argument that he did not receive copy of re-classified RVR. RVR indicates that C/O R. Durazo handed inmate copies of re-classified on 6/2/04 at approximately 1900 hours. Inmate stated that he did not have time to prepare for a case. Title 15 allows 24 hours minimum for an inmate to prepare for a case. Inmate received his initial copy of RVR on 4/23/04, "Possession of a Controlled Substance with Intent to Distribute" miss classified and on 5/4/04 elected to postpone the hearing. This indicates to the SHO that inmate was fully aware of the charge on 5/21/04. Inmate waived postponement and so confirmed by A.W. Salazar, inmate signed RVR on 6/2/04.

**SHO NOTES:** That after careful review of all the reports, CDC-837, RVR 115, statements at the hearing the following: Inmate HUNTER does not dispute the possession of marijuana and they were in bindle form. While HUNTER was being escorted out of his cell, he (HUNTER) was dropping yellow bindles from his right pant leg, a total of 16 bindles and an additional 11 bindles from his left front pocket. HUNTER argued the fact that 27 bindles of marijuana is not trafficking. HUNTER stated that for $100.00, one get 25-35 bindles. HUNTER was attempting to get rid of the evidence as being escorted out of his cell. If HUNTER puchased the marijuana for a one time use he had ample time to repackage the marijuana into one bindle. The fact remains that HUNTER *had 27 bindles of marijuana in his* possession, hidden in his pant leg and pocket. This action showed that HUNTER was on his way to sell his bindles of marijuana. The amount that inmate HUNTER had was more that a one time use. Therefore the findings of guilt is justified.

what Action? No such standard

**C-FILE Was Reviewed.**

**DISPOSITION:** Assessed 180 days forfeiture of behavioral credits consistent with a Division "A-2" offense (refer to CCR §3323).

**First Offense:** The inmate must provide a minimum of one random drug test per month for one year.

LT. B.E. DAUBENSPECK, SENIOR HEARING OFFICER

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| [signature] | 6-22-0[illegible] |

| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| | [signature] | 7/7/04 | 1230 |

CDC 115-C (5/95)

OSP 99 25082

0000019

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

RULES VIOLATION REPORT - PART C

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-83465 | HUNTER | FC-04-04-100 | CENTINELA | 6/2/04 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒ HEARING ☐ IE REPORT ☐ OTHER ______

**First Offense:** Violations of 3323 (c) (7) shall be loss of visits for one year to be followed by Non-Contact visits for two years.

**First Offense:** Shall be required to attend AA/NA meetings or assigned to a substance abuse education program to the extent such programs are available in the facility.

**Referred** to ICC for Program Review. Consideration of a SHU Term.

Inmate **HUNTER** was informed that the disposition of this Rules Violation Report would not become final until reviewed and approved by the Chief Disciplinary Officer. Inmate HUNTER was informed that he would receive a final copy upon approval of the Chief Disciplinary Officer. Inmate HUNTER was advised of his right to appeal the findings of this hearing, and that the first level of appeal has been eliminated on disciplinary issues. **Inmate HUNTER was informed that Division A, B, and C credit losses are not restorable.**

Lt. B.E. DAUBENSPECK, Senior Hearing Officer

| | SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|---|
| | [signature] | | 6-22-04 |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) [signature] | DATE SIGNED 7/7/04 | TIME SIGNED 1230 |

CDC 115-C (5/95)

OSP 99 25082

0056

0000020

STATE OF CALIFORNIA
CDC 1879

DEPARTMENT OF CORRECTIONS

# NOTICE OF MANDATORY RANDOM DRUG TESTING REQUIREMENTS

| INMATE NAME | INMATE CDC NUMBER |
|---|---|
| HUNTER | K-83465 |

The above noted inmate was found guilty of violating:

[X] CCR 3016 Controlled Substances, Drug Paraphernalia and Distribution.

[ ] CCR 3290(d) Testing of Controlled Substances.

The inmate was assessed a mandatory random drug testing period in accordance with CCR Section 3315(f)(4), Serious Rule Violations.

[X] First offense. One year of mandatory drug testing. The inmate must provide a minimum of one random drug test per month.

[ ] Second offense. One year of mandatory drug testing. The inmate must provide a minimum of two random drug tests per month.

[ ] Third offense. One year of mandatory drug testing. The inmate must provide a minimum of four random drug tests per month.

One year mandatory random testing effective date: 6-2-04 through 6-1-05

| NAME / TITLE / SIGNATURE SENIOR HEARING OFFICER | DATE |
|---|---|
| B.E. DAUBENSPECK, Correctional Lieutenant [signature] | 6-2-04 |

On 6/2/04, inmate HUNTER, K-83465, C6-161L, was found **GUILTY** of violating California Code of Regulations, 3016; POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DISTRIBUTE, CDC-115 FC-04-04-100. In accordance with the disposition of this Rules Violation Report, Inmate HUNTER is required to submit to mandatory, random drug testing by urinalysis for a period of (1) one year from 6/2/04 through 6/2/05. He must provide a minimum of **ONE** random test per month. Inmate HUNTER was informed that refusal to submit to a urinalysis test or any positive test result during this one year period shall result in a new CDC-115 and a new mandatory drug testing order. Inmate HUNTER is aware of this report and has been informed of the provisions of The California Code of Regulations, 3315 (F) (4) (A-D).

DISTRIBUTION: WHITE - INMATE CENTRAL FILE
CANARY - INMATE
PINK - DRUG TESTING COORDINATOR

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# CRIME / INCIDENT REPORT
## PART A1 - SUPPLEMENT

CDC 837-A1 (09/03)

| PAGE ___ OF ___ | | INCIDENT LOG NUMBER CEN-FCP-04-04-0116 | |
|---|---|---|---|
| INSTITUTION CEN | FACILITY C | DATE OF INCIDENT 04/21/04 | TIME OF INCIDENT 11:20 |

TYPE OF INFORMATION:
☒ SYNOPSIS/SUMMARY OF INCIDENT ☐ SUPPLEMENTAL INFORMATION ☐ AMENDED INFORMATION ☐ CLOSURE REPORT

**NARRATIVE:**

On Thursday April 1, 2004, at approximately 1930 hours E. Silva, assigned as Facility C Building 4 Floor#1 Officer, was preparing to conduct a cell search of cell C4-128, assigned to inmates HUNTER, K83465, and BREWSTER, T49306. Officer Silva turned off the water to the cell to prevent any contraband from being flushed and instructed the Control Booth Officer to open the cell door. Officer Silva informed both inmates of his intent to search the cell and instructed BREWSTER to submit to an unclothed body search. Officer Silva instructed HUNTER to remove himself from the upper bunk and submit to an unclothed body search. HUNTER began to shake involuntarily. HUNTER refused to comply with Officer Silva's orders and insisted in speaking with the Facility Lieutenant. Officer Silva notified E. Benyard, Assigned as the Facility C Yard/Dining/Vocation Sergeant, via his institutional radio and kept a visual of both inmates. Sergeant Benyard and M. Quiroz, assigned as C5 Floor#2 Officer, reported to building C4, cell 128 and ordered HUNTER to exit the cell. Sergeant Benyard placed restraints on BREWSTER, informed staff to escort BREWSTER out of the area and waited to place HUNTER in restraints. As Sergeant Benyard escorted HUNTER out of the cell staff observed, what appeared to be bindles, falling from HUNTER's pant legs. Sergeant Benyard immediately retrieved approximately eleven (11) of the bindles from the ground as Officer Quiroz retrieved the remaining sixteen (16). Both inmates were escorted to the Facility Program Office pending a 7219 Medical Report of Injury or Unusual Occurrence by Medical Technical Assistance (MTA) Banks.

Sergeant Benyard opened one of the bindles and observed what appeared to be a green leafy substance with the appearance of Marijuana.

A CDC 7219 was conducted on BREWSTER by MTA Banks and noted the following: No injuries found; cleared for Ad-Seg placement.

A CDC 7219 was conducted on HUNTER by MTA Banks and noted the following: No injuries found; cleared for Ad-Seg placement.

HUNTER was issued a CDC Rules Violation Report charging him with violation of CCR # 3016, Controlled Substances, Drug Paraphernalia, and Distribution, specifically, Possession of a Controlled Substance with intent to Distribute, Log # fc-04-04-100 Both inmates were placed in Administrative Segregation as a result of this incident.

This incident will be referred to the Imperial County District Attorney's Office for felony prosecution.

The following Administrative Staff were notified: J. Hobbs, Watch Commander, D. Dexter, Facility C Captain, and J. Salazar Associate Warden Complex II.

There were no shots fired, no injuries to staff or inmates were noted, there was no damage to state property as a result of this incident.

You will be apprised of any further developments as they occur via supplemental reports.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL A1

| NAME OF REPORTING STAFF (PRINT/TYPE) | TITLE | ID # | BADGE # |
|---|---|---|---|
| M. POLLARD | LT. | | |
| SIGNATURE OF REPORTING STAFF [signature] | | PHONE EXT. (INCIDENT SITE) 6302 | DATE 4/21/04 |
| NAME OF WARDEN / AOD (PRINT/SIGN) | | TITLE | DATE |

DHO COPY

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# CRIME / INCIDENT REPORT
## PART A - COVER SHEET
CDC 837-A (Rev. 09/03)

| PAGE 1 OF ____ | INCIDENT LOG NUMBER | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|
| | CEN-FCP-04-04-0116 | 04/21/04 | 11:20 |

| INSTITUTION | FACILITY | FACILITY LEVEL | INCIDENT SITE | LOCATION | | USE OF FORCE |
|---|---|---|---|---|---|---|
| CEN | C | ☐ I ☐ II ☐ III ☒ IV | FAC. C | BLDG 4 CELL 123 | ☐ ASU ☐ SHU ☐ PSU ☐ PHU ☐ SNY ☒ GP ☐ CTC ☐ RC SEG. YARD: ☐ CC ☐ WA ☐ RM | ☐ YES ☒ NO |

SPECIFIC CRIME / INCIDENT: POSSESSION OF A CONTROLLED SUBSTANCE W/ INTENT TO DIST.

☐ CCR ☐ PC ☐ N/A NUMBER/SUBSECTION: 3016

| D. A. REFERRAL ELIGIBLE | SERT ACTIVATED | NMT ACTIVATED | MUTUAL AID REQUEST | PIO/AA NOTIFIED |
|---|---|---|---|---|
| ☒ YES ☐ NO | ☐ YES ☒ NO | ☐ YES ☒ NO | ☐ YES ☒ NO | ☐ YES ☒ NO |

### RELATED INFORMATION (CHECK ALL THAT APPLY)

**DEATH:** ☐ INMATE ☐ STAFF ☐ VISITOR ☐ OTHER: ____ ☒ N/A

**CAUSE OF DEATH:** ☐ ACCIDENTAL ☐ SUICIDE ☐ EXECUTION ☐ NATURAL ☐ HOMICIDE ☐ OVERDOSE ☐ UNKNOWN ☒ N/A

**ASSAULT / BATTERY:** ☐ ON INMATE ☐ ON STAFF ☐ ON VISITOR ☐ OTHER: ____ ☒ N/A

**TYPE OF ASSAULT / BATTERY:** ☐ BEATING ☐ SPEARING ☐ GASSING ☐ STABBING ☐ POISONING ☐ STRANGLING ☐ SEXUAL ☐ OTHER: ____ ☐ SHOOTING ☐ SLASHING ☒ N/A

**SERIOUS INJURY:** ☐ INMATE ☐ STAFF ☐ VISITOR ☐ OTHER: ____ ☒ N/A

**ESCAPES:** ☐ W / FORCE ☐ W/O FORCE ☐ ATTEMPTED ☒ N/A

**INMATE WEAPONS:** ☐ CHEMICAL SUBSTANCE ☐ CLUB / BLUDGEON ☐ EXPLOSIVE ☐ FIREARM ☐ HANDS / FEET ☐ KNIFE ☐ SAP/SLUNG SHOT ☐ PROJECTILE ☐ SPEAR ☐ SLASHING INSTRUMENT ☐ STABBING INSTRUMENT ☐ OTHER: ____ ☐ BODILY FLUID ☐ OTHER FLUID: ____ ☐ UNKNOWN LIQUID ☒ N/A

TYPE: ☐ COMMERCIAL WEAPON ☐ INMATE MANUFACTURED WEAPON

**SHOTS FIRED / TYPE WEAPON / FORCE:**

WEAPON: / WARNING # / EFFECT #: ☐ MINI 14 ☐ 38 CAL. ☐ 9MM ☐ SHOTGUN

LAUNCHER: ☐ 37MM ☐ LB ☐ 40MM ☐ 40MM MULTI ☐ HFWRS

FORCE: ☐ SIDE-HANDLE BATON ☐ PHYSICAL FORCE ☐ X10 ☐ OTHER: ____

TYPE: / NO: BATON ROUND: WOOD ____ RUBBER ____ FOAM ____ STINGER: .32 (A) ____ .60 (B) ____ EXACTIMPACT: CTS 4557 ____ XM 1006 ____ CHEMICAL: ☐ OC ☐ CN ☐ CS ☒ N/A

**CONTROLLED SUBSTANCE / WEIGHT:** ☐ POSITIVE UA ☐ CONTROLLED MEDS ☒ WITH PACKAGING ☒ WITHOUT PACKAGING

| | PRELIMINARY | LAB |
|---|---|---|
| ☐ AMPHETAMINE | | |
| ☐ BARBITURATES | | |
| ☐ COCAINE | | |
| ☐ CODEINE | | |
| ☐ HEROIN | | |
| ☒ MARIJUANA/THC | | 15.73 GRAMS |
| ☐ METHAMPHETAMINE | | |
| ☐ MORPHINE | | |
| ☐ OTHER: ____ | | |
| ☐ N/A | | |

**PROGRAM STATUS:** ☐ MODIFIED PROGRAM ☐ LOCKDOWN ☐ STATE OF EMERGENCY

IF YES, LIST AFFECTED PROGRAMS: ☒ N/A

**EXCEPTIONAL ACTIVITY:** ☐ EMPLOYEE JOB ACTION ☐ ENVIRONMENTAL HAZARD ☐ EXPLOSION ☐ FIRE ☐ GANG/DISRUPTIVE GROUP ☐ HOSTAGE ☐ INMATE STRIKE ☐ MAJOR DISTURBANCE ☐ MAJOR POWER OUTAGE ☐ NATURAL DISASTER ☐ PUBLIC DEMONSTRATION ☐ SPECIAL INTEREST I/M ☐ WEATHER ☐ SEARCH WARRANT ☐ ARREST ☐ OTHER: ____

EXTRACTION: ☐ CONTROLLED ☐ IMMEDIATE ☒ N/A

BRIEF DESCRIPTION OF INCIDENT (ONE OR TWO SENTENCES):

On Wednesday April 21, 2004, at approximately 1120 hours Centinela State Prison Investigative Services Unit (ISU) received written notification from the DOJ Bureau of Forensic Services Riverside Lab, that the controlled substance submitted into evidence on 4/1/04. tested positive for the presence of marijuana.

COMPLETE SYNOPSIS / SUMMARY ON PART A1

| NAME OF REPORTING STAFF (PRINT/TYPE) | TITLE | ID # | BADGE # |
|---|---|---|---|
| M. POLLARD | LT. | | |
| SIGNATURE OF REPORTING STAFF | | PHONE EXT. (INCIDENT SITE) | DATE |
| M. Pollard (signature) | | 6302 | 04/21/04 |
| NAME OF WARDEN / AOD (PRINT/SIGN) | | TITLE | DATE |
| G. J. Giurbino (signature) | | (signature) | 4/22/04 |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# CRIME / INCIDENT REPORT
## PART C- STAFF REPORT
CDC 837-C (Rev. 09/03)

PAGE 1 OF 1

INCIDENT LOG NUMBER

| NAME: LAST | FIRST | MI | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|---|
| MAGDALENO | J | | 04/01/04 | |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 02294 | ISU #5 | 8 YR. 6 MO. | 04/21/04 | Facility C Building 4 |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE ☐ N/A |
|---|---|---|---|
| S/S/H | 0800-1600 | Possession of Controlled Substance with Intent to Distribute | 3016 (b) (c) |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) | |
|---|---|---|---|---|
| ☐ PRIMARY | (S) E. Benyard | | (S) Hunter K83465 | |
| ☐ RESPONDER | | | | |
| ☒ WITNESS | | | | |
| ☐ VICTIM | | | | |
| ☐ CAMERA | | | | |

**FORCE USED BY YOU:** ☐ WEAPON ☐ PHYSICAL ☒ NONE

**FORCE OBSERVED BY YOU:** ☐ WEAPON ☐ PHYSICAL ☒ NONE

**WEAPONS USED BY YOU:** ☐ MINI-14 ☐ 9 MM ☐ 38 CAL ☐ SHOTGUN ☐ 37 MM ☐ L8 ☐ 40 MM ☐ 40 MULTI ☐ HFWRS ☐ BATON

CHEM. TYPE: ☐ OC ☐ CN ☐ CS ☐ OTHER: ☒ N/A

**SHOTS FIRED BY YOU:**

| | TYPE: | NO: | | NO: |
|---|---|---|---|---|
| 37 MM | | | 9 MM | |
| L8 | | | 38 CAL | |
| 40 MM | | | MINI-14 | |
| 40 MULTI | | | ☒ N/A | |
| SHOTGUN | | | | |

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☐ YES ☒ NO | ☒ N/A | ☒ N/A | ☐ YES ☒ NO | ☐ YES ☒ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301 / 3067 COMPLETED |
|---|---|---|---|---|
| ☐ YES ☒ NO | ☒ N/A | ☒ N/A | ☐ BODILY ☒ N/A ☐ UNKNOWN ☐ OTHER: | ☐ YES ☒ NO |

**NARRATIVE:**

On Thursday, April 1, 2004 a suspected contraband substance was secured in evidence locker # 7B located in Complex Control by Correctional Sergeant E. Benyard.

On Wednesday, April 21, 2004 , the Investigative Services Unit received written notification from the Department of Justice indicating that the controlled substance submitted into evidence April 1, 2004, tested positive for the presence of HEROIN.

This concludes my report.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID # | DATE |
|---|---|---|---|---|
| [signature] | C/O | | | 04-21-04 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| | | ☐ YES ☐ NO | ☐ YES ☐ NO | |

Distribution: Original: Incident Package Copy: Reporting Employee Copy: Reviewing Supervisor

CRIME / INCIDENT REPORT
PART C - STAFF REPORT
CDC 837-C (Rev. 09/03)

PAGE 1 OF 2

INCIDENT LOG NUMBER

| NAME: LAST | FIRST | MI | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|---|
| Quiroz | M | G | 4/1/04 | 1930 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 33631 | CS FLR #2 | 5 YR. MO. | 4/1/04 | C-4 |

| RDO'S | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE |
|---|---|---|---|
| S S | 1400-2200 | | ☐ N/A |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|
| ☐ PRIMARY | | Hunter K83465 C-4 128L |
| ☐ RESPONDER | | Brewster T49306 C-4 128U |
| ☐ WITNESS | | |
| ☐ VICTIM | | |
| ☐ CAMERA | | |

FORCE USED BY YOU: ☐ WEAPON ☐ PHYSICAL ☐ NONE

FORCE OBSERVED BY YOU: ☐ WEAPON ☐ PHYSICAL ☐ NONE

WEAPONS USED BY YOU: ☐ MINI-14 ☐ 9 MM ☐ 38 CAL ☐ SHOTGUN ☐ 37 MM ☐ L8 ☐ 40 MM ☐ 40 MULTI ☐ HFWRS ☐ BATON

CHEM. TYPE: ☐ OC ☐ CN ☐ CS ☐ OTHER: ☐ N/A

SHOTS FIRED BY YOU: TYPE: NO: 37 MM; L8; 40 MM; 40 MULTI; SHOTGUN; 9 MM; 38 CAL; MINI-14; ☐ N/A

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☐ YES ☐ NO | ☐ N/A | ☐ N/A | ☐ YES ☐ NO | ☐ YES ☐ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301 / 3067 COMPLETED |
|---|---|---|---|---|
| ☐ YES ☐ NO | ☐ N/A | ☐ N/A | ☐ BODILY ☐ N/A ☐ UNKNOWN ☐ OTHER: | ☐ YES ☐ NO |

NARRATIVE:

On 4/1/04 at approximately 1930 hours, while performing my duties as CS Floor #2, I reported to Facility 'C' Building 4 for coverage on a cell search with possible contraband inside cell 128 housed by inmates Hunter (C4-128L - K-83465) and inmate Brewster (C4-128U - T49306). Upon opening cell 128 by C/O E. Silva and C/O R. Fernandez both inmates refused to come out and stated "We want to talk to the LT" we notified SGT. Bonyard.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID # | DATE |
|---|---|---|---|---|
| [signature] | C/O | | | 4/1/04 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| | | ☐ YES ☐ NO | ☐ YES ☐ NO | |

Distribution: Original: Incident Package Copy: Reporting Employee Copy: Reviewing Supervisor

DEPARTMENT OF CORRECTIONS

**CRIME / INCIDENT REPORT**
**PART C1-SUPPLEMENT**
CDC 837-C1 (Rev. 09/03)

INCIDENT LOG NUMBER

| NAME: LAST | FIRST | MI |
|---|---|---|
| Quiroz | M | G |

TYPE OF INFORMATION:

☒ CONTINUATION OF REPORT ☐ CLARIFICATION OF REPORT ☐ ADDITIONAL INFORMATION

NARRATIVE:

OF THE SITUATION AND STATED HE WOULD COME OVER. SGT. BENYARD CAME TO C-4 AND SGT. BENYARD INSTRUCTED BOTH INMATES TO COME OUT. AT FIRST BOTH INMATES REFUSED AND THEN BOTH INMATES COMPLIED WITH SGT. BENYARD'S ORDER. SGT. BENYARD THEN PLACED HANDCUFFS ON INMATE BREWSTER AND WAS ESCORTED OUT BY STAFF. THEN SGT. BENYARD PLACED HANDCUFFS ON INMATE HUNTER AND ESCORTED HIM OUT OF CELL 128. WHILE EXITING THE CELL WHILE UNDER ESCORT BY SGT. BENYARD, INMATE HUNTER WAS DROPPING LITTLE YELLOW BINDLES OUT OF HIS RIGHT PANT LEG AND STATED "THERE IT IS THERE IT IS". I THEN CONFISCATED 16 BINDLES OF SUSPECTED CONTRABAND FROM THE FLOOR. AT THE COMPLETION OF INMATE HUNTER'S SEARCH. I THEN RELINQUISHED 16 BINDLES OF SUSPECTED CONTRABAND TO SGT. BENYARD AT 1945.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID # | DATE |
|---|---|---|---|---|
| [signature] | C/O | | | 4/1/04 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| | | ☐ YES ☐ NO | ☐ YES ☐ NO | |

Distribution: Original: Incident Package Copy: Reporting Employee Copy: Reviewing Supervisor

CRIME / INCIDENT REPORT
PART C - STAFF REPORT
CDC 837-C (Rev. 09/03)

DEPARTMENT OF CORRECTIONS

PAGE 1 OF 2

INCIDENT LOG NUMBER

| NAME: LAST | FIRST | MI | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|---|
| Silva | E | A | 4-1-4 | 1930 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 43611 | C4 FL #1 | 10 YR. 6 MO. | 4-1-4 | C4-128 |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE |
|---|---|---|---|
| S/M | 06-1400 | | ☐ N/A |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|
| ☐ PRIMARY | SgT. Beenyard | Hunter ~~T49306~~ K83465 |
| ☒ RESPONDER | C/O Quiroz | Brewster T49306 |
| ☐ WITNESS | | |
| ☐ VICTIM | | |
| ☐ CAMERA | | |

**FORCE USED BY YOU:** ☐ WEAPON ☐ PHYSICAL ☒ NONE

**FORCE OBSERVED BY YOU:** ☐ WEAPON ☐ PHYSICAL ☒ NONE

**WEAPONS USED BY YOU:** ☐ MINI-14 ☐ 9 MM ☐ 38 CAL ☐ SHOTGUN ☐ 37 MM ☐ L8 ☐ 40 MM ☐ 40 MULTI ☐ HFWRS ☐ BATON

CHEM. TYPE: ☐ OC ☐ CN ☐ CS ☐ OTHER: ☒ N/A

**SHOTS FIRED BY YOU:**

| TYPE: | NO: | | NO: |
|---|---|---|---|
| 37 MM | | 9 MM | |
| L8 | | 38 CAL | |
| 40 MM | | MINI-14 | |
| 40 MULTI | | ☒ N/A | |
| SHOTGUN | | | |

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☐ YES ☒ NO | ☒ N/A | ☒ N/A | ☐ YES ☐ NO | ☐ YES ☐ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301 / 3067 COMPLETED |
|---|---|---|---|---|
| ☐ YES ☒ NO | ☒ N/A | ☒ N/A | ☐ BODILY ☒ N/A ☐ UNKNOWN ☐ OTHER: | ☐ YES ☒ NO |

NARRATIVE:

On Thursday 4-1-04 at approximately 1930 hrs while working as C4 Floor #1 I Turned off The water for cell 128 occupied by I/m's Hunter K83465 C4-128L Brewster T49306 C4-128U. I Then opened The cell door. I Told I/m Brewster To undress in ordered To perform an unclothed body search. Negative results on Brewster. I/m Hunter was in

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID # | DATE |
|---|---|---|---|---|
| | C/O | | | 4-1-04 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| | | ☐ YES ☐ NO | ☐ YES ☐ NO | |

Distribution: Original: Incident Package Copy: Reporting Employee Copy: Reviewing Supervisor

CRIME / INCIDENT REPORT
PART C1- SUPPLEMENT
CDC 837-C1 (Rev. 09/03)

INCIDENT LOG NUMBER

NAME: LAST Silva | FIRST E | MI A

TYPE OF INFORMATION:
☒ CONTINUATION OF REPORT ☐ CLARIFICATION OF REPORT ☐ ADDITIONAL INFORMATION

NARRATIVE:

The upper bunk. I Told Hunter to step down so I can do a unclothed body search. I noticed that I/m Brewster started shaking and getting nervous. I again told Hunter To step down. I/m Hunter refuse to get down from the upper bunk. and insisted that he talked To The LT. I again told him that he needed to step down. He again insisted that I get the LT. I notified C program Sgt. That Hunter was refusing to get down. Sgt. Berryard ~~and Sgt Willis~~ Told I/m Hunter to step down. Sgt Berryard then cuffed up I/m Brewster. Brewster was Taken out of the cell. Hunter then step down and was handcuffed. As he was walking backward small paper bindles started to fall off his Leg pants. I Then Taped both of his Ankles with Tape ~~[illegible]~~ ES To keep The contraband from falling off His ~~[illegible]~~ ES ~~[illegible]~~ ES ~~[illegible]~~ ES ~~[illegible]~~ ES ~~[illegible]~~ ES ~~[illegible]~~ ES ~~[illegible]~~ ES ~~contraband~~ Legs. Both I/m's were Taken to C MTA for medical evaluations

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID # | DATE |
|---|---|---|---|---|
| E Silva | | | | |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| | | ☐ YES ☐ NO | ☐ YES ☐ NO | |

Distribution: Original: Incident Package Copy: Reporting Employee Copy: Reviewing Supervisor

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# CRIME / INCIDENT REPORT
## PART C- STAFF REPORT
CDC 837-C (Rev. 09/03)

PAGE 1 OF ___

INCIDENT LOG NUMBER

| NAME: LAST | FIRST | MI | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|---|
| BENYARD | E | L | | |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 33086 | C-YD/DIN/VOC SGT. | 8 YR. MO. | | FAC. BLDG 1 |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE ☐ N/A |
|---|---|---|---|
| M/T | 1400-2200 | POSSESSION OF A CONTROLLED SUBSTANCE W/INT. TO DIST. | |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) | |
|---|---|---|---|---|
| ☒ PRIMARY | (S) E. SILVA | | (S) HUNTER K-83465 | |
| ☐ RESPONDER | (S) m. QUIROS | | (S) BREWSTER T-49306 | |
| ☐ WITNESS | | | | |
| ☐ VICTIM | | | | |
| ☐ CAMERA | | | | |

**FORCE USED BY YOU:** ☐ WEAPON ☐ PHYSICAL ☒ NONE

**FORCE OBSERVED BY YOU:** ☐ WEAPON ☐ PHYSICAL ☒ NONE

**WEAPONS USED BY YOU:** ☐ MINI-14 ☐ 9 MM ☐ 38 CAL ☐ SHOTGUN ☐ 37 MM ☐ L8 ☐ 40 MM ☐ 40 MULTI ☐ HFWRS ☐ BATON
CHEM. TYPE: ☐ OC ___ ☐ CN ___ ☐ CS ___ ☐ OTHER: ___ ☒ N/A

**SHOTS FIRED BY YOU**

| TYPE: | NO: | | NO: |
|---|---|---|---|
| 37 MM | | 9 MM | |
| L8 | | 38 CAL | |
| 40 MM | | MINI-14 | |
| 40 MULTI | | ☒ N/A | |
| SHOTGUN | | | |

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☒ YES ☐ NO | (27) BINDLES OF SUSPECTED CONTRABAND (MARIJUANA) ☐ N/A | PLACED IN EVIDENCE LOCKER 7B LOCATED IN COMPLEX CONTROL ☐ N/A | ☐ YES ☒ NO | ☐ YES ☒ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301 / 3067 COMPLETED |
|---|---|---|---|---|
| ☐ YES ☒ NO | ☒ N/A | ☒ N/A | ☐ BODILY ☒ N/A ☐ UNKNOWN ☐ OTHER: ___ | ☐ YES ☒ NO |

**NARRATIVE:**

On Thursday April 01, 2004 at approximately 1930 hours, while performing my duties as Facility "C" Sergeant. Housing Unit C-4 staff notified me via telephone of assistance needed in the unit. I responded to C-4, upon my arrival inside the building I observed staff were at Cell 128 with the door secured open in the locked position. Both inmates Hunter (K-83465) C-4 128L and Brewster (T-49306) C-4 128U.

As I approached the cell door I gave verbal orders to both Hunter, seated on the top bunk and Brewster, seated on the lower bunk to exit the cell to allow for staff to search the cell. Both inmates subsequently complied with my orders. I placed handcuffs on Brewster and he was escorted out by staff. I the placed handcuffs on Hunter and began to remove him out of the cell. While exiting out of the cell, Hunter began to drop little yellow bindles from his right pant leg. Hunter stated "There it is,There it is".

Officer M. Quiros confiscated approximately 16 bindles of suspected contraband from the floor. As I performed a clothed body search on Hunter, I removed an additional packet of contraband wrapped in clear plastic from Hunters left front pocket. The packet contained approximately 11 additional bindles I inspected the contraband to be suspected marijuana. About 1945 hours, Officer Quiros relinquished custody of 16 bindles to me. I maintained sole custody of the contraband until placing and securing it into Evidence Locker 7B in Complex Control.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID # | DATE |
|---|---|---|---|---|
| [signature] | SERGEANT | | | |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| | | ☐ YES ☐ NO | ☐ YES ☐ NO | |

Distribution: Original: Incident Package Copy: Reporting Employee Copy: Reviewing Supervisor

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# CRIME / INCIDENT REPORT
## PART C- STAFF REPORT

CDC 837-C (Rev. 09/03)

INCIDENT LOG NUMBER

| NAME: LAST | FIRST | MI | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|---|
| MAGDALENO | J | | 03/15/04 | |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 02294 | ISU #5 | 8 YR. 6 MO. | 04/21/04 | |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE ☐ N/A |
|---|---|---|---|
| S/S/H | 0800-1600 | Possession of a Controlled Substance | 3016 |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|
| ☐ PRIMARY<br>☐ RESPONDER<br>☒ WITNESS<br>☐ VICTIM<br>☐ CAMERA | (S) R. Durazo | (S) Mateo J52739 |

**FORCE USED BY YOU:** ☐ WEAPON ☐ PHYSICAL ☒ NONE

**FORCE OBSERVED BY YOU:** ☐ WEAPON ☐ PHYSICAL ☒ NONE

**WEAPONS USED BY YOU:** ☐ MINI-14 ☐ 9 MM ☐ 38 CAL ☐ SHOTGUN ☐ 37 MM ☐ L8 ☐ 40 MM ☐ 40 MULTI ☐ HFWRS ☐ BATON

CHEM. TYPE: ☐ OC ☐ CN ☐ CS ☐ OTHER: ☒ N/A

**SHOTS FIRED BY YOU:** TYPE: NO: 37 MM, L8, 40 MM, 40 MULTI, SHOTGUN; NO: 9 MM, 38 CAL, MINI-14; ☒ N/A

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☐ YES ☒ NO | ☒ N/A | ☒ N/A | ☐ YES ☒ NO | ☐ YES ☒ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301 / 3067 COMPLETED |
|---|---|---|---|---|
| ☐ YES ☒ NO | ☒ N/A | ☒ N/A | ☐ BODILY ☒ N/A ☐ UNKNOWN ☐ OTHER: | ☐ YES ☒ NO |

**NARRATIVE:**

On Tuesday, March15, 2004 a suspected contraband substance was secured in evidence locker #4B located in Complex Control by Correctional Officer R. Durazo.

On April 21, 2004 the Investigative Services Unit received written notification from the Department of Justice indicating that the controlled substance submitted into evidence March 15, 2004, tested positive for the presence of MARIJUANA.

This concludes my report.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID # | DATE |
|---|---|---|---|---|
| [signature] | C/O | | | 04-21-04 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| | | ☐ YES ☐ NO | ☐ YES ☐ NO | |

Distribution: Original: Incident Package Copy: Reporting Employee Copy: Reviewing Supervisor

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# MEDICAL REPORT OF INJURY OR UNUSUAL OCCURRENCE

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT (circle) | | | DATE |
|---|---|---|---|---|---|
| Centinela SP | C yard | INJURY | ON THE JOB INJURY | | 4/1/04 |
| | | USE OF FORCE | (UNUSUAL OCCURRENCE) | (PRE AD/SEG ADMISSION) | |

| THIS SECTION FOR INMATE ONLY | NAME LAST | FIRST | CDC NUMBER | HOUSING LOC. | NEW HOUSING LOC. |
|---|---|---|---|---|---|
| | Brewster | | T-49306 | C4-128U | |

| THIS SECTION FOR STAFF ONLY | NAME LAST | FIRST | BADGE # | RANK/CLASS | ASSIGNMENT/RDOs |
|---|---|---|---|---|---|
| | | | | | |

| THIS SECTION FOR VISITOR ONLY | NAME LAST | FIRST | MIDDLE | DOB | OCCUPATION |
|---|---|---|---|---|---|
| | HOME ADDRESS | CITY | STATE | ZIP | HOME PHONE |

| PLACE OF OCCURRENCE | DATE/TIME OF OCCURRENCE | NAME OF WITNESS(ES) |
|---|---|---|
| C yard Bldg #4 | | N/A |

| TIME NOTIFIED | TIME SEEN | ESCORTED BY | MODE OF ARRIVAL (circle) | AGE | RACE | SEX |
|---|---|---|---|---|---|---|
| 2025 | 2025 | C/o Vela | LITTER / WHEELCHAIR / (AMBULATORY) / ON SITE | 24 | black | m. |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

No statement

| INJURIES FOUND? YES / (NO) | |
|---|---|
| Abrasion/Scratch | 1 |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | 4 |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| O.C. Spray Area | 10 |
| Pain | 11 |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | 14 |
| Skin Flap | 15 |
| Swollen Area | 16 |
| Other | 17 |
| | 18 |
| | 19 |

O.C. SPRAY EXPOSURE? YES / (NO)

DECONTAMINATED? YES / (NO)

Self-decontamination instructions given? YES / (NO)

Refused decontamination? YES / (NO)

Q 15 min. checks

Staff issued exposure packet? YES / (NO)

| RN NOTIFIED/TIME | PHYSICIAN NOTIFIED/TIME |
|---|---|
| | |

TIME/DISPOSITION

4/1/04

2030 / Cleared for Adseg Placement

| REPORT COMPLETED BY/TITLE (PRINT AND SIGN) | BADGE # | RDOs |
|---|---|---|
| Banks Banks MTA | 62313 | SS |

(Medical data is to be included in progress note or emergency care record filed in UHR)

CDC 7219 (Rev. 11/02) DISTRIBUTION: ORIGINAL - UHR CANARY - CUSTODY PINK - HEALTH AND SAFETY/RTW COORDINATOR

STATE OF CALIFORNIA

**MEDICAL REPORT OF INJURY OR UNUSUAL OCCURRENCE**

DEPARTMENT OF CORRECTIONS

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT (circle) | DATE |
|---|---|---|---|
| Centinela SP | C yard | INJURY / USE OF FORCE / (UNUSUAL OCCURRENCE) / ON THE JOB INJURY / (PRE AD/SEG ADMISSION) | 4/1/04 |

| THIS SECTION FOR INMATE ONLY | NAME LAST: Hunter | FIRST | CDC NUMBER: K83465 | HOUSING LOC.: C4-128 U | NEW HOUSING LOC. |
|---|---|---|---|---|---|
| THIS SECTION FOR STAFF ONLY | NAME LAST | FIRST | BADGE # | RANK/CLASS | ASSIGNMENT/RDOs |
| THIS SECTION FOR VISITOR ONLY | NAME LAST | FIRST / MIDDLE | | DOB | OCCUPATION |
| | HOME ADDRESS | CITY | STATE | ZIP | HOME PHONE |

| PLACE OF OCCURRENCE | DATE/TIME OF OCCURRENCE | NAME OF WITNESS(ES) |
|---|---|---|
| C yard | 4/1/04 1930 | N/A |

| TIME NOTIFIED | TIME SEEN | ESCORTED BY | MODE OF ARRIVAL (circle) | AGE | RACE | SEX |
|---|---|---|---|---|---|---|
| 1955 | 1955 | C/O Vela | LITTER / WHEELCHAIR / (AMBULATORY) / ON SITE | 34 | Black | M. |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

No statement

| INJURIES FOUND? YES / (NO) | |
|---|---|
| Abrasion/Scratch | 1 |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | 4 |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| O.C. Spray Area | 10 |
| Pain | 11 |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | 14 |
| Skin Flap | 15 |
| Swollen Area | 16 |
| Other | 17 |
| | 18 |
| | 19 |

O.C. SPRAY EXPOSURE? YES / (NO)

DECONTAMINATED? YES / (NO)

Self-decontamination instructions given? YES / (NO)

Refused decontamination? YES / (NO)

Q 15 min. checks

Staff issued exposure packet? YES / NO

| RN NOTIFIED/TIME | PHYSICIAN NOTIFIED/TIME |
|---|---|
| | |

TIME/DISPOSITION

2015 / cleared for Adseg placement

| REPORT COMPLETED BY/TITLE (PRINT AND SIGN) | BADGE # | RDOs |
|---|---|---|
| Banks, Banks MTA | 62313 | S S |

*(Medical data is to be included in progress note or emergency care record filed in UHR)*

CDC 7219 (Rev. 11/02) DISTRIBUTION: ORIGINAL - UHR CANARY - CUSTODY PINK - HEALTH AND SAFETY/RTW COORDINATOR

State of California

Department of Corrections

# Memorandum

Date :

To : N. S. RODRIGUEZ, Sergeant
Investigative Services Unit
Centinela State Prison

Subject : INVESTIGATIVE UNIT LOG # E-072-04

CONTROLLED CONTRABAND ANALYSIS REPORT

HUNTER
(Inmate's Name)

K 83465
(Inmate's Number)

On 04 / 01 / 04, a suspected contraband substance was secured in evidence locker # 7B, maintained in Central/Complex Control by Correctional Officer E. BENYARD.

On 04 / 21 / 04, the Investigative Services Unit received written notification from the Department of Justice indicating that the controlled substance submitted into evidence on 04 / 01 / 04, had tested positive/negative for the presence of MARIJUANA.

Correctional Officer
Investigative Services Unit

Attachment(s)

Received By (Facility Captain)

4/21/04 1120 hrs
Date/Time

Received by (Records Personnel)

Date/Time

Original: Investigative Services Unit
cc: Facility Captain
Central File Placement
Inmate

AGENCY CASE NUMBER
E07204

# DEPARTMENT OF JUSTICE
# BUREAU OF FORENSIC SERVICES

BFS CASE NUMBER
RI-04-003976-0001

TO: DOJ Drug Report Recipient
Centinela State Prison
2302 Brown Road
Imperial, CA 92251-0731

FROM: Riverside Laboratory
7425 Mission Blvd.
Riverside, CA 92509
(909) 361-5000 FAX (909) 361-5010

## Controlled Substances

SUBJECT: WESLIE W. K83465 HUNTER

OFFENSE DATE: 4/1/2004

SUMMARY:

(0.87 x 9 = 7.83)

Submission 01:
Item 01: Marijuana: 0.87 grams gross total
The plant material from 3 of 27 bindles was weighed and examined.

EVIDENCE:

On 4/7/2004, the following evidence was received from Juan Magdaleno of the Centinela State Prison:
Submission 01: One evidence envelope containing suspected controlled substances.
Item 01: "27 bindles of green leafy substance suspected to be marijuana 15.73 grams gross"

DISPOSITION:

The evidence will be returned to your agency in the normal course of business.

If called as a witness, I would testify that I am employed by the State of California Department of Justice and conducted examinations and formed conclusions as stated in this report. Information regarding the examination and conclusions are entered into and are maintained within the DOJ Laboratory Information Management System (LIMS) database. I, the undersigned, declare this information is true and correct under penalty of perjury.

DATE OF REPORT: 4/8/2004

Technical Reviewer: AMW
Administrative Reviewer: AMW

JAVED I. KHAN
Criminalist

2004 APR 21 AM 11: 12

RECEIVED
CSP - CENTINELA
INVESTIGATIONS

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS

SHU TERM ASSESSMENT WORKSHEET

CDC 629-A (Rev 3/96)

FC-04-04-100

| CDC NUMBER | NAME (LAST, FIRST, MI) | INSTITUTION | UNIT |
|---|---|---|---|
| K83465 | HUNTER, WESLEY W. | CEN | ASU |

1. **RULE VIOLATION RESULTING IN SHU TERM ASSESSMENT**
(If more than one SHU assessable offense and no SHU term has been established, use most serious as base term and less serious as aggravation.)
   a. Rule No. 3016(c) Date Issued 04/21/04 Title CONTROLLED SUBSTANCES-DISTRIBUTION
   b. Specific Act POSSESSION OF A CONTROLLED SUBSTANCE IN AN INSTITUTION FOR THE PURPOSE OF DISTRIBUTION
   (Must be an offense on SHU Term Assessment Chart.)
   c. List range of months for the offense using SHU Time Computation Table ........ 6 LOW 9 EXP 12 HIGH
   d. Enter "expected" (mid-range) years, months, days of confinement ........ __ YR 9 MO __ DAYS

2. **FACTORS IN MITIGATION AND AGGRAVATION**
(Enter "NONE" for item 2c or indicate amount of time. Describe factors and document sources. Use only factors listed in the DOM 62050 or concurrent offenses.)
   a. Mitigating Factors. Time subtracted for mitigations ........ - __ YR __ MO __ DAYS
      1)
      2)
      3)
   b. Aggravating Factors. Time added for aggravations ........ + __ YR __ MO __ DAYS
      1)
      2)
      3)
   c. Total time added or subtracted ........ = __ YR NONE MO __ DAYS

3. **TOTAL SHU CONFINEMENT TIME ASSESSED** ........ __ YR 9 MO __ DAYS
(Subtract or add time for mitigation or aggravation to expected, item 1d plus or minus 2c)

4. **DATE OF ADMINISTRATIVE SEGREGATION CONFINEMENT/VIOLATION** ........ 04 YR 4 MO 01 DAY

5. **MAXIMUM DATE OF RELEASE FROM SHU** ........ 05 YR 1 MO 01 DAY
(Add total time assessed to date of confinement, item 3 plus 4)

6. **MINIMUM SHU CONFINEMENT TIME TO SERVE** ........ __ YR 6 MO 23 DAYS
(Enter 75% of the total SHU time (item 3) using the SHU Time Computation Table)
   a. Date of confinement/violation (item 4) ........ 04 YR 4 MO 01 DAY

7. **MINIMUM ELIGIBLE RELEASE DATE (MERD)** ........ 04 YR 10 MO 24 DAY
(Add the minimum SHU time to the date of confinement, item 6 plus 6a)

8. **FORFEITURE OF GOOD CONDUCT CREDITS FOR SUBSEQUENT MISCONDUCT**
(Enter "NONE" for item 8a or indicate the amount of time lost and describe and document the misconduct for which credit is being forfeited). SHU inmates may forfeit up to 45 days of clean conduct credits for each disciplinary infraction that is not serious enough to warrant the assessment of a subsequent or concurrent SHU term. Such forfeiture may be assessed against credits already earned or future credits.
   a. Time forfeited for CDC 115 - Dated: ________ YR MO D[AYS]
      1)
      2)
   b. ADJUSTED MERD Cannot Exceed MAXIMUM ........ YR M[O]
   (Add the amount of time forfeited to the prior MERD, item 7 plus 8a)

| NAME AND TITLE OF STAFF COMPUTING TERM | DATE SIGNED | DATE ICC ESTABLIS[HED] |
|---|---|---|
| R. E. JOHNSON, CCII | 07/22/2004 | 7-22-0[4] |

DISTRIBUTION: ORIGINAL - CENTRAL FILE; YELLOW - INMATE; PINK - AUDITOR

Suspend Remainder of SHU eff. 9-16-04 [signature] Warden 9/16/04

DI off 1-1-04 A-Seg Placement w/114D

1-01 180 6-28-04 DI date

Assess/Impose [signature] AW 7/22/04

State of California | Department of Corrections
CDC 128-G

No. K-83465 NAME: HUNTER

*Comment*:

9 month SHU term for RVR of 4-21-04 for Drug Distribution approved as assessed by ICC action of 7-22-04 with MERD of 10-24-04.

D Felix, CSR

**Date: 8/11/2004** **Classification - CSR ACTION** **CEN**

00082
0000036

disciplinary action. The investigation may continue after that date as new information is received or the investigative employee completes his/her assignment. In this example, the date entered on the disciplinary is January 13, 1993. The description of circumstances will explain that the date of the incident was January 1, 1993 and the investigation closed on January 13, 1993.

The charge should be as specific as possible. Do not use vague charges such as *Conduct* or *Force and Violence*. For example, *Fight with Inmate John Doe* or *Manufacturing weapons in and around Dorm 13.* Multiple charges are discouraged.

Review the body of the report. Satisfy yourself that the body of the report supports the listed charge or charges. In the hearing, you can find the inmate guilty only of the listed charge or a lesser and included charge. You cannot find him/her guilty of some other more appropriate charge. If you find this is a problem, your only option is reissuing the disciplinary with the correct charge. Keep in mind that a credit forfeiture cannot be assessed if the inmate is not charged within 15 days of discovery.

Review the classification of the disciplinary. Satisfy yourself the classification is appropriate. As part of your disposition, you can reduce the classification. If you feel it is classified too high, this is not a problem as you can reduce it in your disposition. However, if you feel the classification is too low, the disciplinary must be reissued with the higher classification. Otherwise, you can assess no more than allowed for the lower classification. Per CCR 3313(c), the disciplinary can be reclassified by either the staff member who originally classified the disciplinary or a higher level staff member.

These delays do not change time constraints. The hearing shall be held within 30 days of the inmate receiving the uncorrected disciplinary report. The inmate shall be allowed 24 hours for review of the corrected copy prior to his/her hearing. If you discover previously undisclosed evidence during the hearing, the hearing is stopped with new documents issued and sufficient time given for review prior to the new hearing.

If you run out of time because of extraordinary circumstances, you can extend the 30-day hearing time constraint by serving the inmate with a written notice within the original 30 day period. This notice, a CDC 128-B, must explain the extraordinary circumstance requiring delay beyond 30 days from serving the inmate the CDC 115. You must also state your conclusion this delay will not prejudice the inmate's right to a fair hearing. In your disposition, you must reaffirm this finding. While there is no description of extraordinary circumstances, administrative errors are not promising candidates.

possession of the same thing if they shared this Constructive Possession. An area under the control of the inmate is the area designated as his/her responsibility. For example, anything in his/her cell or mattress.

TRAFFICKING IN NARCOTICS, as a disciplinary offense, causes a lot of confusion. It is not specifically listed in the disciplinary schedule. Anyone guilty of Trafficking has constructive or actual possession of a controlled substance so the charge listed for this Division, *Possession of any Controlled Substance, etc.* is a lesser and included charge to *Trafficking*. This means it can be classified as Division B(6). However, the specific act listed on the disciplinary must be *Trafficking* rather than *Possession*. If the specific act alleges *Possession*, you cannot find the inmate guilty of *Trafficking* without reissuing the specific charge. The advantage for the charge of *Trafficking* is that it is a SHU offense. Because a portion of the SHU time is zero earning credit time, it does carry a more severe penalty than *Possession*.

As a charge, *Possession* is more appropriate when the evidence describes the inmate as a consumer rather than a distributor. A consumer has enough for himself/herself and does not sell to other inmates. A distributor has enough for his/her customers and goods are packaged for sale in small amounts for others. Evidence of sales to other inmates or direct involvement in smuggling also qualifies as *Trafficking*.

no one or single time use

CCR 3290 places additional restrictions on disciplinaries involving narcotics and other controlled substances. If you do not have a positive urine test for controlled substances, you must have the narcotic or other controlled substance and the identity of this substance must be verified by a toxicological laboratory test with only one exception: the results of a field test without laboratory verification can be used if the inmate waives the laboratory test while admitting the nature of the substance and his/her guilt to the charge. If you do not find the substance in question, you can still find the inmate guilty based upon circumstantial evidence but you cannot assess a credit forfeiture. Per CCR 3290(f), if you do have a positive urine test for controlled substances, this is sufficient for CCR 3290 and the charge of Possession of Controlled Substances.

If the inmate is involved in trafficking controlled substances, you have the option of charging him/her with a Division B(8) offense, H&S 11352 Transportation, Sale, Giving Away, etc. of Designated Controlled Substances. This charge has the advantage that CCR 3290 restrictions do not apply. If you have circumstantial evidence of trafficking with no contraband, you can assess a credit forfeiture under this charge.

Another option is charging the inmates with Conspiracy to commit this offense. You must have two or more inmates involved in the conspiracy and you must

108

substance in question, you can still find the inmate guilty based upon circumstantial evidence but you cannot assess a credit forfeiture. If you have a positive urine test verifying controlled substances, this is sufficient evidence.

You have the option of charging him/her with a Division B(8) offense, H&S 11352 Transportation, Sale, Giving Away, etc. of Designated Controlled Substances. This charge has the advantage that CCR 3290 restrictions do not apply. If you have circumstantial evidence of trafficking with no contraband, you can assess a credit forfeiture under this charge.

Another option is charging the inmates with Conspiracy to commit this offense. You must have two or more inmates involved in the conspiracy and you must have an overt act. Once again, this charge applies to trafficking or smuggling controlled substances and CCR 3290 restrictions do not apply.

## B (8) - ANY FELONY NOT INVOLVING VIOLENCE OR THE USE OF A WEAPON NOT LISTED IN THIS SCHEDULE:

FELONY is defined in PC 17 as any offense with a possible sentence to state prison. This includes charges that can be reduced to a misdemeanor by the sentencing judge.

Felonies have been grouped under types of offenses: Contraband; Property; Threatening Conduct; and, Sexual.

**CONTRABAND:**

**H&S 11352: TRANSPORTATION, SALE, GIVING AWAY, ETC. OF DESIGNATED CONTROLLED SUBSTANCES**

CCR 3290 prohibits assessment of a credit loss for possession of a controlled substance without finding the contraband and positive laboratory identification of this contraband or an admission of guilt by the inmate. This felony charge gives you an alternative. If you have a preponderance of circumstantial evidence with no contraband as required by CCR 3290, this charge is available for Trafficking in Controlled Substances and allows for assessment of a credit forfeiture.
This charge is not available as a means of circumventing CCR 3290 restrictions. If your evidence points to purchase of controlled substance for personal use, this charge is not appropriate. This charge applies when you have evidence the inmate is buying and selling quantities of controlled substance. This includes involvement in smuggling controlled substances into the institution.

Determinate Sentencing Law (DSL) Prisoner means a person sentenced to prison under Penal Code section 1170 for a crime committed on or after July 1, 1977.

Direct and Constant Supervision means an inmate shall be monitored and observed by CDC staff, either custody staff or work supervisor as indicated in these regulations, sufficiently to account for the specific whereabouts of the inmate at all times.

Director means the director of the department of corrections.

Disabled Veteran Business Enterprise means a business concern as defined in Military and Veterans Code section 999(g).

Disabled Veteran Business Enterprise focus paper means a publication that meets all of the following criteria: (1) has an orientation relating to the disabled veteran business enterprise; (2) is known and utilized by members of the disabled veteran business enterprise community; (3) primarily offers articles, editorials (if any), and advertisements of business opportunities aimed at disabled veteran business enterprises; and (4) is readily available within the geographical area for which the advertisement is placed and for which the services are to be performed.

Disabled Veteran Business Enterprise focus paper and trade paper means a publication that meets all of the criteria of a disabled veteran business enterprise focus paper and all of the criteria of a trade paper.

Disciplinary Detention means a temporary housing status which confines inmates so assigned to designated rooms or cells for prescribed periods of time as punishment for serious rule violations.

Disciplinary Free means without any finding of guilt of a disciplinary infraction filed on a CDC Form 115, Rule Violation Report, classified as either administrative or serious.

Disruptive Group—means any gang, other than a prison gang.

Distribution means the sale or unlawful dispersing, by an inmate or parolee, of any controlled substance; or the solicitation of or conspiring with others in arranging for, the introduction of controlled substances into any institution, camp, contract health facility, or community correctional facility for the purpose of sales or distribution.

Drugs means substances intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease, and as defined in Health and Safety Code section 11014. In may also include drug paraphernalia, as defined in Health and Safety Code section 11014.5.

Escape History refers to any reliable information or inmate self-admission in the central file to an escape, attempted escape, walkaway, or plan to escape. The available information describing the circumstances of the escape or attempted escape shall be evaluated in determining the level of risk to correctional safety and security posed by the inmate.

Examinee means a person who voluntarily takes a polygraph examination.

Ex-Offender means a person previously convicted of a felony in California or any other state, or convicted of an offense in another state which would have been a felony if committed in California.

Execution Type Murder describes the circumstances or manner of a fatal offense in which the victim is bound, cuffed, gagged, blindfolded, or forced to assume a position from which the victim is unable to resist or flee; the victim is shot at close range; or the manner of death demonstrates that the victim had no opportunity to defend himself or herself nor to flee.

Facility Security Perimeter is any combination of living unit, work area and recreation area perimeters that is set aside to routinely restrict inmate movement based on custody level. This perimeter will contract and expand depending upon the weather, lighting conditions and hours of operation.

Federal Consecutive Prisoner means a California prisoner who is also under sentence of the United States and is confined in a federal correctional facility, and whose California term shall commence upon completion of the United States' sentence.

Field File means a working file maintained by a parole unit office containing information about a parolee and his/her current parole.

Firm means any individual, firm, partnership, corporation, association, joint venture or other legal entity permitted by law to practice the professions of architecture, landscape architecture, engineering, environmental services, land surveying or construction project management.

Force, as applied to escape or Attempted Escape, refers to physical contact or threat of physical harm against a person to enable or attempt the escape.

Frequent and Direct Supervision means that staff supervision of an inmate shall be sufficient to ensure that the inmate is present within the area permitted.

Friendly Witness means any witness who is not an adverse witness.

Gang means any ongoing formal or informal organization, association or group of three or more persons which has a common name or identifying sign or symbol whose members and/or associates, individually or collectively, engage or have engaged, on behalf of that organization, association or group, in two or more acts which include, planning, organizing threatening, financing, soliciting, or committing unlawful acts or acts of misconduct classified as serious pursuant to section 3315.

General Chrono means a CDC Form 128-B (Rev. 4-74) which is used to document information about inmates and inmate behavior. Such information may include, but is not limited to, documentation of enemies, records of disciplinary or classification matters, pay reductions or inability to satisfactorily perform a job, refusal to comply with grooming standards, removal from a program, records of parole or social service matters.

Goal means a numerically expressed disabled veteran business enterprise objective as set out in Public Contract Code section 10115(c), that awarding departments and contractors are required to make efforts to achieve.

Good Cause means a finding based upon a preponderance of the evidence that there is a factual basis and good reason for the decision made.

Good Faith Effort means a concerted effort on the part of a potential contractor to seek out and consider disabled veteran-owned and operated business enterprises as potential contractors, and/or subcontractors in order to meet the program participation goals.

Grievance means a complaint about a decision, action, or policy which an inmate, parolee or staff wish to have changed.

Harassment means a willful course of conduct directed at a specific person, group, or entity which seriously alarms, annoys, or terrorizes that person, group, or entity and which serves no legitimate purpose.

Hearing Agent means the parole and community services division employee responsible for application of specific procedures pertaining to the parole revocation hearing process; the primary liaison between the parole and community services division and the releasing authorities in matters and procedures pertaining to the parole revocation hearing process.

Hearing Coordinator means an employee assigned to coordinate the revocation process within an institution or a parole and community services division region.

High Notoriety describes an inmate who must be treated as a significant escape risk due to the unusual level of public panic that his or her escape would likely cause. The risk of public panic is based upon the nature or circumstance of the inmate's crime, the inmate's criminal history, the inmate's behavior in custody, and extensive or prolonged media coverage of the crime beyond the closest large city and its surrounding communities. A High

of time. Three months of this four-month reduction, or a reduction based on this ratio for any lesser period, shall be based upon forbearance from any act for which the prisoner could be prosecuted in a court of law, either as a misdemeanor or a felony, or any act of misconduct described as a serious disciplinary infraction by the Department of Corrections.

(c) One month of this four-month reduction, or a reduction based on this ratio for a lesser period, shall be based solely upon participation in work, educational, vocational, therapeutic or other prison activities. Failure to succeed after demonstrating a reasonable effort in the specified activity shall not result in loss of participation credit. Failure to participate in the specified activities can result in a maximum loss of credit of 30 days for each failure to participate. However, those confined for other than behavior problems shall be given specified activities commensurate with the custodial status.

(d) This section shall not apply to any person whose crime was committed on or after January 1, 1983. *(Added by Stats.1976, c. 1139, p. 5146, § 276, operative July 1, 1977. Amended by Stats.1977, c. 2, p. 661, § 4, eff. Dec. 16, 1976, operative July 1, 1977; Stats.1977, c. 165, p. 8, § 38, eff. June 29, 1977, operative July 1, 1977; Stats.1978, c. 380, p. 1188, § 125; Stats.1978, c. 532, p. 1689, § 1; Stats.1979, c. 373, p. 1400, § 247; Stats.1979, c. 319, p. 1141, § 1; Stats.1980, c. 676, § 254; Stats. 1982, c. 1234, p. 4548, § 2.)*

#### Cross References

Credit upon subsequent commitment for same act if judgment invalid or modified, see Penal Code § 2900.1.

Director of corrections, see Penal Code § 5050 et seq.

Effect of amendment of section by two or more acts at the same session of the legislature, see Government Code § 9605.

### § 2932. Denial of time credits; grounds; limitations; procedure; effect; review; criminal prosecution; notice to prisoner

(a)(1) For any time credit accumulated pursuant to Section 2931 or to Section 2933, not more than 360 days of credit may be denied or lost for a single act of murder, attempted murder, solicitation of murder, manslaughter, rape, sodomy, or oral copulation accomplished against the victim's will, attempted rape, attempted sodomy, or attempted oral copulation accomplished against the victim's will, assault or battery causing serious bodily injury, assault with a deadly weapon or caustic substance, taking of a hostage, escape with force or violence, or possession or manufacture of a deadly weapon or explosive device, whether or not prosecution is undertaken for purposes of this paragraph. Solicitation of murder shall be proved by the testimony of two witnesses, or of one witness and corroborating circumstances.

(2) Not more than 180 days of credit may be denied or lost for a single act of misconduct, except as specified in paragraph (1), which could be prosecuted as a felony whether or not prosecution is undertaken.

(3) Not more than 90 days of credit may be denied or lost for a single act of misconduct which could be prosecuted as a misdemeanor, whether or not prosecution is undertaken.

(4) Not more than 30 days of credit may be denied or lost for a single act of misconduct defined by regulation as a serious disciplinary offense by the Department of Corrections. Any person confined due to a change in custodial classification following the commission of any serious disciplinary infraction shall, in addition to any loss of time credits, be ineligible to receive participation or worktime credit for a period not to exceed the number of days of credit which have been lost for the act of misconduct or 180 days, whichever is less. Any person confined in a secure housing unit for having committed any misconduct specified in paragraph (1) in which great bodily injury is inflicted upon a nonprisoner shall, in addition to any loss of time credits, be ineligible to receive participation or worktime credit for a period not to exceed the number of days of credit which have been lost for that act of misconduct, or for the period that the prisoner is confined in a secure housing unit, whichever is less. In unusual cases, an inmate may be denied the opportunity to participate in a credit qualifying assignment for up to six months beyond the period specified in this subdivision if the Director of Corrections finds, after a hearing, that no credit qualifying program may be assigned to the inmate without creating a substantial risk of physical harm to staff or other inmates. At the end of the six-month period and of successive six-month periods, the denial of the opportunity to participate in a credit qualifying assignment may be renewed upon a hearing and finding by the director.

The prisoner may appeal the decision through the department's review procedure, which shall include a review by an individual independent of the institution who has supervisorial authority over the institution.

(b) For any credit accumulated pursuant to Section 2931, not more than 30 days of participation credit may be denied or lost for a single failure or refusal to participate. Any act of misconduct described by the Department of Corrections as a serious disciplinary infraction if committed while participating in work, educational, vocational, therapeutic, or other prison activity shall be deemed a failure to participate.

(c) Any procedure not provided for by this section, but necessary to carry out the purposes of this section, shall be those procedures provided for by the Department of Corrections for serious disciplinary infractions if those procedures are not in conflict with this section.

(1)(A) The Department of Corrections shall, using reasonable diligence to investigate, provide written notice to the prisoner. The written notice shall be given within 15 days after the discovery of information leading to charges that may result in a possible denial of credit, except that if the prisoner has escaped, the notice shall be given within 15 days of the prisoner's return to the custody of the Director of Corrections. The written notice shall include the specific charge, the date, the time, the place that the alleged misbehavior took place, the evidence relied upon, a written explanation of the procedures that will be employed at the proceedings and the prisoner's rights at the hearing. The hearing shall be conducted by an individual who shall be independent of the case and shall take place within 30 days of the written notice.

who, when, where I Distributed

(B) The Department of Corrections may delay written notice beyond 15 days when all of the following factors are true:

(i) An act of misconduct is involved which could be prosecuted as murder, attempted murder, or assault on a prison employee, whether or not prosecution is undertaken.

(ii) Further investigation is being undertaken for the purpose of identifying other prisoners involved in the misconduct.

(iii) Within 15 days after the discovery of information leading to charges that may result in a possible denial of credit, the investigating officer makes a written request to delay notifying that prisoner and states the reasons for the delay.

(iv) The warden of the institution approves of the delay in writing.

The period of delay under this paragraph shall not exceed 30 days. The prisoner's hearing shall take place within 30 days of the written notice.

(2) The prisoner may elect to be assigned an employee to assist in the investigation, preparation, or presentation of a defense at the disciplinary hearing if it is determined by the department that: (i) the prisoner is illiterate; or (ii) the complexity of the issues or the prisoner's confinement status

## PRE-HEARING DOCUMENT REVIEW

Before the hearing, review all written documents, beginning with the disciplinary. This is your pre-hearing document review. This review will also help develop some preliminary conclusions on any witnesses requested by the inmate.

### REVIEWING THE DISCIPLINARY

Penal Code 2932(c)(1), states the disciplinary shall include these elements: the specific charge; date; time; place; evidence relied upon; and, a written explanation of the hearing procedures as well as any hearing rights. As both hearing procedures and rights are pre-printed on the back of the disciplinary forms, these are not an issue in preparing the disciplinary. The remaining elements are unique to each disciplinary report and, therefore, an issue.

The time, date, and place of the misconduct must be as specific as possible. When the violation is identified as happening at a particular time and place, this is not a problem. However, conspiracies and similar violations happening over a period of time with different locations can be a real problem. For example, you receive reliable confidential information the inmate was involved in weapons manufacture over the last several weeks. No particular time and place is more significant than a number of other times and places spread over this period of several weeks. Under these circumstances, you give the information you have. You state the date the weapons manufacture began and the ending date. The ending date is usually the date your investigation ended or the inmate was removed from general population pending that investigation. You also state the different locations used for this activity. For example, *you were engaged in weapons manufacture in and around Dorm 13 sometime between January 1, 1993, and January 15, 1993.* The range of dates may be no more specific than the amount of time he was housed in your facility. For example, an inmate engaged in gang activity may have been organizing the whole time he was housed at your facility. If so, give this range of dates as the date of misconduct.

The CDC 115 has specific boxes for location, date, and time. The usual practice is entering the location, date, and time of the misconduct in these boxes. If a lengthy investigation occurred prior to writing the disciplinary, use the date and time the investigation closed, rather than the presumed date of the misconduct, in these boxes. The description of circumstances should give the correct date of the misconduct as well as stating the closing date on the investigation. THE DATE THE INVESTIGATION CLOSED means the date the reporting employee felt there was sufficient information to charge the inmate. For example, an investigation into an incident of January 1, 1993 closes on January 13, 1993, when the reporting employee confirms sufficient evidence against the inmate for

H
000042

## PROPERTY OFFENSES

Division A-2(1) - Arson involving damage to a structure.

Division A-2(2) - Possession of flammable, explosive, or combustible material with intent to burn any structure or property.

Division B(5) - Theft, embezzlement, destruction, misuse, alteration, damage, unauthorized acquisition, or exchange of personal property, state funds, or state property valued in excess of $400.

Division B(8) - PC 666; Petit theft with a prior.

Division C(3) - Unauthorized possession of materials or substances altered from their original manufactured state or purpose and which can be made into a weapon, explosive, or explosive-making material, poison, caustic substance, or any destructive device.

Division C(8) - Arson.

Division E(1) - Theft, embezzlement, destruction, misuse, alteration, damage, unauthorized acquisition or exchange of personal property, state funds, or state property valued at more than $50 but less than $400.

Division E(5) - Gambling in an institution, community correctional facility, or camp other than a community-access facility.

Division F (3315) - Unauthorized possession of departmental records or documents which might affect any inmate's release status.

Division F (3315) - Possession of five dollars or more without authorization.

Division F (3315) - Tattooing or possession of tattoo paraphernalia.

## SEX OFFENSES

Division A-1(5) - Rape, attempted rape, sodomy, oral copulation, and attempted oral copulation accomplished against the victim's will.

Division B(8) - PC 266h; Pimping.

Division B(8) - PC 314; Indecent exposure with prior.

Division D(5) - Indecent exposure.

Division E(3) - Consensual participation in sodomy or oral copulation.

Division F (3315) - Harassment of another person, group or entity, either directly or indirectly through the use of the mail or other means.

## SOLICITING

Division A-1(1) - Solicitation of murder.

Division A-2(3) - Solicitation of: Battery with a deadly weapon or battery by means of force likely to produce serious injury; arson, or forcible sex act.

Division C(6) - Bribery.

Division C(7) - Solicitation of extortion, bribery, or forgery.

Possession for sale charge is no longer in title 15

## SUBSTANCE ABUSE OFFENSES

Division B(6) - Possession of any narcotic, drug, or controlled substance, including marijuana in an institution, community correctional facility, or camp.

Division B(7) - Possession for sale of any narcotic, drug, or controlled substance, including marijuana, in a community-access facility.

Division B(8) - H&S 11352; Transportation, sale, giving away, etc. of designated controlled substances.

Division C(10) - Possession of any narcotic, drug, or controlled substance in a community-access facility.

Division C(11) - Possession or manufacture of alcohol in an institution, ccf, or camp.

8+ Δ

## CHECKLIST FOR HEARING STAGE

- Satisfy yourself that the inmate does not need an SA assigned.
- Identify yourself as the SHO, and state that you are an impartial SHO.
- If signs of a major mental disorder causing an incapacity to understand his/her actions are present, request a mental health evaluation.
- Ask the inmate if he/she is in good health and ready to proceed.
- Satisfy yourself that he/she understands his/her hearing rights.
- Inform the inmate of the pending charges against him/her and the circumstances in support of that charge.
- Ask if he/she received a written copy of the charge at least 24 hours prior to the hearing.
- Review the list of all supplementary reports submitted for the hearing and ask if the inmate has received his/her copies at least 24 hours prior to the hearing.
- If not, issue copy and ask if he/she waives the 24-hour preparation time. If he/she does waive, continue with the hearing after the inmate signs a waiver. If not, reschedule after 24-hour preparation period.
- If felony charges are pending, explain rights.
- Ask the inmate for his/her plea.
- Ask the inmate for his/her side of the story.
- Allow the inmate to present his/her evidence.
- Ask if he/she requests witnesses. If denied, explain the reason.
- Carefully note the testimony presented by each witness.
- Allow the inmate to question witnesses under your direction.
- Do not accept witness testimony without the presence of inmate.
- Dismiss all witnesses and the inmate from hearing area for your deliberation.

22
0000044

STATE OF CALIFORNIA
**ADMINISTRATIVE SEGREGATION UNIT PLACEMENT NOTICE**
**CDC 114-D (Rev 10/98)**

DEPARTMENT OF CORRECTIONS

DISTRIBUTION:
WHITE - CENTRAL FILE
BLUE - INMATE (2ND COPY)
GREEN - ASU
CANARY - WARDEN
PINK - HEALTH CARE MGR
GOLDENROD - INMATE (1ST COPY)

| INMATE'S NAME | CDC NUMBER |
|---|---|
| BROOKS | C-91907 |

**REASON(S) FOR PLACEMENT (PART A)**

[X] PRESENTS AN IMMEDIATE THREAT TO THE SAFETY OF SELF OR OTHERS
[ ] JEOPARDIZES INTEGRITY OF AN INVESTIGATION OF ALLEGED SERIOUS MISCONDUCT OR CRIMINAL ACTIVITY
[X] ENDANGERS INSTITUTION SECURITY
[ ] UPON RELEASE FROM SEGREGATION, NO BED AVAILABLE IN GENERAL POPULATION

DESCRIPTION OF CIRCUMSTANCES WHICH SUPPORT THE REASON(S) FOR PLACEMENT:
On January 01, 2005, while you were in the Facility-"A" Visiting Room, you were found to be in possession of a controlled substance for the purpose of distribution. Based on the aforementioned you are being placed in Administrative Segregation at CSP-LAC. You will remain in Administrative Segregation pending a review by administrative staff and the Institutional Classification Committee (ICC). Your privilege group, credit earning status, visiting privileges and custody status are subject to change as a result of this placement.

[ ] CONTINUED ON ATTACHED PAGE (CHECK IF ADDITIONAL) [ ] IF CONFIDENTIAL INFORMATION USED, DATE OF DISCLOSURE: / /

| DATE OF ASU PLACEMENT | SEGREGATION AUTHORITY'S PRINTED NAME | SIGNATURE | TITLE |
|---|---|---|---|
| 01-21/05 | G. HUGHES | [signature] | LIEUTENANT |

| DATE NOTICE SERVED | TIME SERVED | PRINTED NAME OF STAFF SERVING ASU PLACEMENT NOTICE | SIGNATURE | STAFF'S TITLE |
|---|---|---|---|---|
| 1/21/05 | 1340 | [handwritten] | [signature] | C/O |

| [X] INMATE REFUSED TO SIGN | INMATE SIGNATURE | CDC NUMBER |
|---|---|---|
| | | |

**ADMINISTRATIVE REVIEW (PART B)**
*The following to be completed during the initial administrative review by Captain or higher by the first working day following placement*

**STAFF ASSISTANT (SA)**

| STAFF ASSISTANT NAME | TITLE |
|---|---|
| | |

**INVESTIGATIVE EMPLOYEE (IE)**

| INVESTIGATIVE EMPLOYEE'S NAME | TITLE |
|---|---|
| | |

**IS THIS INMATE:**

LITERATE? [ ] YES [ ] NO
FLUENT IN ENGLISH? [ ] YES [ ] NO
ABLE TO COMPREHEND ISSUES? [ ] YES [ ] NO
FREE OF MENTAL HEALTH SERVICES DELIVERY SYSTEM NEEDS? [ ] YES [ ] NO
DECLINING FIRST STAFF ASSISTANT ASSIGNED? [ ] YES

Any "NO" requires SA assignment

[ ] NOT ASSIGNED

EVIDENCE COLLECTION BY IE UNNECESSARY [ ] YES [ ] NO
DECLINED ANY INVESTIGATIVE EMPLOYEE [ ] YES [ ] NO
ASU PLACEMENT IS FOR DISCIPLINARY REASONS [ ] YES [ ] NO
DECLINED 1ST INVESTIGATIVE EMPLOYEE ASSIGNED [ ] YES

Any "NO" may require IE assignment

[ ] NOT ASSIGNED

**INMATE WAIVERS**

[ ] INMATE WAIVES OR DECLINES INTERVIEW WITH ADMINISTRATIVE REVIEWER
[ ] INMATE WAIVES RIGHT TO 72 HOURS PREPARATION TIME
[ ] NO WITNESSES REQUESTED BY INMATE

| INMATE SIGNATURE | DATE |
|---|---|
| | |

**WITNESSES REQUESTED FOR HEARING**

| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |
|---|---|---|---|
| | | | |
| | | | |

**DECISION:** [ ] RELEASE TO UNIT/FACILITY______ [ ] RETAIN PENDING ICC REVIEW [ ] DOUBLE CELL [ ] SINGLE CELL PENDING ICC

REASON FOR DECISION:

| ADMINISTRATIVE REVIEWER'S PRINTED NAME | TITLE | DATE OF REVIEW | TIME | ADMINISTRATIVE REVIEWER'S SIGNATURE |
|---|---|---|---|---|
| | | | | |

| CORRECTIONAL ADMINISTRATOR'S PRINTED NAME (if necessary) | CORRECTIONAL ADMINISTRATOR'S CO-SIGNATURE (if necessary) | DATE OF REVIEW |
|---|---|---|
| | | |

**See chronological Classification Review document (CDC 128 - G) for specific hearing information**

Rec. 3/01/05

[ ] CCCMS [ ] E.O.P. [ ✓] CLEAR

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT

804 TO RECORDS: ______

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| C-91907 | BROOKS | | CSP-LAC | FAB2-201L | A05-01-0006 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| 3016(c) | POSSESSION OF CONTROLLED SUBSTANCE FOR DISTRIBUTION | FA VISITING | 01-20-05 | 1100 HRS |

CIRCUMSTANCES

On January 20, 2005, at approximately 1100 hours, results were received from the Los Angeles County Sheriff's Department, Scientific Services Bureau Laboratory, which reflected the item recovered from Inmate Brooks (C-91907) had the following results: One container enclosed a gross weight of 5.12 grams of solid substance heroin.

On January 1, 2005, at approximately 1510 hours, while assigned as the Facility 'A' Visiting Officer, I received confidential Information that Inmate Brooks (C-91907, FAB2-201L) placed his hands down the back of his own pants inside the Facility 'A' Visiting Room while waiting to be processed out. (Refer to CDC-1030 Confidential Disclosure Form dated January 20, 2005)

Given this information, I escorted Inmate Brooks to the Facility 'A' Visiting Search Room. With Correctional Officer D. Rogers' assistance, I conducted an unclothed body search of Inmate Brooks. During the course of the search, I observed that Inmate Brooks' rectal area appeared to be lubed or greased. (CONTINUES ON PART "C")

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| ▶ L. GROUNDS, CORRECTIONAL OFFICER | [illegible] | REL OFFICER | W/T |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING |
|---|---|---|
| ▶ C. HUGHES, CORR. LIEUTENANT | [illegible] | DATE ______ LOC. ______ |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☑ SERIOUS | A-2 | [illegible] | ▶ R. BELTRAN, Facility Captain (A) | ☐ HO ☑ SHO ☐ SC ☐ FC |

COPIES GIVEN INMATE BEFORE HEARING

| ☑ CDC 115 | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME | TITLE OF SUPPLEMENT | | |
|---|---|---|---|---|---|---|
| ☐ INCIDENT REPORT LOG NUMBER: VIS-05-01-0031 | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME |

HEARING

REFERRED TO ☐ CLASSIFICATION ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | SIGNATURE | DATE | TIME |
|---|---|---|---|
| | ▶ | | |

| REVIEWED BY: (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE |
|---|---|---|---|
| ▶ | | ▶ | |

| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) | DATE | TIME |
|---|---|---|---|
| | ▶ | | |

CDC 115 (7/88)

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**

PAGE 02 OF 02

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| C-91907 | BROOKS | A05- 01-0006 | CSP-LAC | 01-20-05 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☒ 115 CIRCUMSTANCES ☐ HEARING ☐ IE REPORT ☐ OTHER

Based on my findings, I contacted Lieutenant F. Hughes and apprised him of my discovery. When Lieutenant Hughes arrived at the Facility 'A' Visiting Search Room, he instructed me to conduct an unclothed body search. Upon completion of the search, I applied handcuffs and secured Inmate Brooks in the far west holding cell.

While in the cell, Officer Rodgers, who was maintaining a constant visual of Brooks through the holding cell window, observed that Brooks had urinated and defecated on himself.

I looked in the cell and ordered Brooks to open his hands but he failed to comply with my order. I noticed that Brooks had an orange colored object in his left hand. Facility 'A' staff arrived with PPE kits. Lieutenant Hughes instructed Officer M. Miller and myself to put the kits on and to conduct another unclothed body search of Inmate Brooks.

During the search, I ordered Brooks to open his mouth, to which he complied. I then noticed an orange colored object within his mouth and ordered him to spit it out. Inmate Brooks complied with my ordered and surrendered the object by spitting it onto the floor.

I then secured the object, which was an orange colored balloon, approximately one and a half inches in length and approximately one inch in diameter. While staff maintained custody of Brooks, I left and secured the object described as one orange balloon and also one videotaped in separate evidence bags labeled LG-01 and LG-02 in the Facilities A&B Sub-Evidence Room Locker #24.

I was later that day assigned to provide contraband watch over Inmate Brooks and when I arrived he began to shake his head, which prompted me to ask, "Why did you do it?" Inmate Brooks responded, "I did it for a friend! It was a last minute thing, my wife told me to stay away from that shit." I asked Inmate Brooks, "Did you chew on it?" He said, "Yes! It tasted like shit!" I then asked Brooks if he was trying to destroy the evidence. Inmate Brooks responded, "Ya!" I then responded, "It's a good thing that you didn't swallow it, because you could have died." Inmate Brooks replied, "That's why I didn't swallow it."

This inmate's observed behavior at the time of the Rule Violation was not bizarre, unusual or uncharacteristic.

4/ JO Miller

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| L. GROUNDS, CORRECTIONAL OFFICER | 2/1/05 |

| ☑ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| | [signature] | 2/1/05 | 1320 |

CDC 115-C (5/95)

OSP 99 25082

[ ] HOUSE [ ] S.O.P. [ ] CLEAR

C&A TO RECORDS: 2 ILL KS

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| C-91907 | BROOKS | | CSP-LAC | FAB2-201L | 01-0006 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| 3016(c) | POSSESSION OF CONTROLLED SUBSTANCE FOR DISTRIBUTION | FA VISITING | 01-20-05 | 1100 HRS |

CIRCUMSTANCES

On January 20, 2005, at approximately 1100 hours, results were received from the Los Angeles County Sheriff's Department, Scientific Services Bureau Laboratory, which reflected the item recovered from Inmate Brooks (C-91907) had the following results: One container enclosed a gross weight of 5.12 grams of solid substance heroin.

On January 1, 2005, at approximately 1510 hours, while assigned as the Facility 'A' Visiting Officer, I received confidential information that Inmate Brooks (C-91907, FAB2-201L) placed his hands down the back of his own pants inside the Facility 'A' Visiting Room while waiting to be processed out. (Refer to CDC-1030 Confidential Disclosure Form dated January 20, 2005)

Given this information, I escorted Inmate Brooks to the Facility 'A' Visiting Search Room. With Correctional Officer D. Rogers' assistance, I conducted an unclothed body search of Inmate Brooks. During the course of the search, I observed that Inmate Brooks' rectal area appeared to be lubed or greased. (CONTINUES ON PART "C")

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| ▶ L. GROUNDS, CORRECTIONAL OFFICER | 2/1/05 | REL OFFICER | W/T |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING |
|---|---|---|
| ▶ C. HUGHES, CORR. LIEUTENANT | 2/1/5 | DATE LOC. |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☒ SERIOUS | A2 | 2/1/05 | ▶ R. BELTRAN, Facility Captain (A) | ☐ HO ☒ SHO ☐ SC ☐ FC |

COPIES GIVEN INMATE BEFORE HEARING

| | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT | | |
|---|---|---|---|---|---|---|
| ☒ CDC 115 | ▶ [signature] | 2/11 | 1330 | Copy of lab report | | |
| ☐ INCIDENT REPORT LOG NUMBER: VIS-05-01-0031 | BY: (STAFF'S SIGNATURE) ▶ [signature] | DATE 2/11/05 | TIME 1315 | BY: (STAFF'S SIGNATURE) ▶ [signature] | DATE 2/7/05 | TIME 1341 |

HEARING

Copy of CDC 1030 given to I/m 2/11/05 1230 hrs C/O K Bradford

Copy of IE report to I/m 2/4/05 CO K. Bradford

(HEARING CONTINUES ON RVR PART-C Pg.2 of 4)

0000048

REFERRED TO ☐ CLASSIFICATION ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | SIGNATURE | DATE | TIME |
|---|---|---|---|
| D.J. PORTER, Correctional Lieutenant | ▶ [signature] | | |

| REVIEWED BY: (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE |
|---|---|---|---|
| ▶ D.K. DOWNS, Facility "B" Captain | | ▶ A. PAKHOURY, CDO, Assoc. Warden | |

| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME |
|---|---|---|---|

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |

☐ SUPPLEMENTAL ☑ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☑ HEARING ☐ IE REPORT ☐ OTHER

[illegible]

[illegible] appearance before the Senior Hearing Officer (S.H.O.), [illegible] [illegible] Report. [illegible] BROOKS [illegible] the following documents at [illegible] (24) hours [illegible]

[illegible]

These reports as well as the disciplinary charge of [illegible] were reviewed with inmate BROOKS in the hearing. Inmate BROOKS stated that he understood and was prepared to begin.

MENTAL HEALTH: Inmate BROOKS is not a participant in the Mental Health Services Delivery System (MHSDS).

DISTRICT ATTORNEY: This incident has been referred for criminal prosecution. However, BROOKS elected to proceed with the hearing as indicated per his signature noted on the CDC-115A Report.

DUE PROCESS: This disciplinary report was served to Inmate BROOKS within fifteen (15) days of discovery. The hearing was held within thirty (30) days of service, there are no due process violations.

INVESTIGATIVE EMPLOYEE: Correctional Officer K. Bradford was assigned as the I.E. on 02/14/2005

STAFF ASSISTANT: Not Assigned, the inmate does not meet the criteria for assignment per CCR §3315(d)(2). Inmate BROOKS speaks English, is not illiterate, and a confidential relationship is not required.

PLEA: The charges contained in the Rules Violation Report were read aloud to Inmate BROOKS who entered a plea of NOT GUILTY and made the following statement, "I am not guilty of Possession of Controlled Substance for Distribution Purposes, in that the contraband had not been placed in individual packaging for selling purposes. I am guilty for possession. I was dumb for taking it from the guy. I thought I was doing a favor, my wife told me not to get involved with those people."

WITNESSES: Inmate BROOKS was advised that he may request witnesses for this hearing. Inmate BROOKS did not request witnesses as indicated on CDC-115A.
The Senior Hearing Officer noted no other questions were asked.

FINDINGS: Inmate BROOKS is being found GUILTY of a Lesser and Included [illegible], "POSSESSION OF A CONTROLLED SUBSTANCE" a Division "B" Offense, based on the preponderance of evidence as documented in: CDC-115, CDC-115A Investigative Employee Report, CDC-837 Crime Incident Report, CDC-1030's/Confidential Memorandums. The SHO notes that the original Specific Act charge of "POSSESSION OF A CONTROLLED SUBSTANCE FOR DISTRIBUTION" a Division "A" Offense was not substantiated. This finding is based upon the following evidence:

CONTINUES ON RVR PART-C Pg. 3 of 4

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| B.J. PORTER Corr. Lt. | | |
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| | | |

☐ COPY OF CDC 115-C GIVEN TO INMATE

000049

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT - PART C

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
| --- | --- | --- | --- | --- |
| [illegible] | BROOKS [illegible] | [illegible] | [illegible] | [illegible] |

☐ SUPPLEMENTAL ☑ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☑ HEARING ☐ IE REPORT ☐ OTHER ____

[illegible]

A) Inmate BROOKS was escorted to Facility "A" [illegible] unclothed body search [illegible] performed on BROOKS. During the course of the search, [illegible] observed the [illegible] of BROOKS appeared to [illegible].

B) Lieutenant R. Hughes ordered C/O L. Grounds to secure BROOKS in a holding cell. The holding cell was inspected for contraband prior to escorting BROOKS inside, with negative results.

C) While BROOKS was in the holding cell, Correctional Officer Rodgers observed that BROOKS had urinated and defecated on himself, when C/O RODGERS observed BROOKS to have an orange colored object in his left hand.

D) Lt. Hughes ordered a second (2nd.) unclothed body search on BROOKS, C/O L. Grounds ordered BROOKS to open his mouth, an orange colored object was observed. BROOKS surrendered the object by spitting it out of his mouth onto the floor. C/O L. Grounds then secured the object in the Facility A/B Sub-Evidence Locker.

E) During the interim of the above actions, BROOKS was asked, why he did it? BROOKS responded, "I did it for a friend."

F) Lab results were received from Los Angeles County Sheriff's Department, Scientific Services Bureau Laboratory, reflecting the item confiscated from Inmate BROOKS (C-91907), proved positive to be Heroin, weighing 5.12 grams.

2. Inmate BROOKS'S partial admission of guilt when entering his plea of Not Guilty by stating, "I am not guilty of Possession of Controlled Substance for Distribution Purposes, in that the contraband had not been placed in individual packaging for selling purposes. I am guilty for possession. I was dumb for taking it from the guy. I thought I was doing a favor, my wife told me not to get involved with these people."

3. The SHO deemed that Confidential Information received meets the criteria Per CCR §3321 (b)(1)(2), [...No decision shall be based upon information from a confidential source, unless other documentation / evidence corroborates information from the source, or unless the circumstances surrounding the event and the documented reliability of the source satisfies the decision maker(s). It should be noted that the confidential source has not previously furnished information in the past. However, the SHO has evaluated the confidential information provided and determined that the information was reliable in association with the above stated facts / disposition as outlined in: 1, A),B),C),D),E),F), 2 & 4.

CONTINUES ON RVR PART-C Pg. 4 of 4

| SIGNATURE OF WRITER | DATE SIGNED |
| --- | --- |
| P.J. PORTER Corr. Lt. | |

| ☐ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| --- | --- | --- | --- |
| | | | |

0000050

NAME and NUMBER BROOKS (BLK) C-91907 FAB2-201L CSP-LAC

CDC-128-B Rev. 4/74

On Tuesday, March 01, 2005, Inmate BROOKS (C-91907) appeared before this Senior Hearing Officer (SHO), Correctional Lieutenant D.J. PORTER, in reference to RVR Log Number A05-01-0006 and was found GUILTY of the Modified Lesser and Included Offense of CCR §3016(a), for the Specific Act of "POSSESSION OF A CONTROLLED SUBSTANCE." Subsequently, Inmate BROOKS has been assessed 30 Days Loss Of Privileges, effective 03/01/2005 through 04/01/2005. Inmate BROOKS is aware of this report.

1. NO TELEPHONE (EXCEPT FOR VERIFIED EMERGENCIES).
2. NO DAYROOM.
3. NO YARD
4. NO QUARTERLY PACKAGES/SPECIAL PURCHASES
5. NO FACILITY "A" CANTEEN PRIVILEGES

6. In addition to the above, Inmate BROOKS is assessed LOSS OF VISITS for NINETY (90) DAYS, followed by NON-CONTACT VISITS for NINETY (90) DAYS, for violations of CCR §3323(d)(6) and 3323(f)(2)-Divisions B and D. Loss of visits from 03/01/2005 through 06/01/2005, followed by non-contact visits from 06/02/2005 through 09/02/2005.

ORIG: Central File
cc: Inmate
Writer
CCI

D.J. Porter Lt.
D.J. PORTER (SHO)
Correctional Lieutenant
CSP/LAC

DATE 03/01/05 LOSS OF PRIVILEGES GENERAL CHRONO

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# SERIOUS RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| C-91557 | BROOKS | 3016(c) | 01-20-05 | CSP-LAC | A05-01-0006 |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT ☑ YES ☐ NO

## POSTPONEMENT OF DISCIPLINARY HEARING

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☑ **I DO NOT REQUEST** my hearing be postponed pending outcome of referral for prosecution. | ▶ | |
| ☐ **I REQUEST** my hearing be postponed pending outcome of referral for prosecution. | ▶ | |

DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ **I REVOKE** my request for postponement. | ▶ | |

## STAFF ASSISTANT

STAFF ASSISTANT ☐ REQUESTED ☐ WAIVED BY INMATE | INMATE'S SIGNATURE ▶ | DATE

☐ ASSIGNED | DATE | NAME OF STAFF

☑ NOT ASSIGNED | REASON

## INVESTIGATIVE EMPLOYEE

INVESTIGATIVE EMPLOYEE ☑ REQUESTED ☐ WAIVED BY INMATE | INMATE'S SIGNATURE ▶ | DATE

☐ ASSIGNED | DATE | NAME OF STAFF

☐ NOT ASSIGNED | REASON

EVIDENCE/INFORMATION REQUESTED BY INMATE:

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)

☐ REPORTING EMPLOYEE ☐ STAFF ASSISTANT ☐ INVESTIGATIVE EMPLOYEE ☐ OTHER ______ ☐ NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| | ☐ | ☐ | | ☐ | ☐ |
| | ☐ | ☐ | | ☐ | ☐ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

| INVESTIGATOR'S SIGNATURE | DATE |
|---|---|
| ▶ | |

| ☐ COPY OF CDC 115-A GIVEN INMATE | BY: (STAFF'S SIGNATURE) ▶ | TIME | DATE |
|---|---|---|---|

Copy, COPY OF RVR AND CDC-804 S

Exhibit "V"

OF CALIFORNIA — DEPARTMENT OF CORRECTIONS

# ...ES VIOLATION REPORT

FC 6/11/04

| ...MBER | INMATE'S NAME | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| K-05874 | BASILIO | | CEN IV | C4-249 | FC-04-04-110 |

| ...ED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| CCR §3016(c) | POSSESSION OF A CONTROLLED SUBSTANCE WITH THE INTENT TO DISTRIBUTE | FAC 'C' | 4-21-04 | 1111 HOURS |

...MSTANCES On Wednesday, April 21, 2004, at approximately 1111 hours, Facility C received lab results from the ...artment of Justice Bureau of Forensic Services indicating evidence items CR-01 and CR-02 submitted had tested ...sitive for the presence of marijuana.

CR-01: positive for marijuana, 1.63 grams total net (note: 5 of 40 were weighed and analyzed).
CR-02: positive for marijuana, 0.05 grams total net.

. Thursday April 1, 2004, at approximately 1245 hours, Security Squad Officer R. VELA and I conducted a search of ...ilding C4 cell 249, assigned to inmates CHENG, W., P-19824 Lower and BASILIO, N., K-05874 Upper. Upon opening the ...ll door, BASILIO appeared to be hesitant when ordered to step out of the cell for a cell search. BASILIO complied ...ter the second order and was escorted to the upper C Section shower stall for an unclothed body search by R. VELA.

(Continued on CDC-115 Part C)

| ...ORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| C. ROMERO, Correctional Officer | 4-23-04 | Security Squad #6 | S/S/M |

| ...IEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING |
|---|---|---|
| R. GIBSON, Sergeant | 4/23/04 | DATE ... LOC. ... |

| ...SSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ADMINISTRATIVE / SERIOUS | | | D. DEXTER, Facility "C" Captain | ☐ HO ☒ SHO ☐ SC ☐ FC |

COPIES GIVEN INMATE BEFORE HEARING

| CDC 115 | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT |
|---|---|---|---|---|
| | | | | DOJ LAB RESULTS |

| INCIDENT REPORT LOG NUMBER: | BY: (STAFF'S SIGNATURE) | DATE | TIME | BY: (STAFF'S SIGNATURE) | DATE | TIME |
|---|---|---|---|---|---|---|
| | | 5/2/04 | | | | 1018 |

...RING D.A. REFERRAL STATUS REPORT

...is hearing convened on 5/24/04, at 1049 hours, I introduced myself to Inmate BASILIO as the Senior Hearing Officer ...t. B.E. DAUBENSPECK. This Inmate is not a participant in the Mental Health Services Delivery System at the ...CMS/EOP/MHCB level of care, Inmate was not assigned a Staff Assistant. Inmate BASILIO stated that his health was ...ood, hearing/vision is not impaired. Inmate BASILIO acknowledged receipt of this CDC-115 RVR, and the following ...ssociated documents: CDC-115A, CDC-115 Part C, Investigative Employee's Report, 837 Crime Incident Report, Department ...f Justice Analysis Report (Lab Results) and D.A. Referral Status Report, more than twenty four (24) hours prior to ...e start of this hearing. These reports as well as the disciplinary charge of POSSESSION OF A CONTROLLED SUBSTANCE ...ITH THE INTENT TO DISTRIBUTE were reviewed with Inmate BASILIO at this hearing. Inmate BASILIO stated that he ...derstood all documentation and was prepared to begin.

...ISTRICT ATTORNEY: This matter was referred for felony prosecution. On 5/03/04, inmate BASILIO requested this hearing ...e postponed pending outcome of the referral. On 5/12/04, the D.A. rejected this case due to not meeting criteria for ...elony prosecution.

...E PROCESS: This disciplinary was served on Inmate BASILIO within 15 days of discovery and the hearing was held withi... ...days of service. Time constraints have been met. There are no due process issues.

| ...ION BY: (TYPED NAME) | SIGNATURE | DATE | TIME |
|---|---|---|---|
| ...t. B.E. DAUBENSPECK, Senior Hearing Officer | (Continued on CDC-115 part C) | | |

| ...IEWED BY: (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE |
|---|---|---|---|
| M. STOKES, Facility 'C' Captain (A) | 6-4-04 | J.F. SALAZAR, Chief Disciplinary Officer | |

| COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) | DATE | TIME |
|---|---|---|---|
| | | 4/13/04 | 19? |

...115 (7/88)

[ST]ATE OF CALIFORNIA | DEPARTMENT OF CORRECTIONS

# [RU]LES VIOLATION REPORT - PART C

| [CD]C NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-05874 | BASILIO | FC-04-04-110 | CENTINELA | 5/24/04 |

[ ] SUPPLEMENTAL [ ] CONTINUATION OF: [ ] 115 CIRCUMSTANCES [X] HEARING [ ] IE REPORT [ ] OTHER

[ST]AFF ASSISTANT: Was not assigned. Inmate BASILIO is not illiterate, claims GPL Score 11th grade, can read and write, English speaking, the issues are not complex, is not a participant in the Mental Health Services Delivery System [an]d did not require a confidential relationship in preparing his defense.

[IN]VESTIGATIVE EMPLOYEE: Was assigned, the issues are not complex, the inmate's housing status did preclude his gathering [ev]idence, additional information was not necessary for a fair hearing. Inmate BASILIO received a copy of the I.E. Report [an]d had no objections to the report.

[PLE]A: Inmate BASILIO plead NOT GUILTY, and gave the following testimony as his defense: "I did not know nothing about [th]e 40 bindles in the locker. Cheng and I have been cellies for over one (1) year. C/O Vela and Romero were waiting [ou]tside the laundry and searched all workers. After the laundry search, the C/O's searched our cell. Romero and Vela [on]ly searched our cell, not any other cell."

[WI]TNESSES: Inmate BASILIO requested inmate CHENG, P-19824, and Squad Officer C. Romero at the hearing. Granted by SHO; [In]mate CHENG present at hearing; C/O Romero questioned over speaker telephone:
[Th]e following statements were made by Inmate CHENG called by inmate BASILIO:
[Q]: Was your I.E. Report ok?
[A]: Don't know how to read.
[Q]: Did I have anything to do with all of this?
[A]: No.
[Th]e following statements were made by C/O Romero called by inmate BASILIO:
Q: Did you search the laundry room and workers prior to searching our cell?
A: Not the laundry room, laundry workers as they went to work.
Q: Why did you not write it in the report?
A: The report is based on what was found in the cell.
Q: Why did you just search only our cell?
A: Because CHENG appeared out of the building as we searched him.
Q: Why search?
A: Just a random search of the laundry workers.

[FI]NDINGS: Inmate BASILIO was found GUILTY of violating CCR Section 3016(c), a Division B offense; the specific charge [of] POSSESSION OF A CONTROLLED SUBSTANCE WITH THE INTENT TO DISTRIBUTE. The preponderance of evidence submitted and [co]nsidered in reaching a finding substantiates the charge and supports the factors in aggravation. The finding is [ba]sed upon the following:

[Th]e RVR by: C/O C. Romero, stating: On Wednesday, April 21, 2004, at approximately 1111 hours, Facility C received [la]b results from the Department of Justice Bureau of Forensic Services indicating evidence items CR-01 and CR-02 [su]bmitted had tested positive for the presence of marijuana.

CR-01: positive for marijuana, 1.63 grams total net (note: 5 of 40 were weighed and analyzed).
CR-02: positive for marijuana, 0.05 grams total net.
(continued on CDC-115 Part C)

B.E. DAUBENSPECK, Senior Hearing Officer

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| [signature] | 6-2-04 |

| [X] COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| | [signature] | 6/13/04 | 1930 |

STATE OF CALIFORNIA | DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-05874 | BASILIO | FC-04-04-110 | CENTINELA | 5/24/04 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒ HEARING ☐ IE REPORT ☐ OTHER ___

(continued from CDC-115 Part C)

On Thursday April 1, 2004, at approximately 1245 hours, Security Squad Officer R. VELA and I conducted a search building C4 cell 249, assigned to inmates CHENG, W., P-19824 Lower and BASILIO, N., K-05874 Upper. Upon opening cell door, BASILIO appeared to be hesitant when ordered to step out of the cell for a cell search. BASILIO compl after the second order and was escorted to the upper C Section shower stall for an unclothed body search by R. VELA.

I assisted R. VELA by providing coverage and searching the clothing of BASILIO. While searching through BASILI shorts, I removed one orange lighter and one partially smoked cigarett (evidence item CR-02) inside the right poc of his shorts. I was immediately alerted to a distinct odor consistent to marijuana. Upon closer inspection of cigarette, it contained a green leafy substance not consistent to tobacco. I informed BASILIO, he needed to prov a urine specimen which would be collected by R. VELA.

At approximately 1320, while searching through the left side of the lower shelf locker, I was inspecting the clot (i.e., boxers, socks). While unfolding one pair of boxers shorts, I discovered one bindle of clear cellop containing forty individual bindles of a green leafy substance wrapped tightly in clear cellophane (evidence CR-01).

While Searching the upper shelf locker containing the property of BASILIO, I discovered and collected a piece of p with the name MARILYN DEMINNO (BASILIO), 1478 HEMLOCK AVE., IMPERIAL BEACH, CA. 91932. This is suspected to money drop where payments are made from the sales of narcotics in the Facility.

At approximately 1415 hours, I photographed the forty bindles including the locker area, using one roll of 12 expo 35 mm film.

At approximately 1515 hours, I conducted a field test on the partially smoked cigarrette (CR-02) and one of the bindles (CR-01) using the Valtox Drug Testing Kit. Both evidence items tested presumptive positive for marijuana.

I maintained possession of CR-01, CR-02, the note with the address and 1 roll of film until placing them in sub evi locker #4, located in Central Control.

**The CDC-837 Crime/Incident Report Log# CEN-FC4-04-04-0114,** by Lt. J. Denault, which states in part: On Wednesday, 21, 2004, at approximately 1111 hours, the Investigative Services Unit received written notification from the Depar Of Justice Bureau of Forensic Services that the suspected controlled substance discovered on 4/01/04 in cell C occupied by inmates BASILIO, K-05874 & CHENG, P-19824, tested positive for Marijuana. The circumstances are as fol On Thursday April 01, 2004, at approximately 1245 hours, Correctional Officers C. Romero, assigned as ISU #6, a Vela assigned as ISU #1, approached cell C4-249 occupied by inmates BASILIO, & CHENG. When the Officers arriv the cell door inmate BASILIO, was standing facing the shelves and appeared to be hesitant when ordered to exi cell. Inmate BASILIO was escorted to the C section shower stall for an unclothed body search. During the esco the shower Officer Vela, asked inmate BASILIO where is your property located and BASILIO responded "in the locker." As inmate BASILIO removed his clothes C/O ROMERO searched them. Inside the shorts BASILIO was wearing ROMERO found an orange lighter and one partially smoked cigarette (evidence item CR-02). Upon closer inspecti the partially smoked cigarete ROMERO noticed it contained a green leafy substance not consistent with tobacco approximately 1320 hours, while searching through the left side of the lower shelf locker, C/O Romero discover bindle of clear cellophane containing forty individual bindles of a green leafy substance wrapped tightly in a

(continued on CDC-115 Part C)

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| B.E. DAUENSPECK, Senior Hearing Officer | |

| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| | [signature] | 6/17/04 | 1730 |

CALIFORNIA

# RULES VIOLATION REPORT - PART C

DEPARTMENT OF CORRECTIONS

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-05874 | BASILIO | FC-04-04-110 | CENTINELA | 5/24/04 |

[ ] SUPPLEMENTAL [X] CONTINUATION OF: [ ] 115 CIRCUMSTANCES [X] HEARING [ ] IE REPORT [ ] OTHER ___

(continued from CDC-115 Part C)

...ear cellophane. Additionally, during the search of the cell, Romero found an address belonging to MARILYN DELFINO (BASILIO), 1478 HEMLOCK AVE., IMPERIAL BEACH, CA 91932. The address was found on upper shelf with the other personal property belonging to inmate BASILIO. The address is believed to be a money drop where payments are made from sales of narcotics in the facility.

The **Supplement Report to the CDC-837 Crime/Incident Report** by C/O C. Romero, which states in part, "Upon opening the cell door, BASILIO appeared to be hesitant when ordered to step out of the cell. BASILIO complied and was escorted to the upper C section shower stall for an unclothed body search by R. Vela. I assisted R. Vela by providing coverage and searching the clothing of BASILIO. While searching through BASILIO's shorts, I removed one orange lighter and one partially smoked cigarette (evidence item CR-04) inside the right pocket of his shorts. I was immediately alerted to a distinct odor consistent to marijuana. Upon closer inspection of the cigarette, it contained a green leafy substance not consistent to tobacco. I informed BASILIO he needed to provide a urine specimen which would be collected by R. Vela."

The **Supplement Report to the CDC-837 Crime/Incident Report** by C/O R. Vela, which states in part, "Prior to searching the cell, ROMERO and I escorted BASILIO to C section upper shower. As I escorted BASILIO, I asked him where his property was located. He stated his property was in the upper locker. I conducted an unclothed body search on BASILIO, as Officer Romero searched his clothing. Romero discovered a partially smoked hand rolled cigarette which contained a green leafy substance inside the right pocket of BASILIO's gray shorts. During the search of the cell, I observed Romero discover a bindle of clear cellophane in a folded pair of boxers which was located in the lower shelf locker area. After Romero opened the bindle, she discovered that it contained forty individual bindles of a green leafy substance wrapped tightly in clear cellophane."

The **Department of Justice Analysis Report** which indicates that the controlled substance submitted into evidence on .../01/04 in regard to Inmate BASILIO; items CR-01 and CR-02 tested positive positive for the presence of MARIJUANA.

Inmate BASILIO's denial of guilt or statements made at the hearing including: "I didn't know about the forty bindles in the locker."

**DISPOSITION:** C-File was reviewed, prior related drug cases: FC-04-04-008, 04-01-04, Refusal to Provide U.A. Sample; 00-366, 7/20/00, Possession of Controlled Substance (THC), positive lab results, reduced to Under the Influence of Alcohol.

Assessed 150 days forfeiture of behavioral credits consistent with a Division "B" offense (should have been classified as an "A" Offense) (refer to CCR S3323).

Assessed as a Second Offense: Inmate BASILIO must provide a minimum of two random drug test per month for one year effective 5/24/04 through 5/23/05.

Inmate BASILIO assessed Loss of Visits for one (1) year effective from 5/24/04 through 5/23/05; followed by Non-Contact Visits for two (2) years effective 5/24/05 through 5/23/07.

(continued on CDC-115 Part C)

R.E. DAUBENSPECK, Senior Hearing Officer

| SIGNATURE OF WRITER | | | DATE SIGNED |
|---|---|---|---|
| [X] COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED 6/13/04 | TIME SIGNED 1930 |

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS

RULES VIOLATION REPORT - PART C

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-05874 | BASILIO | FO-04-04-110 | CENTINELA | 5/24/04 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒ HEARING ☐ IE REPORT ☐ OTHER

(continued on CDC-115 Part C)

Referred to ICC for program review.

Inmate BASILIO was informed that the disposition of this Rules Violation Report would not become final until revie and approved by the Chief Disciplinary Officer. Inmate BASILIO was informed that he would receive a final copy u approval of the Chief Disciplinary Officer. Inmate BASILIO was advised of his right to appeal the findings of t hearing and that the first level of appeal has been eliminated on disciplinary issues. Inmate BASILIO was infor that Division A, B, and C credit losses are not restorable.

Lt. B.E. DAUBENSPECK, Senior Hearing Officer

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| [signature] | | |

| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| | [signature] | 6/13/04 | 1930 |

STATE OF CALIFORNIA

# SERIOUS RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| K-05874 | BASILIO | CCR §3016(c) | 4-21-04 | CENTINELA | FC-04-04-110 |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT [X] YES [ ] NO

## POSTPONEMENT OF DISCIPLINARY HEARING

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| [ ] I DO NOT REQUEST my hearing be postponed pending outcome of referral for prosecution. | ▶ | |
| [X] I REQUEST my hearing be postponed pending outcome of referral for prosecution. | ▶ Basilio | 5/3/04 |

DATE NOTICE OF OUTCOME RECEIVED: 5-12-04

DISPOSITION: [illegible]

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| [ ] I REVOKE my request for postponement. | ▶ | |

## STAFF ASSISTANT

STAFF ASSISTANT [ ] REQUESTED [ ] WAIVED BY INMATE

INMATE'S SIGNATURE ▶ DATE

[ ] ASSIGNED DATE NAME OF STAFF

[ ] NOT ASSIGNED REASON DOES / DOES NOT MEET CRITERIA PER CCRS 3315(d)(2)

## INVESTIGATIVE EMPLOYEE

INVESTIGATIVE EMPLOYEE [ ] REQUESTED [ ] WAIVED BY INMATE

INMATE'S SIGNATURE ▶ DATE

[X] ASSIGNED DATE 5/14/04 NAME OF STAFF A. FLORES

[ ] NOT ASSIGNED REASON DOES / DOES NOT MEET CRITERIA PER CCRS 3315(d)(1)

EVIDENCE/INFORMATION REQUESTED BY INMATE:

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)

[ ] REPORTING EMPLOYEE [ ] STAFF ASSISTANT [ ] INVESTIGATIVE EMPLOYEE [ ] OTHER ________ [X] NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| | [ ] | [ ] | | [ ] | [ ] |
| | [ ] | [ ] | | [ ] | [ ] |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

On 5/14/04, I C/O A. FLORES explained to Inmate BASILIO, K-05874, C5-152U, my function was to gather information, question staff, inmate(s), screen witness(es), and/or complete and submit a written report to the Senior Hearing Officer. Inmate BASILIO stated that he understood my position as the Investigative Employee and had no objections to my assignment.

INMATE BASILIO's STATEMENT: I wasn't hesitant that day, I just couldn't hear them. Also the address that was on the paper is my sister's, you can ask my counselor martinez. I wrote it down on the paper for him, so he can put

REPORTING EMPLOYEE's STATEMENT: On 4/21/04, at approximately 1111 hours, Facility C received lab results from the Department of Justice Bureau of Forensic Services indicating evidence items CR-01 and CR-02 submitted had tested positive for the presence of Marijuana.( CR-01: Positive for Marijuana, 1.63 grams total net NOTE: 5 of 40 were weighed and analyzed) CR-02: positive for Marijuana, 0.05 grams total net. On 4/1/04 at approximately 1245 hours, Security Squad Officer R. Vela and I conducted a search of building C4-249, assigned to inmates CHENG,W, P-19324 lower and BASILIO's, N, K-05874 upper. upon opening the cell door, BASILIO appeared to be hesitant when ordered to step out of the cell for a search. BASILIO complied after the second order and was escorted to the upper C-Sec shower stall for an unclothed body search by R. Vela. I assisted R Vela by providing coverage and searching the clothing of

Copy Given to Inmate on 5/22/04 by A FLORES [signature]

INVESTIGATOR'S SIGNATURE ▶ [signature] DATE 5/21/04

[X] COPY OF CDC 115-A GIVEN INMATE BY: (STAFF'S SIGNATURE) ▶ [signature] TIME 1014 DATE 5-3-04

CDC 115-A (7/88)

*— If additional space is required use supplemental pages —*

OSP 91

STATE OF CALIFORNIA | DEPARTMENT OF CORRECTIONS

RULES VIOLATION REPORT - PART C

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-05374 | BASILIO | FC-04-04-110 | CENTINELA | 5/14/04 |

[ ] SUPPLEMENTAL [X] CONTINUATION OF: [ ] 115 CIRCUMSTANCES [ ] HEARING [ ] IE REPORT [ ] OTHER

(Continued from CDC-115 Part A)

BASILIO. While searching through BASILIO's shorts, I removed one orange lighter and one partially smoked cigarette (evidence item CR-02) inside the right pocket of his shorts. I was immediately alerted to a distinct odor consistent to Marijuana. Upon closer inspection of the cigarette, it contained a green leafy substance not consistent to tobacco. I informed BASILIO, he needs to provide a urine specimen which would be collected by R. Vela. At approximately 1320, while searching through the left side of the lower shelf locker, I was inspecting the clothing (i.e. boxers, socks). While unfolding one pair of boxer shorts, I discovered one bindle of clear cellophane containing forty individual bindles of a green leafy substance wrapped tightly in clear cellophane. (evidence item CR-01). While Searching the upper shelf locker containing the property of BASILIO, I discovered and collected a piece of paper with the name MARILYN DEL[illegible] (BASILIO), 1473 HEMLOCK AVE, IMPERIAL BEACH, CA. 91932. This is suspected to be a money drop where payments are made from the sales of narcotics in the Facility. At approximately 1415 hours, I photographed the forty bindles including the locker area, using one roll of 12 exposure, 35mm film. At approximately 1515 hours, I conducted a field test on the partially smoked cigarette( CR-02) and one of the forty bindles (CR-01) using the Valtox Drug Testing kit. Both evidence items tested presumptive positive for Marijuana. I maintained possession of (CR-01 & CR02), the note with the address and 1 roll of film until placing them in sub evidence locker #4, located in Central Control.

STAFF WITNESS STATEMENT: R. Vela: Q1: Did you and Romero have intentions to search CHENG'S cell? A1: We did search the cell housing inmates BASILIO & CHENG. Q2: When you arrived to CHENG'S cell you stated that BASILIO was hesitant, could it have been that BASILIO didn't hear you because his radio was playing very loud? A2: No. after he understood what we told him, he was hesitant. C/O Romero: (squad) I found a partially smoked cigarette containing a green leafy substance in BASILIO's pocket. It later tested positive, for (THC). CCI Martinez, Q1: Did you request Inmate BASILIO to your office to sign parole papers? A1: On or about 3/22/04 BASILIO was contacted regarding parole plans. Q2: Did BASILIO go back to his cell and return with an address written on a piece of paper? A2: Don't recall. Q3: What was the address for his parole location? A3: 1473 Hemlock Ave. Imperial Beach CA. Q4: can you locate the address on BASILIO's parole paper work? A4: That information should be in his C-File.

INMATE WITNESS STATEMENT: JESSIE, LOVE. # K-02005. On 4/1/04 was BASILIO's radio playing loud just before Vela and Romero searched BASILIO's cell that day? A1: Yes.

INVESTIGATIVE EMPLOYEE'S STATEMENT: BASILIO asked question OF C/O Romero & Vela about other cell searches and other people searched. C/O Romero & Vela only answered questions pertaining to the search of CHENG & BASILIO and their cell.

STAFF WITNESSES REQUESTED AT HEARING: NONE

INMATE WITNESSES REQUESTED AT HEARING: NONE

| | | |
|---|---|---|
| REPORTING EMPLOYEE REQUESTED AT HEARING: | YES [ ] | NO [X] |
| INVESTIGATIVE EMPLOYEE REQUESTED AT HEARING: | YES [ ] | NO [X] |
| ADDITIONAL INFORMATION CONTAINED IN CONFIDENTIAL REPORTS: | YES [ ] | NO [X] |

A. FLORES, Correctional Officer

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| [signature] | 5/21/04 |

| [X] COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| | [signature] | 5/22/04 | 1100 |

CDC 115-C (5/95)

OSP 99 250

0000059

COPY OF RVR AND CDC-804 ... EXHIBIT "U"

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT

| NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| P-19824 | CHENG | LIFE | CEN IV | C4-249 | FC-04-04-109 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| CCR §3016(c) | POSSESSION OF A CONTROLLED SUBSTANCE WITH THE INTENT TO DISTRIBUTE | FAC 'C' | 4-21-04 | 1111 HOURS |

CIRCUMSTANCES On Wednesday, April 21, 2004, at approximately 1111 hours, Facility C received lab results from the Department of Justice Bureau of Forensic Services indicating evidence items CR-01 and CR-02 submitted had tested positive for the presence of marijuana.

CR-01: positive for marijuana, 1.63 grams total net (note: 5 of 40 were weighed and analyzed).
CR-02: positive for marijuana, 0.05 grams total net.

On Thursday April 1, 2004, at approximately 1245 hours, Security Squad Officer R. VELA and I conducted a search of Building C4 cell 249, assigned to inmates CHENG, W., P-19824 Lower and BASILIO, N., K-05874 Upper. Upon opening the cell door, BASILIO appeared to be hesitant when ordered to step out of the cell for a cell search. BASILIO complied after the second order and was escorted to the upper C Section shower stall for an unclothed body search by R. VELA.

(Continued on CDC-115 Part C)

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| C. ROMERO, Correctional Officer | 4/23/04 | Security Squad #6 | S/S/H |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING |
|---|---|---|
| R. GIBSON, Sergeant (A) | 4/2_/04 | DATE 4-21-04 LOC. C6-132 |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ADMINISTRATIVE / SERIOUS ✓ | B | 4/ | D. DEXTER, Facility "C" Captain | ☐ HO ☒ SHO ☐ SC ☐ FC |

COPIES GIVEN INMATE BEFORE HEARING

| | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT | | |
|---|---|---|---|---|---|---|
| CDC 115 | | 4/2_ | 1900 | DOJ LAB RESULTS | | |
| INCIDENT REPORT LOG NUMBER: | BY: (STAFF'S SIGNATURE) | DATE | TIME | BY: (STAFF'S SIGNATURE) | DATE | TIME |
| | | 5-3-04 | 1017 | | 5-3-04 | 1017 |

HEARING D.A. REFERRAL STATUS REPORT

This hearing convened on 5/24/04, at 1100 hours, I introduced myself to Inmate CHENG as the Senior Hearing Officer Lt. B.E. DAUBENSPECK. This Inmate is not a participant in the Mental Health Services Delivery System at the CCCMS/EOP/MHCB level of care, Inmate was not assigned a Staff Assistant. Inmate CHENG stated that his health was good, hearing/vision is not impaired. Inmate CHENG acknowledged receipt of this CDC-115 RVR, and the following associated documents: CDC-115A, CDC-115 Part C, Investigative Employee's Report, 837 Crime Incident Report, Department of Justice Analysis Report (Lab Results) and D.A. Referral Status Report, and waived his twenty-four (24) hour preparatory time period, see the attached CDC-115C, signed by inmate CHENG. These reports as well as the disciplinary charge of POSSESSION OF A CONTROLLED SUBSTANCE WITH THE INTENT TO DISTRIBUTE were reviewed with Inmate CHENG at this hearing. Inmate CHENG stated that he understood all documentation and was prepared to begin.

DISTRICT ATTORNEY: This matter was referred for felony prosecution. On 5/03/04, inmate CHENG requested this hearing be postponed pending outcome of the referral. On 5/12/04, the D.A. rejected this case due to not meeting criteria for felony prosecution.

REFERRED TO ☐ CLASSIFICATION ☐ BPT/NAEA

(Continued on CDC-115 part C)

| ACTION BY: (TYPED NAME) | SIGNATURE | DATE | TIME |
|---|---|---|---|
| Lt. B.E. DAUBENSPECK, Senior Hearing Officer | | | |

| REVIEWED BY: (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE |
|---|---|---|---|
| M. STOKES, Facility 'C' Captain (A) | 6-4-04 | J.W. SALAZAR, Chief Disciplinary Officer | |

| ☒ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) | DATE | TIME |
|---|---|---|---|
| | | 6/9/04 | 1931 |

CDC 115 (7/88)

00000060

TE OF CALIFORNIA

.ES VIOLATION REPORT - PART C

DEPARTMENT OF CORRECTIONS

| NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| P-19824 | CHENG | FC-04-04-109 | CENTINELA | 5/24/04 |

SUPPLEMENTAL [X] CONTINUATION OF: [ ] 115 CIRCUMSTANCES [X] HEARING [ ] IE REPORT [ ] OTHER ___

PROCESS: This disciplinary was served on Inmate CHENG within 15 days of discovery and the hearing was held within ays of service. Time constraints have been met. There are no due process issues.

F ASSISTANT: Was assigned: C/O I. Marquez. Inmate CHENG is not illiterate, claims no school in the U.S., schooled hina, cannot read and write, is English speaking, the issues are not complex, is not a participant in the Mental .th Services Delivery System and did not require a confidential relationship in preparing his defense.

STIGATIVE EMPLOYEE: Was assigned, the issues are not complex, the inmate's housing status did preclude his gathering ence, additional information was not necessary for a fair hearing. Inmate CHENG received a copy of the I.E. Report had no objections to the report.

: Inmate CHENG plead NOT GUILTY, and gave the following testimony as his defense: "I was set up. I was working. s not at my cell when searched. We've been cellies for over one year.

ESSES: Inmate CHENG requested the presence of his Laundry Work Supervisor as a witness; however, denied by SHO s not a witness to the search.

INGS: Inmate CHENG was found GUILTY of violating CCR Section 3016(c), a Division "A-2" offense; **This RVR should been classified as an "A-2" offense, not a "B"** the specific charge of POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DISTRIBUTE. The preponderance of evidence submitted and considered in reaching a finding substantiates charge and supports the factors in aggravation. The finding is based upon the following:

RVR by: C/O C. Romero, stating: On Wednesday, April 21, 2004, at approximately 1111 hours, Facility C received results from the Department of Justice Bureau of Forensic Services indicating evidence items CR-01 and CR-02 itted had tested positive for the presence of marijuana.

13.09 grams

CR-01: positive for marijuana, 1.63 grams total net (note: 5 of 40 were weighed and analyzed).
CR-02: positive for marijuana, 0.05 grams total net.

5 2 / 1.63 / x 8 / 13.04 / .5 / 13.09

ursday April 1, 2004, at approximately 1245 hours, Security Squad Officer R. VELA and I conducted a search of ing C4 cell 249, assigned to inmates CHENG, W., P-19824 Lower and BASILIO, N., K-05874 Upper. Upon opening the door, BASILIO appeared to be hesitant when ordered to step out of the cell for a cell search. BASILIO complied the second order and was escorted to the upper C Section shower stall for an unclothed body search by R. VELA.

isted R. VELA by providing coverage and searching the clothing of BASILIO. While searching through BASILIO's s, I removed one orange lighter and one partially smoked cigarett (evidence item CR-02) inside the right pocket s shorts. I was immediately alerted to a distinct odor consistent to marijuana. Upon closer inspection of the ette, it contained a green leafy substance not consistent to tobacco. I informed BASILIO, he needed to provide ne specimen which would be collected by R. VELA.

C-135

B.E. DAVENSPECK, Senior Hearing Officer

inued on CDC-115 Part C, Page 2)

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| | |

| [X] COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| | | 6/9/04 | 1930 |

TE OF CALIFORNIA

LES VIOLATION REPORT - PART C

DEPARTMENT OF CORRECTIONS

PAGE 3 OF ___

| NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| P-19824 | CHENG | FC-04-04-109 | CENTINELA | 5/24/04 |

[ ] SUPPLEMENTAL [X] CONTINUATION OF: [ ] 115 CIRCUMSTANCES [X] HEARING [ ] IE REPORT [ ] OTHER ______

(continued from CDC-115 Part C, Page 1)

approximately 1320, while searching through the left side of the lower shelf locker, I was inspecting the clothing e., boxers, socks). While unfolding one pair of boxers shorts, I discovered one bindle of clear cellophane taining forty individual bindles of a green leafy substance wrapped tightly in clear cellophane (evidence item -01).

le Searching the upper shelf locker containing the property of BASILIO, I discovered and collected a piece of paper h the name MARILYN DELMENDO (BASILIO), 1478 HEMLOCK AVE., IMPERIAL BEACH, CA. 91932. This is suspected to be a ey drop where payments are made from the sales of narcotics in the Facility.

approximately 1415 hours, I photographed the forty bindles including the locker area, using one roll of 12 exposure, mm film.

approximately 1515 hours, I conducted a field test on the partially smoked cigarrette (CR-02) and one of the forty ndles (CR-01) using the Valtox Drug Testing Kit. Both evidence items tested presumptive positive for marijuana.

maintained possession of CR-01, CR-02, the note with the address and 1 roll of film until placing them in sub evidence cker #4, located in Central Control.

e **CDC-837 Crime/Incident Report Log# CEN-FCA-04-04-0114**, by Lt. J. Denault, which states in part: On Wednesday, April , 2004, at approximately 1111 hours, the Investigative Services Unit received written notification from the Department Justice Bureau of Forensic Services that the suspected controlled substance discovered on 4/01/04 in cell C4-249 cupied by inmates BASILIO, K-05874 & CHENG, P-19824, tested positive for Marijuana. The circumstances are as follows: Thursday April 01, 2004, at approximately 1245 hours, Correctional Officers C. Romero, assigned as ISU #6, and R. la assigned as ISU #1, approached cell C4-249 occupied by inmates BASILIO, K-05874 & CHENG, P-19824. When the Officers rived at the cell door inmate BASILIO, was standing facing the shelves and appeared to be hesitant when ordered exit the cell. Inmate BASILIO was escorted to the C section shower stall for an unclothed body search. During the cort to the shower Officer Vela, asked inmate BASILIO where is your property located and BASILIO responded "in the per locker." As inmate BASILIO removed his clothes C/O ROMERO searched them. Inside the shorts BASILIO was wearing, O ROMERO found an orange lighter and one partially smoked cigarette (evidence item CR-02). Upon closer inspection the partially smoked cigarete ROMERO noticed it contained a green leafy substance not consistent with tobacco. approximately 1320 hours, while searching through the left side of the lower shelf locker, C/O Romero discovered e bindle of clear cellophane containing forty individual bindles of a green leafy substance wrapped tightly in a ear cellophane. Additionally, during the search of the cell, Romero found an address belonging to MARILYN DELMENDO ASILIO), 1478 HEMLOCK AVE., IMPERIAL BEACH, CA 91932. The address was found on upper shelf with the other personal operty belonging to inmate BASILIO. The addredss is believed to be a money drop where payments are made from sales narcotics in the facility.

**pplemental Report by** C/O R. Vela which states: On Thursday, April 1, 2004, at approximately 1245 hours, Squad Officer , C. Romero and I conducted a search of cell C4-249 assigned to inmates CHENG, W., P-19824, C4-249 lower and BASILIO, -05874, C4-249, upper. Upon arriving at cell 249 and opening the door, I observed inmate BASILIO standing facing the elves. BASILIO was hesitant to exit the cell after I had given him a direct order to do so. After the second order, exited his cell. Prior to searching the cell, Romero and I escorted BASILIO to C section upper shower. As I escorted

B.E. DAHRENSPECK, Senior Hearing Office

Continued on CDC-115 Part C, Page 3)

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| | 6-9-04 |

| [ ] COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| | | 6/9/04 | 1930 |

| NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| P-19824 | CHENG | FC-04-04-109 | CENTINELA | 5/24/04 |

SUPPLEMENTAL [X] CONTINUATION OF: [ ] 115 CIRCUMSTANCES [X] HEARING [ ] IE REPORT [ ] OTHER

(Continued from CDC-115 Part C, Page 2)

LIO, I asked him where is his property located. He stated his property was in the upper locker. I conducted an othed body search on BASILIO as Officer Romero searched his clothing. Romero discovered a partially smoked hand led cigarette which contained a green leafy substance inside the right pocket of BASILIO's gray shorts. During the rch of the cell, I observed Romero discover one bindle of clear cellophane in a folded pair of boxers which was ated in the lower left locker area. I observed Romero open the bindle and discover that it contained forty individual dles of a green leafy substance wrapped tightly in clear cellophane.

Department of Justice Analysis Report which indicates that the controlled substance submitted into evidence on 1/04 in regard to Inmate CHENG, P-19824; items CR-01 and CR-02 tested positive positive for the presence of IJUANA.

ate CHENG's denial of guilt or statements made at the hearing including: "I was set up."

POSITION: C-File was reviewed; no prior drug related RVR's.

) NOTES: This RVR should have been classified as an "A-2" Offense; the specific charge of POSSESSION OF A CONTROLLED STANCE WITH THE INTENT TO DISTRIBUTE. Therefore, Inmate CHENG will not be assessed any Behavioral Credits.

sessed 0 days forfeiture of behavioral credits consistent with a Division "B" offense (refer to CCR §3323). Due to is RVR not being classified as an "A-2" Offense.

sessed as a First Offense: Inmate CHENG must provide a minimum of one random drug test per month for one year fective 5/24/04 through 5/23/05.

sessed Loss of Visits for one (1) year effective from 5/24/04 through 5/23/05; followed by Non-Contact Visits for o (2) years effective 5/24/05 through 5/23/07.

rst Offense: inmate CHENG shall be required to attend AA/NA meetings or assigned to a substance abuse education ogram to the extent such programs are available in the facility.

sessed 90 days Loss-of-Privileges to include: CANTEEN SPECIAL PURCHASES & QUARTERLY PACKAGES; effective from 5/24/04 rough 8/23/04.

eferred to ICC for program review.

nmate CHENG was informed that the disposition of this Rules Violation Report would not become final until reviewed nd approved by the Chief Disciplinary Officer. Inmate CHENG was informed that he would receive a final copy upon pproval of the Chief Disciplinary Officer. Inmate CHENG was advised of his right to appeal the findings of this earing and that the first level of appeal has been eliminated on disciplinary issues. Inmate CHENG was informed that ivision A, B, and C credit losses are not restorable.

B.E. DAUBENSPECK, Senior Hearing Officer

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| [signature] | 6-4-04 |

| [ ] COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| | [signature] | 6/9/04 | 1930 |

# Memorandum

Date: FEB 13 2007

To: Hunter, K83465
Centinela State Prison

Subject: SECOND LEVEL APPEAL RESPONSE
LOG NO.: CEN-C-07-00074

APPEAL DECISION: **DENIED.**

ISSUE:

The appellant is submitting this appeal relative to CDC Form 115, Rules Violation Report (RVR), Log #FC-04-04-100, dated 04/21/04, for "Possession of a Controlled Substance with the Intent to Distribute." It is the appellant's position that the RVR should be properly reduced from distribution to possession in accordance with the District Attorney's and Court's finding.

The appellant requests on appeal that the CDC 115 is reduced to "Possession".

INTERVIEWED BY: C. Martinez, Staff Services Analyst

REGULATIONS: The rules governing this issue are:

**CCR 3016. Controlled Substances, Drug Paraphernalia, and Distribution.**

(a) Inmates may not inhale, ingest, inject, or otherwise introduce into their body, possess, manufacture, or have under their control any controlled substance, controlled medication, or alcohol, except as specifically authorized by the institution's/facility's health care staff.

(b) Inmates may not possess, exchange, manufacture, or have under their control any paraphernalia as defined by Health and Safety Code section 11014.5, or device related to the use, injection, or manufacture of any controlled substance or controlled medication, except as specifically authorized by the institution's/facility's health care staff.

(c) Inmates shall not distribute, as defined in section 3000, any controlled substance or controlled medication.

**CCR 3290. Testing of Controlled Substances.**

(a) The department shall prescribe the products, equipment and methods for testing suspected controlled substances. "Field" or on-site testing shall be conducted only by trained and certified personnel.

(b) Field tests may be performed on any suspected substance found on institution property or in the possession or under the control of any inmate, or in the possession or under the control of persons other than inmates who come on institution property.

(c) The securing of a urine sample from an inmate, for the purpose of testing for the presence of controlled substances shall be done for the following reasons:

(1) When there is reasonable cause to believe the inmate has possessed, distributed, used or is under the influence of a controlled substance.

(2) When mandatory random testing is known to the inmate to be a condition for the inmate's participation in a specific program, assignment, or activity.

(3) As part of an authorized disposition of a disciplinary hearing.

(4) The inmate is selected by the institution's/facility's random drug testing selection process.

**CCR 3315. Serious Rule Violations.**

(a) Inmate misconduct reported on a CDC Form 115 shall be classified serious if:

(1) It is an offense punishable as a misdemeanor not specified as administrative in section 3314(a)(3) or is a felony, whether or not prosecution is undertaken.

(2) It involves any one or more of the following circumstances:

(B) A breach of or hazard to facility security.

(C) A serious disruption of facility operations.

(D) The introduction or possession of controlled substances or dangerous contraband.

(E) An attempt or threat to commit any act listed in (A) through (D), coupled with a present ability to carry out the threat or attempt if not prevented from doing so.

(3) Serious rule violations include but are not limited to:

(E) Manufacture of alcohol or possession of any controlled substance, unauthorized drug, intoxicant, or illegal substance.

(X) Involvement in a conspiracy or attempt to do any of the above.

(b) In addition to the disciplinary hearing, the inmate may be subject to segregation from the general population pursuant to sections 3312 and 3335 through 3345; and referral for prosecution when the misconduct is a criminal offense.

(c) Hearing. Serious rule violations shall be heard at the senior hearing officer or higher level. A senior hearing officer shall not be below the level of a facility captain, correctional captain, correctional counselor III, parole agent III, or an experienced correctional lieutenant, correctional counselor II, or parole agent II.

(d) An inmate shall be assigned an employee to assist in the investigation of matters pertaining to a disciplinary action when the chief disciplinary officer or designee determines the necessity based on the following criteria.

(1) Investigative Employee.

(A) An investigative employee, as described in section 3318(a), shall be assigned, within one working day after the serious rule violation charges have been submitted for processing when the chief disciplinary officer or designee determines that:

1. The complexity of the issues requires further investigation.

2. The housing status makes it unlikely the charged inmate can collect and present the evidence necessary for an adequate presentation of a defense.

3. A determination has been made that additional information is necessary for a fair hearing even if the inmate has waived the assignment.

(B) Staff who witnessed or who will serve as a hearing official for a rule violation shall not serve as the investigative employee for that violation.

(C) The inmate may not select the investigative employee, but may object to the one assigned, in which case, a second investigative employee shall be assigned to complete the investigation. The inmate's objection must be expressed prior to the beginning of the investigation.

(D) Assignment of an investigative employee shall not preclude the assignment of a staff assistant.

(e) Witnesses. An inmate may request that friendly and adverse witnesses attend the hearing.

(1) Requested witnesses shall be called unless the official conducting the hearing denies the request for one of the following reasons:

(A) The appearance would endanger the witness.

(B) The official determines that the witness has no relevant or additional information.

(C) The witness is unavailable.

(2) If an inmate's request for a witness is denied, the reasons shall be documented on the CDC Form 115.

(3) Whether or not the inmate requests a witness, witnesses may be called if the official conducting the hearing determines the witnesses may have information necessary to the finding of fact.

(4) The reporting employee shall attend the disciplinary hearing if requested by the inmate.

(5) Under the direction of the official conducting the disciplinary hearing, the inmate has the right to ask questions of all witnesses called.

(6) Nothing in this section shall preclude making a witness available by telephone for a disciplinary hearing.

(f) Disposition. Upon completion of the fact-finding portion of the disciplinary hearing, the inmate may be found:

(1) Not guilty and the charges dismissed.

(2) Guilty of an administrative rather than a serious rule violation. In such case, the CDC Form 115 shall be reclassified as administrative and the inmate may be assessed only a disposition authorized in section 3314.

(3) Guilty as charged or guilty of an included serious rule violation and assessed a credit forfeiture pursuant to section 3323.

(4) If the violation included an act related to the use, possession, or distribution of controlled substances, controlled medication, drugs or drug paraphernalia; or if the inmate refused to submit to a test for controlled substances or drugs, the disposition shall include an order for the inmate to submit to mandatory random drug testing for one year from the date of the order.

(A) For the first offense, the inmate must provide a minimum of one random drug test per month for one year.

(B) For the second offense, the inmate must provide a minimum of two random drug tests per month for one year.

(C) For the third offense, the inmate must provide a minimum of four random drug tests per month for one year.

(D) The inmate shall be informed that refusal to submit to a random test or any positive test result during the mandatory random drug testing period shall result in the issuance of a CDC Form 115 and a new mandatory drug testing order.

(5) The disposition may or when mandated shall include assessment of one or more of the following:

(A) Any combination of penalties authorized for administrative rule violations in section 3314(e).

(B) Suspension of privileges specified by the hearing official for no more than a 90-day period starting the date of the disciplinary hearing. The suspension of privileges for violations of subsections 3323(c)(7) and 3323(d)(6) shall be assessed as follows:

1. Thirty days for the first offense.

2. Sixty days for the second offense.

3. Ninety days for the third offense.

(C) Disciplinary detention or confinement to quarters as provided in sections 3330 and 3333 for not more than a ten-day period. If facility security will not be jeopardized, the inmate shall be released to attend work and program assignments.

1. Second offense violations of subsections 3323(c)(7) and 3323(d)(6) shall result in confinement to quarters for five days.

2. Third offense violations of subsections 3323(c)(7) and 3323(d)(6) shall result in confinement to quarters for 10 days.

(D) Referral to a classification committee for consideration of placement in Work Group C.

(E) Parole violators returned-to-custody who violate subsections 3323(c)(7) and 3323(d)(6) shall be referred to the Board of Prison Terms for consideration of extension of revocation time.

(F) Suspension of all or part of dispositions other than credit forfeitures, ordered random drug testing and classification committee referrals, for up to six months based on the inmate's compliance with the conditions specified for suspension.

(G) Imposition of all or part of an existing suspended disposition when the current rule violation is a violation of conditions specified in a suspended disposition. Imposition of a suspended disposition shall not include confinement to quarters or disciplinary detention for a period exceeding ten days except as provided in section 3322.

(H) For a violation of subsection 3323(c)(7), there shall be a loss of visits for one year to be followed by non-contact visits for two years.

(I) Loss of visits to be followed by non-contact visits for violations of subsections 3323(d)(6).

1. Loss of visits for 90 days, to be followed by non-contact visits for 90 days for the first offense.

2. Loss of visits for 90 days, to be followed by non-contact visits for 180 days for the second offense.

3. Loss of visits for 180 days, to be followed by non-contact visits for 180 days for the third offense.

(J) Violation of subsections 3323(c)(7) and 3323(d)(6) shall result in:

1. For the first offense, the inmate shall be required to attend Alcoholic Anonymous or Narcotic Anonymous meetings or assigned to a substance abuse education program to the extent such programs are available in the institution/facility.

2. For the second offense, the inmate shall be referred for endorsement to a substance abuse program, provided that program eligibility criteria is met.

3. For the third offense, the inmate shall be referred for endorsement to a substance abuse program, provided that program eligibility criteria is met, and mandatory treatment shall be a condition of parole.

(g) Classification Committee Review. Any serious disciplinary action requiring reconsideration of an inmate's program, work group, or housing assignment, shall be referred to the next reasonably scheduled classification committee for review. This review shall not occur until the chief disciplinary officer's audit of the CDC Form 115 has been concluded. The classification committee shall affirm or modify the inmate's program, work group, or housing assignment.

**CCR 3323. Disciplinary Credit Forfeiture Schedule.**

(c) Division "A-2" offenses; credit forfeiture of 151-180 days.

(7) Distribution of any controlled substance in an institution/facility or contract health facility.

On 04/01/04, at approximately 1930 hours, while performing the duties as Facility C Sergeant (Sgt), Housing Unit C4 Staff notified of assistance needed in the unit. Upon his arrival in the building, Sgt. E. Benyard observed staff at cell #128 with the door secured open. Both inmates Hunter (K83465) and Brewster (T49306) were inside. As the RE walked up to the cell, he gave verbal orders to both inmate Hunter (seated on the top bunk) and Brewster (seated on the lower bunk) to exit the cell, to allow for staff to search the cell. Both inmates subsequently complied with the RE's orders. The RE placed handcuffs on inmate Brewster and he was escorted out by the staff. The RE then handcuffs on inmate Hunter and removed out of the cell. While exiting, inmate Hunter began to drop little yellow bindles from his right pant leg. Inmate Hunter then stated, "There it is." Officer M. Quiros confiscated approximately 16 bindles of suspected contraband from the floor. As the RE performed a clothed body search on inmate Hunter, he removed an additional packet of suspected contraband wrapped in clear plastic from inmate Hunter's left pocket. The contraband contained approximately 11 bindles of suspected Marijuana. At approximately 1945 hours, Officer Quiros relinquished custody of the 16 bindles to the RE. The RE then maintained sole custody of all suspected contraband until logged and secured in evidence locker #7B in Complex Control.

On 04/21/04 at approximately 1120 hours the Centinela State Prison's Investigative Services Unit (ISU) received written notification from the Department Of Justice, Bureau of Forensic Services, that the suspected controlled substances submitted into evidence on 04/01/04, tested positive for the presence of Marijuana.

On 04/21/04 RVR Log #FC-04-04-100 was issued charging the appellant with a violation of CCR Section 3016(a), with a specific act of "Possession of a Controlled Substance with the Intent to Distribute." not Distribution;

This matter was referred to the District Attorney's office for criminal prosecution. The appellant did request the disciplinary hearing to be postponed pending outcome of the referral; however, on 05/21/04 the appellant submitted a request to revoke the postponement of his hearing. On 06/02/04, the appellant signed the CDC 115A accordingly.

Based upon the information within the CDC 115, Rules Violation Report, the CDC 837, Crime-Incident Report, and the Department Of Justice Bureau Of Forensic Services Controlled Substance Report, the reports provided a preponderance of evidence to support the charge.

A CDC 115-X, Mental Health Assessment, was not prepared based on the appellant is not a participant in the Mental Health Services Delivery System at the CCCMS/EOP/MHCB level of care.

No Staff Assistant was assigned pursuant to CCR Section 3315(d)(2)(A), however, an Investigative Employee was assigned pursuant to CCR Section 3315(d)(1)(A).

It is noted within the CDC 115 that the appellant did not request witnesses to attend the disciplinary hearing to include the Reporting Employee.

Upon review of the Hearing Section within the CDC 115, the appellant stated he understood all the documentation contained within the disciplinary package and was prepared for the hearing.

It is noted in the Plea Section of the CDC 115 that the appellant plead "Not Guilty" and stated that he did not received copies of reclassified RVR that Officer Durazo had.

On 06/04/04 the RVR was heard and the appellant was found guilty of CCR Section 3016(c), a Division "A-2" offense, the specific charge of "Possession of a Controlled Substance with the Intent to Distribute." The appellant was assessed 180 days forfeiture of behavioral credits consistent with a Division "A-2" offense. The appellant was also assessed loss of visits for one year to be followed by non-contact visits for two years. The appellant must provide a minimum of one random drug test per month for one year. The appellant was informed that Division A-1, A-2, B, or C offenses are not eligible for restoration of credit.

On 06/28/04 J. Salazar, Chief Disciplinary Officer, reviewed Rules Violation Report Log #FC-04-04-100 and affirmed the disposition.

The appellant's position that the RVR should be properly reduced from distribution to possession in accordance with the District Attorney's and Court's finding is without merit. The court elected to charge the appellant with a lesser charge of possession because their threshold for distribution is much higher; Department of Correction's threshold is only 50.001 to prove beyond a doubt.

A review of the disciplinary package indicates that the appellant's due process rights were met. The finding was appropriate.

No! I never had reclassified ever!

DECISION: The appeal is Denied.

The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.

4 V. M. ALMAGER
Warden (A)
Centinela State Prison

Rec. 5-14-07

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date: **MAY 0 9 2007**

In re: Hunter, K-83465
Kern Valley State Prison
P.O. Box 6000
Delano, CA 93216

IAB Case No.: 0610174 Local Log No.: CEN 07-74

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner R. Floto. All submitted documentation and supporting arguments of the parties have been considered.

I **APPELLANT'S ARGUMENT:** The appellant is submitting this appeal relative to CDC Form 115, Rules Violation Report (RVR), Log #FC-04-04-100, dated April 21, 2004, for "Possession of a Controlled Substance W/Intent to Distribute," a Division "A-2" offense. The appellant states that he was found guilty of "Possession of a Controlled Substance" by the court; therefore, the RVR should be modified to the lesser charge. He requests modification of the RVR to the lesser charge.

II **SECOND LEVEL'S ARGUMENT:** The reviewer found that the appellant was afforded all of his due process rights, including a fair and unbiased hearing. On April 1, 2004, the appellant was observed attempting to dispose of 16 bindles of suspected marijuana. During a subsequent clothed body search of the appellant 11 additional bindles of suspected marijuana were discovered. On April 21, 2004, the result of the laboratory test was returned to the institution. The results proved positive for marijuana. The appellant was found guilty based upon a preponderance of evidence by an impartial Senior Hearing Officer (SHO). The charge of distribution is supported in that it was a large quantity packaged for distribution. The appellant was assigned an Investigative Employee (IE) to assist him in the gathering of evidence. The IE performed the duties appropriately as assigned. The SHO utilized the IE report during the hearing to render a decision. The appellant did not meet the criteria for the assignment of a Staff Assistant as there was no need for a confidential relationship; the issues are not complex; and the appellant is not illiterate and understands English. The appellant requested that witnesses be present at the hearing. The SHO denied the witnesses as it was determined that the requested witnesses had no additional or relevant information to provide for a decision to be rendered. The court elected to charge the appellant with a lesser charge of possession because their threshold for distribution is much higher; Department of Correction's threshold is only 50.001 to prove beyond a doubt.

III **DIRECTOR'S LEVEL DECISION:** Appeal is denied.

A. **FINDINGS:** The appellant was afforded all due process rights in the adjudication of the RVR and all procedural guidelines were met. A preponderance of evidence was established by an impartial SHO to sustain the guilty finding. A court verdict of guilty or not guilty, resulting from a trial shall be accepted as the finding of fact on the same charges in a disciplinary hearing. Should the court accept a plea agreement or negotiated settlement resulting in a conviction for a lesser offense than was originally charged, or if a court dismisses a charge prior to trial, the Department shall not be precluded from taking appropriate action based on the facts contained in the original charge. If a court finds the inmate not guilty after a finding of guilty in a disciplinary hearing the rule violation charges shall be dismissed. The regulations do not mandate that the charges be modified in accordance with court charges as suggested by the appellant. Reports reflect that the appellant has presented no new or compelling evidence in the appeal, which would warrant a modification of the decision reached by the institution.

B. **BASIS FOR THE DECISION:**
California Code of Regulations, Title 15, Section: 3016, 3315, 3316, 3320, 3323

C. **ORDER:** No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:     Warden, KVSP
        Appeals Coordinator, KVSP
        Appeals Coordinator, CEN

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K24930 | DAVIS | FB-05-08-035 | CSP-LAC | 10/12/05 |

☒ SUPPLEMENTAL | ☒ CONTINUATION OF: ☐ CDC 115 CIRCUMSTANCES ☒ HEARING ☐ I.E. REPORT | ☐ OTHER: ______

**INVESTIGATIVE EMPLOYEE:** An Investigative Employee (IE) was not assigned. On 10/04/05, **DAVIS** had requested the assignment of an IE. However, on 10/07/05, **DAVIS** waived the assignment of an Investigative Employee as evidenced by his signature on the CDC-115A.

**PLEA AND STATEMENT: DAVIS** entered a plea of Guilty with **Explanation** and stated, "It was mine, but I wasn't getting it to sell it."

**WITNESSES:** The SHO advised **DAVIS** of his right to request witnesses. Neither **DAVIS** nor the SHO called witnesses at the hearing. **DAVIS** was given an opportunity to request witnesses when he received a copy of the CDC-115A and at the hearing.

**FINDING: Not Guilty of the charged division A2 offense CONSPIRACY TO INTRODUCE A CONTROLLED SUBSTANCE INTO A STATE PRISON WITH INTENT TO DISTRIBUTE. Guilty of the lesser and included Division B offense POSSESSION OF ANY CONTROLLED SUBSTANCE IN AN INSTITUTION** (CCR §3323(d)(6)). POSSESSION is the act of having or taking into control. DISTRIBUTION means the sale or unlawful dispersing, by an inmate or parolee, of any controlled substance; or the solicitation of or conspiring with others in arranging for the introduction of controlled substances into any institution, camp, contract health facility, or community correctional facility for the purpose of sales or distribution. If this controlled substance was found in possession of the charged inmate, there must be evidence this was held for something more than personal use. There must also be evidence that the charged inmate was involved in actively promoting the sales or distribution of controlled substances to other inmates within the institution. CONTROLLED SUBSTANCE means any substance, drug, narcotic, opiate, hallucinogen, depressant, or stimulant as defined by California Health and Safety Code section 11007. This finding is based upon the following evidence:

1) Guilty plea entered by **DAVIS** and his statement provided at the hearing.

2) The Reporting Employee's Report (CDC-115) authored by Officer F. Holt. Officer Holt summarized the investigation relative to Inmate DAVIS' suspected involvement in the introduction of narcotics into CSP-Centinela. On June 12, 2005 at approximately 0930 hours, the ISU executed a search warrant on April Hall and Denise Davis who had arrived to the prison to visit Inmate DAVIS and Inmate COTTON. Officer Holt indicated that the DOJ Bureau of Forensic Services generated a report regarding evidence submitted to them relative to this incident which indicated that the substance submitted for testing was marijuana with an approximate gross weight of 16 grams.

3) The Supplemental Report (CDC 837C) authored by Officer F. Holt. Officer Holt documented that an investigation into Inmate DAVIS' suspected involvement in the introduction of narcotics into CSP-Centinela (CEN) began on 06/06/05 after intercepting an outgoing call at approximately 1013 hours placed by Inmate COTTON to April Teniece Hall. The ISU utilized the Institutional Laser Phone Management System (LPMS) to monitor and record this conversation. During this conversation, Inmate HALL asks Mrs. Hall to get a hold of Inmate DAVIS' wife Denise Hall. Excerpts of the call indicate a three-way call was also made to a suspected drug dealer identified as "Opie". Inmate COTTON leaves a message asking "Opie" to call his wife (April Hall). After ending the three-way call, Inmate COTTON instructs his wife to find out whether she will have to pick up the drugs or if they will be brought to her. ISU ran the phone number called through the LPMS and discovered that between the dates of 05/02/05 and 06/06/05 a total of 29 calls were placed from Centinela State Prison to the above phone number. Excerpts of these calls document the arranging for the purchase of drugs and the plan for introducing them into CEN. On 06/12/05 at approximately 0930 hours, Mrs. Davis and Mrs. Hall arrived at CEN and were taken for interview and execution of a search warrant. An unclothed body search conducted on Mrs. Davis resulted in the recovery of a controlled substance (later determined to be marijuana). Mrs. Davis had the marijuana secreted in her vagina. Visitor Davis admitted she was bringing it in for her husband Inmate Davis (K24930).

4) The Supplemental Report (CDC 837C) authored by Sergeant N. Rodriguez. Sergeant Rodriguez documented that on Sunday, June 12, 2005 a search warrant was executed upon Visitor Denise Lynn Davis and April Teniece Hall upon their arrival at Centinela State Prison. At approximately 0947 hours, Sergeant Rodriguez, Officer Holt, and Officer Salazar proceeded to interview Denise Lynn Davis. After being advised of the search warrant and the justification for having obtained it, Visitor Davis admitted to having a controlled substance on her person. Visitor Davis stated that she had come to the prison to visit her husband, Inmate DAVIS (K24930) who was housed on Facility B. At approximately 1000 hours, Visitor Davis consented in writing to an unclothed body search. Visitor Davis surrendered an oval shaped bindle wrapped in latex material, which she

| | SIGNATURE OF WRITER | | DATE |
|---|---|---|---|
| | R. Beltran, Correctional Lieutenant (SHO) | | 10/18/05 |
| ☐ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED 10/31/05 | TIME SIGNED 0930 |

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K24930 | DAVIS | FB-05-08-035 | CSP-LAC | 10/12/05 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☐ CDC 115 CIRCUMSTANCES ☒ HEARING ☐ I.E. REPORT ☐ OTHER: ______

removed from her vagina. Officer Salazar took initial possession of the bindle and subsequently relinquished it to Officer Holt. Officer Holt conducted a Valtox test that indicated a presumptive positive result for THC (marijuana). Visitor Davis was advised of her Miranda rights and elected to make statements. Visitor Davis stated that she had brought in the marijuana for her husband, Inmate Davis, who lived on Facility 'B'. Visitor Davis stated she had already made two other trips for him to the Los Angeles area.

5) The Laboratory results from DOJ Bureau of Forensic Services. The report indicated that the substance submitted for testing relative to this incident was marijuana with a gross weight of approximately 16 grams.

6) The Supplemental Report (CDC 837C) authored by Officer Y. Salazar. Officer Salazar documented that on Sunday, June 12, 2005 at approximately 0930 hours, she assisted in the execution of a search warrant upon Mrs. Denise Davis and April Hall. When Mrs. Davis was advised of the search warrant, she admitted she had marijuana secreted in her body. After giving voluntary written consent to an unclothed body search, Mrs. Davis removed an oval shaped bindle wrapped in latex from her vagina. Mrs. Davis surrendered the bindle to Officer Salazar. A subsequent search of Mrs. Hall for contraband was inconclusive. A subsequent pelvic exam and X-ray was subsequently completed at El Centro Regional Medical Center, with negative findings for contraband.

**SHO COMMENTS:** The SHO found there was no evidence to support the charge of distribution. Although it is clear Inmate **DAVIS** was aware of the drugs being introduced and had planned to take possession of the drugs, there was nothing to indicate **DAVIS** was actively engaged in the sale or distribution of narcotics. There were no pay/owe sheets, no documentation of excessive or unaccounted for canteen or other indicators of drug trafficking.

**DISPOSITION:** In accordance with CCR 3315(f), the following penalties have been assessed:

- **No Forfeiture of Credit was assessed** due to the time constraint violation noted at the commencement of this hearing.
- **Assessed 30 days Loss of Yard Privileges** commencing the date of this hearing through 11/11/05.
- **Assessed 30 days loss of dayroom privileges** commencing the date of this hearing through 11/11/05.
- **Assessed 30 days loss of telephone privileges** commencing the date of this hearing through 11/11/05.
- ~~**Assessed 90 days Loss of Visits followed by 90 days Non-Contact Visits.**~~ Per CCR 3315(f)(5)(J)(1), all visiting privileges are suspended for a period of 90 days from this date through 01/10/06 followed by non-contact visits for a period of 90 days beginning 01/11/06 through 04/11/06. They corrected my visiting suspension I've been in the hole 5 months already.
- **Assessed One-Year Mandatory Random Drug Testing: Per CCR 3315(f)(4)(A). DAVIS** must provide a minimum of one random drug test per month for one year, from the date of this hearing through 10/12/06. **DAVIS** was advised that per CCR 3315(f)(4)(D), refusal to submit to a random test or any positive test result during the mandatory random drug testing period shall result in the issuance of a CDC Form 115 and a new mandatory drug testing order.
- **Assessed Mandatory Substance Abuse Education Attendance.** Per CCR 3315(f)(5)(K)(1), **DAVIS** shall be required to attend Alcoholics Anonymous or Narcotic Anonymous or be assigned to a substance abuse education program to the extent such program are available in the institution/facility.
- **Counseled** regarding future behavioral expectations and **reprimanded.**
- **Referred to the Institutional Classification Committee** for program/housing review.
- **Contraband disposed of** in accordance with DOM section 52051.

**APPEAL RIGHTS: DAVIS** was advised of the above findings and his right to appeal this finding per CCR 3084.1. **DAVIS** was further advised that he would receive a completed copy of this Rules Violation Report upon final audit by the Chief Disciplinary Officer.

| | SIGNATURE OF WRITER | | DATE |
|---|---|---|---|
| | R. Beltran, Correctional Lieutenant (SHO) | | 10/13/05 |
| ☑ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED 10/31/05 | TIME SIGNED 0930 |

3/26/08
crt stay

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF IMPERIAL

| In re: WESLEY HUNTER, On Habeas Corpus. | Case No. EHC 00933 **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
|---|---|

Petitioner, an inmate currently incarcerated at Northern Kern State Prison, initiated this action by a petition filed November 1, 2007. Petitioner alleges due process violations regarding a 2004 disciplinary hearing at Centinela State prison wherein he was found guilty of possession of a controlled substance with intent to distribute. Petitioner alleges that inasmuch as the criminal charges stemming from the same incident were reduced to simple possession, an administrative finding that he was guilty of possession with intent to distribute cannot stand.

Petitioner has exhausted his administrative remedies.

Judicial review of the sufficiency of the evidence at a prison disciplinary hearing is limited to the question of whether there is "some" evidence to sustain the charge. *In re Zepeda* (2006) 141 Cal. App. 4th 1493. It should also be noted that the burden of proof at a criminal trial is

beyond a reasonable doubt, whereas administrative charges must only be proved by a preponderance of the evidence. Finally, the court may not merely substitute its judgment for that of the hearing officer where there is ponderable evidence to support the charge.

In this matter, there is evidence to sustain the charge of possession with intent to distribute, inasmuch as petitioner was apprehended with 27 bindles of marijuana on his person. For the foregoing reasons, the petition is DENIED.

DATED: March 10, 2008

JEFFREY B. JONES
Judge of the Superior Court

COURT OF APPEAL - FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

FILED
Stephen M. Kelly, Clerk
MAY 05 2008
Court of Appeal Fourth District

| In re WESLEY W. HUNTER on Habeas Corpus. | D052875<br>(Imperial County Super. Ct. No. JCF18935) |
|---|---|

THE COURT:

The petition for writ of habeas corpus has been read and considered by Justices Huffman, Haller, and McIntyre.

In 2004 prison officials found 27 bindles of marijuana on petitioner Wesley Hunter's person. Sixteen bindles were hidden in the leg of his pants and 11 bindles were hidden in his shirt pocket. Prison officials subsequently charged him with violating the prison rule against possession of a controlled substance for distribution.

At an administrative hearing on the matter in 2004, Hunter argued that he was only guilty of violating the rule against possession, not the rule against possession for distribution. Nonetheless, prison officials found him guilty of the latter violation because the marijuana was packaged in a large number of bindles and the bindles were concealed on his person just before he was scheduled to go out into the yard.

In 2005 and again in 2006, Hunter filed habeas petitions challenging his prison disciplinary action on various grounds. We denied the first petition for failure to state a prima facie case for relief. (*In re Hunter* (Sept. 19, 2005, D046917).) We denied the second petition because it was successive and repetitive and because it failed to state a prima facie case for relief. (*In re Hunter* (July 17, 2006, D048638).)

Shortly after prison officials charged Hunter with the rule violation, they also referred the matter to the Imperial County District Attorney's Office for prosecution. In late 2006, after we denied Hunter's second petition, the Imperial County Grand Jury indicted Hunter for possession of illegal substances in a jail facility by a confined person.

There is no indication in the record provided by Hunter that the Imperial County Attorney's Office or the Imperial County Grand Jury ever considered any type of distribution charge against Hunter.

In early 2007 Hunter pleaded nolo contendere to the possession charge. The court sentenced him to two additional years in prison.

In this petition, Hunter is challenging the disciplinary action once again. He reiterates his prior claims. In addition, he claims his disciplinary action must be reduced to possession because of his nolo contendre plea in the companion criminal case. He bases this claim on a prison regulation that requires prison officials, under certain circumstances, to accept a court verdict of guilty or not guilty as the finding of fact on the same charges at issue in a disciplinary proceeding. (Cal. Code Regs., tit. 15, § 3316, subd. (c)(3).) More particularly, he argues that because he was only charged and convicted of possession, the trial court necessarily found he was not guilty of distribution and this finding is binding on prison officials. He also claims the trial court specifically stated during the criminal proceedings that no more than an act of possession occurred. However, he provides no evidentiary support for this claim.

To the extent Hunter is seeking relief based on arguments that were raised and rejected in his prior petitions, we conclude the petition is procedurally barred because it is repetitive and Hunter has not established any exception to this procedural bar. (*In re Clark* (1993) 5 Cal.4th 750, 767-768.) To the extent Hunter is seeking relief based on his nolo contendere plea, we conclude the petition fails to state a prima facie case for relief. (*People v. Duvall* (1995) 9 Cal.4th 464, 474-475.) The regulation relied upon by Hunter does not require prison officials to alter a disciplinary action unless there has been a not guilty verdict, following a trial, on the same charges. In this case, Hunter was never charged or tried for a distribution offense. Consequently, the regulation does not apply to him.

The petition is denied.

Haller

HALLER, Acting P. J.

Copies to: All parties

# PROOF OF SERVICE

(C.C.P. §§1013(a); 2015.5; 28 U.S.C. §1746)

I, Wesley Hunter, am over the age of eighteen (18) years, and I (am) (am not) a party to the within cause of action. My address is:

P.O. Box 290006, C-2, 229
Represa, CA 95671

On, 6/19/08, I served the following documents:

Writ of Habeas corpus (S163568)

on the below named individual(s) by depositing true and correct copies thereof in the United State mail in Represa, California, with postage fully prepaid thereon, addressed as follows:

1. Clerk of the U.S. Dist. Ct
For the Eastern Dist. of CA
501 "I" Street, Ste. 4-200
Sacramento, CA 95814

2.

I have read the above statements and declare under the penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Executed this 19 day of June, 2008, at California State Prison - Sacramento, Represa, California.

(Signature) Wesley W. Hunter